ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
MARIA F. BUXTON
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
  1515 Clay Street Suite 2000, P.O. Box 70550
  Oakland, CA 94612-0550
  Telephone: (510) 879-0296
  E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON, | 3:25-cv-05536-VC<br><br>**DECLARATION OF LAURA PHELAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | Date:        August 28, 2025<br>Time:        10:00 a.m.<br>Courtroom:  Courtroom 4<br>Judge:       Hon. Vince Chhabria<br>Trial Date:  Not set<br>Action Filed: July 1, 2025 |
| v. | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security, | |
| Defendants. | |

## DECLARATION OF LAURA PHELAN

I, Laura Phelan, declare as follows:

1.      I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional and Agency Background**

2.      I am the Administrator of the Division of Medical Programs at the Illinois State Department of Healthcare and Family Services (IDHFS). I am the designated State Medicaid Director for the Illinois State Medicaid and CHIP programs at IDHFS.

3.      I have worked in the health care field since 2009. During that time, I have served the public both in federal and in state government positions, including at HHS on the CMS portfolio. I have worked for IDHFS for over a decade and became the Administrator in 2025.

4.      IDHFS is the designated single state agency responsible for administering Illinois' medical assistance programs. The Division of Medical Programs administers and, in conjunction with the federal government, funds medical services provided to about 25 percent of the Illinois population.

5.      The Illinois Medical Assistance programs, consisting of Medicaid and numerous other medical programs, provide health-care coverage to about 3.2 million Illinoisans. The programs cover children, parents or relatives caring for children, pregnant women, veterans, seniors, adults, and persons who are blind and persons with disabilities.

6.      Illinois's Medical Assistance programs are primarily administered under provisions of the Illinois Public Aid Code; and Titles XIX and XXI of the federal Social Security Act. The department's mission is to improve access to quality health care for the individuals

enrolled in its programs, while simultaneously containing costs and maintaining program integrity.

7.      Many of Illinois's Medical Assistance programs are authorized and funded in part through a Medicaid federal-state partnership. Illinois administers its federally matched programs pursuant to broad federal requirements as well as the terms of its "plan for medical assistance," also known as a State Plan, approved by the U.S. Centers for Medicare & Medicaid Services (CMS). IDHFS receives federal Medicaid dollars, known as "Federal Financial Participation" (FFP), which reimburses Illinois for a percentage of its expenditures on eligible enrollees.

8.      Most enrollees in Illinois Medical Assistance programs are eligible for coverage paid for by joint federal and state funding. IDHFS uses FFP funding to reimburse the state for a significant portion of the costs of Illinois Medical Assistance Programs, while Illinois covers the remaining costs using state funds. To qualify for FFP funding, among other eligibility requirements, the enrollee must either be a citizen of the United States or have some other qualifying immigration status, for example lawful permanent residents who have met their five-year waiting period. These individuals qualify for full or partial benefit coverage that receives FFP.

9.      For applicants who do not have a federally qualifying immigration status, federal law authorizes the use of federal funding to treat emergency medical conditions. Emergency Medicaid covers severe medical emergencies that require immediate medical attention, including labor and delivery for pregnant individuals.

10.     In addition to coverage jointly administered by the state and federal governments, Illinois has elected to use state-only funds to expand healthcare coverage for certain noncitizens. For example, the Health Benefits for Immigrant Seniors program provides health benefits for

Illinois residents 65 years and older regardless of their immigration status. 305 ILCS 5/12-4.35. Illinois also funds and administers the All Kids program, which provides comprehensive, affordable, health insurance for all Illinois children, regardless of immigration status.

**Data Sharing Between IDHFS and CMS**

11.     In designing its application process for Illinois Medical Assistance programs, Illinois relied on federal statutes, regulations, and guidance from CMS about what information to elicit and what reassurances to provide to applicants about how their data will and will not be used.

12.     As required by federal law, Illinois has implemented safeguards restricting use or disclosure of applicant and recipient information. In addition to federal laws and regulations, the Illinois Public Aid Code restricts, for the protection of applicants and recipients, disclosure of any records, files, papers and communications except for purposes directly connected with the administration of public aid under this Code.

13.     Illinois relies on the framework of data privacy laws in collecting information necessary for program administration, as well as when it shares applicant and enrollee data with the federal government for program administration purposes.

14.     As a condition of receiving federal Medicaid funding and as required by federal law, Illinois routinely shares certain categories of personal information regarding enrollees with CMS.

15.     For example, Illinois uses an Integrated Eligibility System (IES) to determine eligibility for benefits programs, including affordable healthcare benefits. This program

interfaces with state and federal data sources to verify certain financial and nonfinancial information to assist in determining eligibility for various benefits programs.

16.    Illinois also verifies the legal status of noncitizens applying for federally-supported medical benefits through the federal Systematic Alien Verification for Entitlement (SAVE) database.

17.    IDHFS additionally submits data monthly to CMS through the Transformed Medicaid Statistical Information System (T-MSIS). This data includes demographic and eligibility information, such as name, address, date of birth, Medicaid ID, Social Security number (if provided), and eligibility status. These submissions include data for individuals who receive only emergency Medicaid services. Illinois' most recent transfer of data to T-MSIS occurred on June 27, 2025.

18.    Illinois also responds to CMS's requests for information and data when CMS reviews Illinois' claims for reimbursement of expenditures, and when CMS performs other program audit and oversight functions. Given CMS's role in jointly administering the Medicaid program with Illinois, IDHFS complies with routine requests for information.

19.    In its interactions with CMS, IDHFS relies on CMS's adherence to longstanding policy, rules and regulations that limit redisclosure of individual Medicaid beneficiaries' personal data, except in circumstances related to administration of the Medicaid program.

20.    IDHFS relies on CMS to protect the confidentiality and security of Medicaid data and to follow federal laws and regulations regarding redisclosure of that data, such as HHS's own prohibition on disclosure except as required for the purposes of administering the Medicaid program. Illinois likewise relies on CMS's protection of sensitive confidential information in order to comply with its own obligations under federal and state laws.

4

21.     Relying on CMS's representations, IDHFS's website states accordingly that "The Illinois Department of Healthcare and Family Services does not share information you put on a Medicaid application with U.S. Immigration and Customs Enforcement. The federal government states that applying for Medicaid will NOT affect your ability to become a citizen." *See* https://hfs.illinois.gov/medicalclients/medicaidguide/introtomedicaid.html.

22.     Illinois' combined application for benefits, which includes Medicaid benefits, contains numerous representations as to the privacy of applicants' information, relying on CMS's representations:

a.   The application states in bold type **"The law requires that we have to keep all the information you give us private."**

b.   The application provides, under the heading "Client Rights/Responsibilities" that for applicants submitting a social security number with their application, that information will "only be used for the purpose for which it was collected."

c.   The application also has applicants certify that they understand that IDHFS "will not share any information about immigration or any persons who do not have an Alien Registration Number."

23.     On June 13, 2025, an article published by the Associated Press reported that CMS had shared confidential Medicaid data with the U.S. Department of Homeland Security (DHS), including the personally identifiable information (PII) of millions of Illinois Medicaid beneficiaries.[1] The article stated that two top advisers to the Secretary of Health and Human

---

[1] See Kimberly Kindy & Amanda Seitz, Trump Administration Gives Personal Data of Immigrant Medicaid Enrollees to Deportation Officials, AP News (June 14, 2025), https://apnews.com/article/medicaid-deportation-immigrants-trump-4e0f979e4290a4d10a067da0acca8e22.

Services, Robert F. Kennedy, Jr., ordered CMS staff to provide this data to DHS over the objections of those staff members.

24.     The following business day, IDHFS reached out to CMS requesting confirmation of whether this data-sharing occurred, what specific data was shared, and to whom. To date, CMS has not confirmed that such sharing occurred, nor has CMS identified what data was disclosed, to whom, or for what purpose.

**Harm from Disclosure of Illinois' PII Data to DHS**

25.     Based on my experience, I am concerned that the unauthorized disclosure of confidential data by CMS to DHS will harm the state of Illinois and, unless DHS publicly agrees to refrain from using this personal data for immigration or other law enforcement purposes, will negatively impact the state in the following ways:

26.     CMS's disclosure could result in a significant chilling effect for immigrants and their family members discouraging them from seeking medically necessary healthcare. Earlier this year, I read news reports such as this February 10 NPR article about how fear of ICE raids have deterred patients from accessing health care in Illinois.[2] Since the publishing of the Associated Press article covering the disclosure of Medicaid personal data to DHS, IDHFS has received many concerned inquiries from community organizations, advocates and the media.

27.     I fear that eligible Illinoisians will avoid enrolling in state-funded programs like HBIS because of CMS's data sharing with DHS, fearing their data will be shared with CMS and used to initiate immigration enforcement actions against them.  This includes legal visitors and

---

[2] See Kristen Schorsch, *Fearful amid ICE crackdowns, some immigrants are skipping health care*, WBEZ Chicago (Feb. 10, 2025), available at https://www.npr.org/sections/shots-healthnews/2025/02/10/nx-s1-5290063/migrants-chicago-delayed-health-care-immigration-crackdownfears.

residents who fear that DHS will mistakenly initiate immigration enforcement actions against them.

28.    I also fear that undocumented immigrants with life-threatening conditions will avoid seeking medical care based on their fear that their personal data will be shared with immigration enforcement. This chilling effect may deter them from seeking more comprehensive care that is eligible for federal funding, such as services for pregnant women and that benefits their citizen children. Not accessing prenatal care increases costs to the state when less healthy babies are born and enrolled in Medicaid.

29.    Meanwhile, other eligible Illinoisians, including citizens, may avoid enrolling in any Medicaid program whatsoever because of CMS's data sharing with DHS, fearing that if CMS is willing to disclose data for purposes other than the administration of Medicaid programs, that it could disclose data for any number of reasons. CMS's lack of transparency and apparent willingness to circumvent restrictions on data sharing may fuel these fears and discourage individuals from participation. This will impact not only adults but also children.

30.    Simply put, Illinoisans who are already enrolled in IDHFS-administered health care programs may avoid seeking medical care or may seek to disenroll, to avoid sharing additional sensitive data with DHS.

31.    The chilling effect from this disclosure will increase the risk of adverse health impacts for people in Illinois. This will include individuals avoiding critical preventative care and necessary medical treatment, which will unwind years of the state's investment in expanding health coverage and access. Deferring care can result in late-stage disease detection, unintended pregnancy, adverse health effects during pregnancy and childbirth, overdose, and increased morbidity and mortality for late-stage disease. Decreased access to prenatal care may lead to

7

increased rates of premature births, low birth weight infants, and congenital defects. Decreased access to preventative care also will increase costs to the state by it having to pay for higher-cost emergency services for health outcomes that could have been avoided with lower-cost, preventative care.

32.     These adverse health impacts will further strain not only Illinois' resources and budget but also the Illinois health care and provider system. To the extent individuals' treatment is left uncompensated, the cost of that treatment will ultimately be shifted to the broader healthcare delivery system and the state.

33.     These poor health outcomes will harm the overall health of all residents, by both straining Illinois' healthcare delivery system as well as increasing the potential risks of the spread of infection and illness.

34.     Overall, reports of CMS's disclosure have undermined the Medicaid program. If CMS shared confidential Medicaid data with DHS for the purposes of immigration enforcement, then that would represent an unprecedented and grave betrayal of public trust. Such a disclosure would cause significant harm to Illinois' ability to provide critical health services to its residents and is likely to cause further irreparable harm if not mitigated and repaired as soon as possible.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2025

Laura Phelan
Laura Phelan