BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH SHAPIRO
Deputy Director
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW,
Washington, DC 20005
Phone: (202) 616-0680
E-mail: michael.j.gerardi@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STATE OF CALIFORNIA, et al., | 3:25-cv-05536-VC |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AMENDED PRELIMINARY INJUNCTION** |
| v. |  |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | **Date:** September 23, 2025<br>**Time:** 2:00 PM<br>**Courtroom:** Videoconference<br>**Judge:** Hon. Vince Chhabria<br>**Trial Date:** Not set<br>**Action Filed:** July 1, 2025 |
| Defendants. |  |

## INTRODUCTION

This case was originally brought by twenty-one states against the U.S. Department of Health and Human Services and the U.S. Department of Homeland Security, challenging decisions by those agencies to share Medicaid data for immigration enforcement purposes. *See* Compl., ECF No. 1. Plaintiffs filed for a preliminary injunction on July 11, ECF No. 43, and the Court granted their motion in part on August 12, ECF No. 98. Now, nearly one month after that motion was granted, two additional plaintiffs—Wisconsin and the Office of the Governor Ex Rel. Andy Beshear, in his official capacity as the Governor of the State of Kentucky ("Kentucky")—have moved to "amend" the preliminary injunction's scope to include their state Medicaid programs. Both are similarly situated to the other twenty-one plaintiffs; both knew of this suit before the Court ruled on the preliminary injunction; and neither has shown that they could not have joined the lawsuit and preliminary injunction motion in July.

These facts give rise to a narrow, but significant, question regarding the proper exercise of the Court's equitable powers: can similarly situated plaintiffs with knowledge of a particular litigation and a pending preliminary injunction motion wait for the Court to resolve that motion, and only then move to be included in the injunction's scope? The answer to that question is no, for two reasons. First, the delay of these two states in seeking preliminary relief undermines their assertions of irreparable harm substantially, as it suggests they do not have the same exigent need for relief as their sister states. Second, it is against the public interest for the Court to award preliminary relief to parties who wait until after similarly situated and closely related parties have had their motion adjudicated. It encourages tactical delay and amplifies the injury the government suffers in being prevented from pursuing policies authorized by federal law.

Accordingly, the Court should deny Plaintiffs' motion to amend.

## BACKGROUND

The initial group of twenty-one states filed suit on July 1, 2025. ECF No. 1. They moved for a preliminary injunction on July 11, 2025. ECF No. 43. Defendants opposed that motion on July 25. ECF No. 83. The Court held a hearing on the motion on August 7, and it granted in part, and denied in part, the motion in a written opinion issued on August 12. ECF No. 98. At the moment, "DHS is preliminarily enjoined from using Medicaid data obtained from the plaintiff states for immigration enforcement purposes" in those states named in the Court's order. *Id.* at 4.

The two parties at issue in this motion were not a part of the original consortium of states that brought this suit. Plaintiffs represent that these states reached out to counsel for Plaintiffs in this case as early as July 23 regarding their interest in joining the case. Decl. of Anna Rich ¶ 5. But Plaintiffs did not reach out to Defendants about filing a motion to amend the preliminary injunction until nearly a month later, on August 27. *Id.* ¶ 7. On August 28, Plaintiffs amended their complaint to include these new states by adding allegations about the Medicaid programs of Kentucky and Wisconsin similar to those of the other Plaintiffs. On August 29, 2025, Defendants informed Plaintiffs they would oppose expansion of the preliminary injunction. *Id.* ¶ 8. By agreement with Defendants and the Court during a status conference on August 29, Wisconsin and Kentucky filed their motion to amend the preliminary injunction on September 5. ECF No. 118.

Both Kentucky and Wisconsin submitted declarations in support of their motion. The harms these declarations assert are substantially the same as those of the twenty-one states that filed suit on July 1. *See* Defs.' PI Opp. 14-15, ECF No. 83. For example, Kentucky's declarant asserts that "the unauthorized disclosure of confidential data from other states by CMS to DHS has already harmed the Commonwealth of Kentucky by creating a significant chilling effect that will result in individuals foregoing benefits for which they are eligible or seeking to disenroll themselves and their families from Kentucky Medicaid." Decl. of Lisa Lee ¶ 15, ECF No. 118-2. Wisconsin makes

similar assertions. Decl. of Debra Standridge ¶ 23, ECF No. 118-1. Neither declaration identifies an injury not present before the preliminary injunction was entered.

## STANDARD OF REVIEW

Plaintiffs' motion is best understood as a new motion by Wisconsin and Kentucky for a preliminary injunction against enforcement of the data sharing policy as to their Medicaid programs. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Id.* at 20. When "the Government is the opposing party," the last two factors merge, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the Court "must balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S. 531, 542 (1987).

## ARGUMENT

This Court has held that the original group of twenty-one states was entitled to a preliminary injunction against Defendants' data-sharing policies on the narrow grounds that Defendants violated 5 U.S.C. § 706(2)(A) by engaging in arbitrary and capricious decision-making. Defendants disagree with this ruling and, for the purposes of preserving their arguments, oppose Plaintiffs' motion for all of the reasons stated in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 83, and at oral argument.

Assuming the Court abides by the reasoning of its prior ruling, it nonetheless must consider the request of Kentucky and Wisconsin to join the preliminary injunction in a manner "consistent with the party-specific principles that permeate our understanding of equity." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025). And there are two reasons why Kentucky and Wisconsin should not

reap the benefit of the Court's ruling on the Plaintiffs' original preliminary injunction motion. First, by waiting until September to file a motion based on a data sharing policy that Plaintiffs were aware of in June, Wisconsin and Kentucky have undermined assertions that they will suffer irreparable injury absent an injunction in the same manner as other Plaintiffs. Second, the alleged irreparable harm of Wisconsin and Kentucky is outweighed by the public interest in preventing plaintiff groups, in cases challenging national policy decisions, from amending preexisting preliminary injunctions to include similarly situated plaintiffs, without a good explanation as to why they were unable to join the original motion.

### A.  Plaintiffs Have Not Shown Irreparable Injury

A preliminary injunction is an extraordinary tool that should only be used "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). It follows from the purposes of such injunctions that a plaintiff must demonstrate "irreparable harm and inadequacy of legal remedies" to obtain one.  *Sampson v. Murray*, 415 U.S. 61, 88 (1974). To make that showing, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The existence of an "immediate threatened injury," *id.*, is questionable if there is "unexplained delay" in moving for preliminary relief. *Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (quoting *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984))). The Ninth Circuit has repeatedly held that delay suggests a "lack of urgency and irreparable harm" that is fatal to such a motion.  *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (delay of three months between posting video online and filing a motion for

preliminary injunction "undercut [plaintiff's] claim of irreparable harm"); *Int'l Ass'n of Plumbing & Mechanical Officials v. Int'l Conf. of Bldg. Officials*, 79 F.3d 1153 (table), 1996 WL 117447, at *3 (9th Cir. 1996) ("[T]he fact that [plaintiff] waited seven months before seeking injunctive relief undermines its claim of immediate threatened irreparable injury.").

The unexplained delay of Wisconsin and Kentucky belies their claim of irreparable injury. Twenty-one states joined the complaint when it was filed on July 1, and those plaintiffs moved for a preliminary injunction just ten days later. Kentucky and Wisconsin now seek to join the injunction nearly two months after their co-plaintiffs sought this relief, and two-and-a-half months after the reports of data-sharing between CMS and ICE that Plaintiffs reference in the complaint as the reason for filing this lawsuit. The motion also comes nearly a month after the Court ruled on the original Plaintiffs' motion for preliminary relief. Although the amount of delay that is considered improper depends on context, courts have held that delays of this length are sufficient to undermine assertions of irreparable harm. *See Ozone Int'l, LLC v. Wheatsheaf Grp. Ltd.*, No. 2:19-cv-01108-RAJ, 2019 WL 3287801, at *2–3 (W.D. Wash. July 22, 2019) (no irreparable harm where plaintiff waited a month and half to file motion for a preliminary injunction after defendant entered receivership and about a month after defendant stopped servicing plaintiff's equipment); *Dahl v. Swift Distrib., Inc.*, No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *4 (C.D. Cal. April 1, 2010) (delay of eighteen days between filing of complaint and motion for a temporary restraining order "implies a lack of urgency and irreparable harm").

Plaintiffs assert that "public reporting" in July about the agreement between CMS and ICE to share T-MSIS data prompted Kentucky and Wisconsin to join this suit, as they were not directly implicated in the June 14 reporting about CMS's initial data sharing efforts, and that they "first became aware of the threat to their residents' data when the AP published its article detailing the

agreement giving DHS direct access to CMS data on July 17, 2025." Mot. to Amend 4. The record does not support this claim. Contrary to Plaintiffs' argument in their brief, neither declarant claims that the July 17 article marked their "first" awareness of these issues. Standridge Decl. ¶ 20 (summarizing the article, but not claiming it marked Wisconsin's "first awareness" of data sharing policies); Lee Decl. ¶ 21 (stating that concerns were merely "confirmed" by the July reporting). Moreover, Kentucky's declarant admits she *was* aware of the June reporting, *see* Lee Decl. ¶¶ 13–14, and Wisconsin's declarant, while neither admitting nor denying awareness of the June reporting, admits that its state Medicaid office has experienced "a significant uptick" "over the last several months" of members concerned about their information being shared with immigration authorities. *See* Standridge Decl. ¶ 27. Finally, this argument ignores that only three of the twenty-one original Plaintiffs were explicitly referenced in the initial June reporting, as Plaintiffs acknowledge. Am. Compl. ¶ 219 (California, Washington, and Illinois).

Plaintiffs' brief further asserts "Kentucky and Wisconsin did not sleep on their rights, nor did they lie in wait for a favorable result on the motion for a preliminary injunction before pursuing action." Mot. to Amend 5. But the declaration of Plaintiffs' counsel hardly establishes their diligence. Plaintiffs claim that the states "reached out to our office about joining this lawsuit on or around July 23 and July 25," Rich Decl. ¶ 4, but that statement does not indicate when Wisconsin and Kentucky became aware of the operative facts that led them to sue or this lawsuit. Plaintiffs' statement fails to exclude the possibility of other contacts prior to late July. The declaration also does not explain why it took over a month to proceed from this contact to the present motion. Plaintiffs appeal to the possible administrative inconvenience of filing multiple amended complaints or motions to amend, and to the leave schedule of Defendants' counsel, as reasons justifying their delay. Rich Decl. ¶¶ 5-6. But if Kentucky and Wisconsin maintain that they are

suffering irreparable harm from Defendants actions, none of these reasons is an excuse for Plaintiffs waiting so long to join this litigation and seek relief from the Court.

Plaintiffs' cited authorities do not provide support obtaining preliminary relief in the face of this type of delay. In *Arc of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014), the Ninth Circuit cautioned the court not to rely heavily on delay alone in circumstances where "the actual impact of the various reductions in compensation might well become irreparable only over time," such that "waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Id.* at 991. Such facts do not exist here. Kentucky and Wisconsin have not shown, unlike their twenty-one co-plaintiffs, that their irreparable injuries were not made manifest until a much later date. *Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024), relies heavily on *Arc of California*, and it too arose from a case where there "was not a long delay in" the context of the specific factual setting of that lawsuit. *Id.* at 1111. Here, Wisconsin and Kentucky have acted much more slowly than their similarly situated Plaintiffs, waiting two months to join this suit, and nearly a month after their co-plaintiffs obtained a preliminary injunction to seek their own preliminary relief. Plaintiffs have not "adequately explain[ed] why this delay was 'prudent rather than dilatory' or strategic." *Turchet v. Mayfield*, No. 20-cv-011104-VC, 2020 WL 1126779, at *2 (N.D. Cal. Mar. 6, 2020) (denying preliminary injunction).

Ultimately, the question of whether Plaintiffs' delay undermines the ability of Kentucky and Wisconsin to obtain preliminary relief does not hinge on what Plaintiffs and their counsel may have intended by acting as they did, but on the objective facts of their actions. Here, their actions substantially weaken their assertion that the harms they face are of such a character that the extraordinary relief of a preliminary injunction is required. Accordingly, the Court should deny the motion for failure to make an adequate showing of irreparable harm.

**B.  Plaintiffs' Delay Shifts The Balance Of Equities To Defendants**

The third and fourth preliminary injunction factors, which merge when the federal government is the party against whom an injunction is sought, also weigh in Defendants' favor as regards this request to amend the preliminary injunction order. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people," as Defendants currently are with respect to the twenty-one original Plaintiffs in this case, "it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (brackets and quotation marks omitted). That injury must be outweighed by a strong showing of irreparable harm by Plaintiffs. That showing has not occurred here. The record demonstrates that despite knowing Kentucky and Wisconsin were interested in joining the case in late July, they waited until after the Court decided the preliminary injunction motion to seek their inclusion in this case. *Compare* Rich Decl. ¶ 4 (Wisconsin and Kentucky inform Plaintiffs' counsel of interest in joining the case on July 23 and 25, respectively) *with id.* ¶ 6 (Plaintiffs' counsel reach out to Defendants' counsel on August 27, 2025). The record also fails to show that Wisconsin and Kentucky could not have joined this suit, and the initial preliminary injunction motion, in early July along with their twenty-one co-Plaintiffs.

Plaintiffs assert that Kentucky and Wisconsin did not "lie in wait for a favorable result on the motion for a preliminary injunction." Mot. to Amend 5. But regardless of what was intended, even the "appear[ance]" of "tactical delay" by the moving party weakens its assertion of irreparable harm and "provides support" for the argument "that [the non-moving party] would suffer a greater harm by an injunction than [plaintiff] would suffer should the requested injunction be denied." *Hologic, Inc. v. Senorx, Inc.*, No. C-08-00133, 2008 WL 1860035, at *19 (N.D. Cal. Apr. 25, 2008) (denying motion for preliminary injunction brought by party that "appears" to have "waited until it would be most harmful to [defendant] to seek this injunction"); *Thomson v. Silverman*, No. 25-

cv-2925 (MKV), 2025 WL 1078334, at *3 (S.D.N.Y. Apr. 10, 2025) (concluding plaintiff had not shown "balance of equities tips in his favor" because it "seems at this stage that [plaintiff] may be engaged in gamesmanship and 'sharp litigation tactics' to prevent the sale of the Property.").

The potential for gamesmanship from delay of the sort Plaintiffs engaged in here is substantial. The states are, by and large, similarly situated in terms of the alleged harm to their programs as a result of the policy decisions about issues like health care and immigration. They are legally sophisticated and frequently collaborate with one another in bringing significant litigation against the federal government to protect their shared interests. *See* Gerardi Decl., Ex. 1 (listing twenty-six lawsuits Wisconsin has joined as a plaintiff alongside other states since January 1, 2025). Federal law provides significant flexibility to the states as to where they choose to file suit, *see* 28 U.S.C. § 1391(e)(1)(C), and the Federal Rules of Civil Procedure are similarly generous in giving plaintiffs freedom to amend pleadings, *see* Fed. R. Civ. P. 15, and join parties to a dispute, *see* Fed. R. Civ. P. 20. Plaintiffs' approach would, in theory, allow a handful of states to file suit in a venue of their choosing, test the Court's willingness to grant preliminary relief, and, if successful, amend their pleadings and extend the benefit of the initial injunction to all similarly situated parties, regardless of when they joined the case or whether they could file in that court on their own. That strategy could easily be extended to other types of plaintiff groups, as well.

Accordingly, the Court should weigh the preliminary injunction factors to encourage similarly situated litigants, like the states, to bring claims for emergency relief as promptly as possible. Such a policy conserves judicial resources and limits the scope of injury to the federal government arising from an injunction to only those entities who demonstrate, by word and deed, truly irreparable harm that can only be redressed by a preliminary injunction.

**CONCLUSION**

For all the foregoing reasons, the Court should deny Plaintiffs' motion to amend the

scope of the preliminary injunction to include Wisconsin and Kentucky.

Dated: July 25, 2025                        Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Acting Assistant Attorney General
                                            Civil Division

                                            ELIZABETH SHAPIRO
                                            Deputy Director
                                            Civil Division, Federal Programs Branch

                                            */s/Michael J. Gerardi*
                                            Michael J. Gerardi
                                            Senior Trial Counsel (DC Bar No. 1017949)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L St. NW
                                            Washington, DC 20005
                                            Tel: (202) 616-0680
                                            Fax: (202) 616-8460
                                            E-mail: Michael.J.Gerardi@usdoj.gov

                                            *Counsel for Defendants*