# EXHIBIT A

This document is scheduled to be published in the Federal Register on 11/25/2025 and available online at **https://federalregister.gov/d/2025-20911**, and on **https://govinfo.gov**

[Billing Code: 4120-01-P]

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Medicare & Medicaid Services**

**[CMS-9163-N]**

**Notice of Medicaid Information Sharing Between the Centers for Medicare & Medicaid Services and the Department of Homeland Security**

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), Department of Health and Human Services (HHS).

**ACTION:** Notice.

**SUMMARY:** This notice announces that the Department of Health and Human Services (HHS), Centers for Medicare & Medicaid Services (CMS), will share certain information with the U.S. Department of Homeland Security (DHS), and its component agency, U.S. Immigration and Customs Enforcement consistent with federal laws requiring the provision of information to DHS.

**DATES:** This notice is applicable immediately.

**FOR FURTHER INFORMATION CONTACT:** The Center for Medicaid and CHIP Services at *CMCS@cms.hhs.gov*.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

This notice provides information regarding the provision of certain information collected by the Department of Health and Human Services (HHS), Centers for Medicare & Medicaid Services (CMS), with U.S. Department of Homeland Security (DHS) and its component agency U.S. Immigration and Customs Enforcement (ICE). CMS partners with states to administer Medicaid. In doing so, CMS collects information regarding individuals for a variety of purposes related to administration, oversight, and program integrity. This notice applies to data collected by CMS in connection with its role in the Medicaid program.

CMS receives information related to immigration status because it is relevant to the Medicaid program. For example, under Medicaid, states are prohibited from claiming federal financial participation (FFP) for "medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." Section 1903(v)(1) of the Social Security Act (the Act) (42 U.S.C. 1396b(v)(1)). The exception to this prohibition is that FFP can be paid if the care and services are "necessary for the treatment of an emergency medical condition of the alien," the alien otherwise meets the eligibility requirements for Medicaid, and the care and services are not related to an organ transplant procedure. Section 1903(v)(2) of the Act (42 U.S.C. 1396b(v)(2)).

Federal laws govern the collection, use, and disclosure of CMS information. Depending on the type of information, applicable laws may include the Privacy Act of 1974 (5 U.S.C. 552a), section 1106(a) of the Act (42 U.S.C. 1306(a)(1)) and CMS implementing regulations at 42 CFR part 401, subpart B, and other federal laws. In addition, CMS has established a robust privacy and security program (https://security.cms.gov/topic/privacy). CMS has previously stated on its website that the information regarding individuals that it collects will only be used for administration of its programs. *See, e.g.*, CMS, CMS Privacy Home Page, https://www.cms.gov/about-cms/information-systems/privacy ("To protect your privacy, we'll tell you before we collect any personal information we need to run our health care programs, and only use it for that purpose."). CMS also has stated on its website that it will not use immigration status for immigration enforcement purposes. *See* CMS, More information for immigrant households, https://www.healthcare.gov/immigrants/immigrant-families/ ("We won't use any immigration status you share with us for immigration enforcement purposes."). This policy statement was made in the context of and in reliance on a 2013 ICE policy that stated that ICE would not use CMS data or information provided by individuals to obtain coverage for certain benefits under CMS programs as the basis for pursuing a civil immigration enforcement action.

ICE has rescinded this policy.[1] *See* ICE Policy Memorandum 11066.2, Use of HHS Information and Rescission of ICE Policy Memorandum 11066.1, *Clarification of Existing Practices Related to Certain Health Care Information* (October 25, 2013, 2013 Policy Memorandum), (Oct. 27, 2025, ICE Policy Memorandum 11066.2).

**II. Legal Authority**

Several federal laws authorize CMS to make certain information available to DHS. *See* ICE Policy Memorandum 11066.2.

- Under the Homeland Security Act of 2002, the Secretary of Homeland Security shall have access to information "relating to matters under the responsibility of the Secretary that may be collected, possessed, or prepared by an agency of the Federal Government as the President may further provide." 6 U.S.C. 122(a)(2). Additionally, the Secretary of Homeland Security can obtain this information upon request and can enter into cooperative agreements with other agencies to provide DHS officials with access to the data on a regular or routine basis, including requests or arrangements involving broad categories of material, access to electronic databases, or both. 6 U.S.C. 122(b).

- Under the Immigration and Nationality Act, "[a]ny information in any records kept by any department or agency of the Government as to the identity and location of aliens in the United States shall be made available to" immigration authorities. 8 U.S.C. 1360(b). This "expansive" language reaches "broad[ ] swaths of information" in the possession of the federal government. *United States v. California*, 921 F.3d 865, 892 (9th Cir. 2019).

Moreover, under 8 U.S.C. 1373, "[n]otwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS]

---

[1] ICE notes that it is currently precluded from using this information due to a Preliminary Injunction and it will proceed with this policy when the Preliminary Injunction is lifted. *See* ICE Policy Memorandum 11066.2, *see also California v. HHS*, No. 25-05536 (N.D. Cal. filed July 1, 2025). Under that same Preliminary Injunction, CMS is currently precluded from sharing certain Medicaid data with ICE for immigration enforcement purposes. Similarly, CMS will proceed with this policy when the Preliminary Injunction is lifted.

information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. 1373(a). Additionally, "[n]otwithstanding any other provisions of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity" from transmitting, maintaining, or exchanging information regarding immigration status with any other Federal, State, or local government entity. 8 U.S.C. 1373(b).

- The Privacy Act of 1974 does not provide authority for a disclosure. However, with respect to U.S. citizens and lawful permanent residents, an exception in the law would not require an agency to obtain prior written consent of the individual to whom the record pertains to disclose a record contained in a system of records to another federal agency "for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought," *See* 5 U.S.C. 552a(b)(7).[2]

**III. Purpose of Information Sharing**

This notice announces CMS policy that CMS will provide certain information to ICE upon request from ICE consistent with federal laws to advance administration priorities related to immigration laid out in the following Executive Orders.

- Executive Order 14159, "Protecting the American People Against Invasion" – The purpose of this Executive Order is to "ensure[ ] that the Federal Government protects the American people by faithfully executing immigration laws of the United States." (90 FR 8443, January 29, 2025).

- Executive Order 14165, "Securing Our Borders" – This Executive Order establishes a policy of the United States "to take all appropriate action to secure the borders of our Nation" through a range of means, including deterring and preventing the entry of illegal aliens into the

[2] The Privacy Act of 1974 only applies to U.S. citizens and lawful permanent residents. *See* 5 U.S.C. 552a(a)(2) (defining individual to include U.S. citizens and lawful permanent residents).

United States, and removing promptly all aliens who enter or remain in violation of Federal law. (90 FR 8467, January 30, 2025).

- Executive Order 14218, "Ending Taxpayer Subsidization of Open Borders" – This Executive Order directs federal agencies to faithfully carry out the immigration laws and "to ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." (90 FR 10581, February 25, 2025).

- Executive Order 14243, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silo" – One of the purposes of this Executive Order is to promote inter-agency data sharing. It directs agencies to "take all necessary steps, to the maximum extent consistent with law," to ensure access to information "for purposes of pursuing Administration priorities related to the identification and elimination of waste, fraud, and abuse." (90 FR 13681, March 25, 2025).

As noted by ICE in ICE Policy Memorandum 11066.2, certain information held by CMS is useful for immigration enforcement purposes and to support the full and efficient execution of ICE's mission. ICE Policy Memorandum 11066.2 at 4. This CMS information "represents a particular set of accurate and quality data that can be used to enhance ICE's data and improve its law enforcement actions." *Id.* More broadly, using CMS information as detailed in the ICE Policy Memorandum 11066.2 "allows ICE to more efficiently achieve its mission of preserving national security and public safety." *Id.*

**IV. Information to be Shared**

ICE announced that, at this time, it contemplates requesting from CMS available biographical, contact, and location information, though ICE reserved the right, in a specific case, to consider requesting other information on a case-by-case basis as permitted by law. *Id.* at 2. This CMS information may include Medicaid information or data shared with CMS by states. CMS will share the minimum required information with ICE, giving due consideration to the information requested by ICE, the federal laws that govern the provision of information to DHS and the CMS information requested, the capabilities of CMS systems, and the CMS resources

available to respond to ICE information requests. Examples of information that CMS may share with ICE include the following: citizenship and immigration status, location, and phone numbers, and, in specific cases, other information on a case-by-case basis as permitted by law. CMS will respond to requests made by ICE and will transfer any information to ICE in a secure manner and establish appropriate safeguards for the information provided, including through written agreements or other arrangements with ICE.

CMS intends its provision of various categories of information to be severable from each other. For instance, CMS's provision of biographical information about aliens is severable from its provision of location information about aliens or from its provision of other types of information that ICE does not presently intend to request for immigration enforcement purposes. In the event a court finds that ICE does not have a right to access a specific type of data (or that CMS is not authorized to provide such data), CMS intends that the provision of specific categories of data be severable from each other.

**V. Reliance Interests**

CMS has considered the fact that states, providers, beneficiaries, health insurance issuers, other regulated entities, and the general public may have relied on past CMS statements that information collected by CMS would only be used for program administration purposes and would not be used for immigration enforcement purposes. The CMS statements were made against the backdrop of federal laws that authorize CMS to share information with DHS, upon request, and a policy choice made by ICE not to use certain information as the basis for pursuing a civil immigration enforcement action. These federal laws have long apprised the regulated public that immigration authorities have access to "broad swaths" of information possessed by other federal agencies relevant to immigration enforcement. Brief of Appellee State of California in *United States v. California,* No. 18-16496, 2018 WL 5880015 (9th Cir. Nov. 5, 2018) ("When Congress has intended to reach broad swaths of information, or specifically a person's address, it has used different words. For example ... the INA requires federal agencies to communicate to

ICE, upon request, '[a]ny information in any records ... as to the identity and location of aliens,' [8 U.S.C. § 1360(b).]")); *see also* Policy Memorandum 11066.2 at 4. To ensure that the public is aware that CMS intends to disclose certain information to DHS consistent with federal laws, including available information contained in program eligibility information, CMS is publishing this notice and will update relevant websites to reflect that federal laws authorize CMS to share certain information with DHS.

ICE determined, as stated in ICE Policy Memorandum 11066.2, that the "value of this information to immigration and criminal law enforcement operations outweighs any relevant reliance interests." ICE Policy Memorandum 11066.2 at 4. Pursuant to the 6 U.S.C. 122(a)-(b), 8 U.S.C. 1360(b), and 8 U.S.C. 1373, "ICE has always had authority to request and receive information for immigration enforcement purposes." ICE Policy Memorandum 11066.2 at 5.

As ICE stated, "[t]he statutory provisions that both give ICE the right to request this information, and that require aliens to affirmatively provide that information to ICE upon request, are longstanding, and there is no exception to their application under Medicaid." ICE Policy Memorandum 11066.2 at 6.

Given the longstanding legal requirements for aliens to apprise immigration authorities of their whereabouts, whatever reliance states, providers, beneficiaries, health insurance issuers, other regulated entities, and the general public have placed on DHS's exercise of its enforcement discretion and CMS's information not being shared with immigration authorities due to that exercise of discretion is entitled to little to no weight. The biographical and location information that ICE intends to seek from CMS is information that ICE has long had a right to access. Accordingly, any interests in not sharing this information with ICE are greatly diminished and outweighed by ICE's legitimate law enforcement interests.

Moreover, while some states and providers contend that it would be detrimental to public health if aliens do not partake in federal health benefits for which they are eligible (for example, federally funded Medicaid services for emergency medical conditions) because if CMS shares

information with ICE, the legal requirements regarding information sharing with ICE long predate restrictions on Medicaid to unqualified aliens. *Compare, e.g.,* 8 U.S.C. 1360(b) (enacted in Immigration and Nationality Act, 66 Stat. 163, 234 (1952)), *with* 42 U.S.C. 1396b(v)(1), 8 U.S.C. 1611(b)(1)(A) (enacted in Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 110 Stat. 2105, 2180). The concerns of states and providers are entitled to little to no weight because they reflect the scheme that Congress created, which provides benefits to aliens under certain limited circumstances and gives immigration authorities the right to access information that arises from the conferral of those benefits.

Finally, to the extent that states provide data to CMS on aliens who receive health benefits or services funded only by the state, states are doing so voluntarily. CMS only requires states to submit data associated with beneficiaries who receive federally-funded Medicaid services. It is incumbent upon the states to separate the data that they collect when submitting it to CMS. Any reliance interests with respect to the population of aliens who receive health benefits or services funded only by states are entitled to no weight since states are not required to submit this information to CMS.

**VI. Additional Information**

Although notice and comment is unnecessary for this statement, CMS has been explicitly instructed by the district court in *California v. HHS*, No. 3:25-cv-05536 (N.D. Cal.), to address its reasons for forgoing notice and comment.

As explained above, CMS's prior policy statement that it would not use CMS data or information for immigration enforcement purposes was made in the context of ICE's prior policy, as described in its 2013 Policy Memorandum, to exercise its enforcement discretion to abstain from requesting information from CMS as the basis for pursuing a civil immigration enforcement action. CMS's prior policy statement did not change legal norms, as described above, created by Congress.

This notice communicates a CMS policy that CMS will share certain information

consistent with federal law authorizing such sharing with respect to requests for CMS information from DHS and ICE. CMS is accordingly updating its policy statement in this regard. CMS is publishing this notice solely to inform interested parties of its decision to provide information to ICE consistent with federal law. This is, at the most, a policy statement as defined by 5 U.S.C. 553(b)(A) and (d)(2) and is exempt from notice and comment for that reason alone. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 95 (2015) (not all rules must be issued through notice and comment, including interpretive rules and general statements of policy under section 4(b)(A) of the Administrative Procedure Act.).

The Administrator of the Centers for Medicare & Medicaid Services (CMS), Mehmet Oz, having reviewed and approved this document, authorizes Evell Barco Holland, who is the Federal Register Liaison, to electronically sign this document for purposes of publication in the **Federal Register**.

**Evell Barco Holland,**

*Federal Register Liaison*,

*Centers for Medicare & Medicaid Services.*

[FR Doc. 2025-20911 Filed: 11/21/2025 11:15 am; Publication Date: 11/25/2025]