ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
MARIA F. BUXTON
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
  1515 Clay St., Floor 20
  Oakland, CA 94612-1499
  Telephone: (510) 879-0296
  E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR,** in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,** | Case No. 3:25-cv-05536-VC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THIRD MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　　　December 9, 2025<br>Time:　　　2:00 p.m.<br>Dept:　　　Courtroom 4<br>Judge:　　　Hon. Vince Chhabria<br>Trial Date:　Not set<br>Action Filed: July 1, 2025 |
| Plaintiffs, | |
| v. | |
| **U.S. DEP'T OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of Health and Human Services; **U.S. DEP'T OF HOMELAND SECURITY; KRISTI NOEM,** in her official capacity as Secretary of Homeland Security, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Additional Background ............................................................................................. 1

Argument .................................................................................................................. 3

I.    Plaintiffs are Likely to Succeed on their APA Claims .............................. 3

    A.    The ICE Memo And CMS Notice Are Final Agency Actions ........... 3

    B.    Plaintiffs Have Appropriately Raised Legal Issues in the Context of an Arbitrary and Capricious Claim .............................................. 4

    C.    ICE's New Policy Is Likely Arbitrary and Capricious .................... 4

        1.    ICE's New Policy Rests on Flawed Assumption of Its Right to Broad, Unfettered Access to Federal Healthcare Data ........ 4

        2.    ICE's Rescission of 2013 Policy and Adoption of 2025 Policy Was Otherwise Arbitrary and Capricious ...................... 6

    D.    CMS's New Policy Is Arbitrary and Capricious .............................. 8

        1.    CMS's New Policy Rests on Flawed Assumption that it Must Allow ICE Broad, Unfettered Access to Federal Healthcare Data ............................................................................. 8

        2.    CMS's 2025 Notice Was Otherwise Arbitrary and Capricious ................................................................................. 9

        3.    CMS Likely Violated The APA's Notice And Comment Requirements ................................................................. 12

II.    Plaintiffs Have Shown Article III Standing and Irreparable Harm ........... 13

III.   Remaining Factors Continue To Weigh In Plaintiffs' Favor ..................... 14

IV.   Requested Relief Is Proper ......................................................................... 14

# TABLE OF AUTHORITIES

**Page**

CASES

*Animal Legal Def. Fund, Inc., v. Perdue*
872 F.3d 602 (D.C. Cir. 2017) ...................................................................................6

*California v. HHS.*
No. 3:25-cv-05536-VC (N.D. Cal. Dec. 03, 2025), ECF No. 136-1 ........................7

*City and Cnty. of San Francisco v. U.S. Citizenship and Imm. Servs.* .
408 F.Supp.3d 1057 (N.D. Cal. 2019) ................................................................7, 10

*Cook Cnty., Illinois v. Wolf*
962 F.3d 208 (7th Cir. 2020) ...................................................................................9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
591 U.S. 1 (2020)..........................................................................................4, 6, 9, 12

*Friends of Back Bay v. U.S. Army Corps of Eng'rs*
681 F.3d 581 (4th Cir. 2012) ...................................................................................8

*Hemp Indus. Ass'n v. Drug Enf't Admin.*
333 F.3d 1082 (9th Cir. 2003) ...............................................................................13

*Hightower v. Kaiser Foundation Health Plan, Inc.*
No. 5:23-cv-00282-JWH-KK, 2023 WL 10406708 (C.D. Cal. Aug. 14, 2023).....................13

*Hisp. Affs. Project v. Acosta*
901 F.3d 378 (D.C. Cir. 2018)..................................................................................8

*In re: Department of Justice Administrative Subpoena No. 25-1431-030*
No. 25-mc-00063-SKC-CYC (D. Colorado, Dec. 4, 2025).....................................3

*Linoz v. Heckler*
800 F.2d 871 (9th Cir. 1986) .................................................................................13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*
463 U.S. 29 (1983)............................................................................................6, 14

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*
894 F.3d 95 (2d Cir. 2018)........................................................................................6

*Neighborhood TV Co. v. FCC*
742 F.2d 629 (D.C. Cir. 1984)..................................................................................6

# TABLE OF AUTHORITIES

**Page**

*Safe Air for Everyone v. U.S. E.P.A*
   488 F.3d 1088 (9th Cir. 2007) ........................................................................4

*Shubash v. District Director of U. S. Immigration and Naturalization Service*
   450 F.2d 345 (9th Cir. 1971) ........................................................................12

*Trump v. CASA, Inc.*
   606 U.S. 831 (2025).....................................................................................14

Sᴛᴀᴛᴜᴛᴇs

6 U.S.C. § 122(a)-(b) ......................................................................................5

42 U.S.C. § 1306(a)(1)....................................................................................12

42 U.S.C. § 1395dd.........................................................................................10

44 U.S.C. §§ 3501, 3507.................................................................................10

Administrative Procedure Act (APA)..................................................1, 3, 4, 6, 7, 12

Affordable Care Act (ACA)..............................................................................5

Emergency Medical Treatment and Labor Act...................................................10

Health Insurance Portability and Accountability Act (HIPAA) ...........................5, 9

Medicaid Act..................................................................................................5

Social Security Act .........................................................................................5, 12

Privacy Act.....................................................................................................5, 9

Pub. L. No. 99-603, Title I, pt. C, § 121(c)(1), 100 Stat............................................11

**INTRODUCTION**

Defendants claim their new policies are restrained, yet the ICE Memo and CMS Notice grant DHS unfettered discretion to obtain from CMS, *en masse*, whatever federal healthcare data it wishes. While the parties may disagree about the discretion that DHS and CMS respectively enjoy, the Court need not decide those exact parameters now to conclude that Defendants' actions constitute arbitrary and capricious decisionmaking. Defendants incorrectly and without adequate explanation promote three specific immigration laws over the complicated statutory and regulatory schemes Congress enacted to protect health privacy and confidentiality; they have failed to consider obvious policy alternatives that could have mitigated harms engendered by significant reliance interests; and they have failed to consider important guardrails and serious consequences relating to their planned new data sharing policy. The fact that Defendants offered no opportunity for public engagement before upending well-established HHS rules and norms regarding the privacy and confidentiality of federal medical records is yet one more way that they are seeking to evade rather than comply with the letter and the spirit of the Administrative Procedure Act (APA).

Defendants should not get another bite at this apple. The Court should grant Plaintiffs' motion for a preliminary injunction while the parties proceed to judgment.

**ADDITIONAL BACKGROUND**

Throughout their opposition, Defendants refer to their new decisions (ECF No. 131-1 (the "CMS Notice") and ECF No. 131-2 (the "ICE Memo")) in ways that are incomplete and misleading. This is a problem for members of the public, who will remain confused about the scope of the new policies. It is also a problem as Defendants characterize their administrative actions as narrow and circumscribed, when in fact those actions provide DHS new, broad, and unfettered access to federal healthcare programs. Plaintiffs highlight some key points of ambiguity and confusion below.

Defendants conflate a single formal request for data by ICE (ECF No. 133-1 (the "ICE Letter"), which itself is vague and broad) with the underlying new policies. Defendants

1

repeatedly represent that "ICE has requested limited biographical and location information" about individuals.  Opp'n at 1, 15; *see also* Opp'n at 16 (referring to the "limited nature of the data requested").  Defendants also represent that their request is "limited to 'CMS Medicaid data.'"  Opp'n at 17 (citing ICE Letter).  Elsewhere, Defendants state that the information requested by ICE is "limited to only those data elements which are relevant to ICE's criminal and civil enforcement mission."  *Id*. at 19 (citing ICE Memo at 6).  But the CMS Notice and the ICE Memo contain *no* meaningful limits.  To the contrary, ICE explicitly "reserves the right, in a specific case to consider other information on a case-by-case basis."  ICE Memo at 2.  Nor are *any* HHS data sources excluded.  Instead, the ICE Memo names a broad spectrum of CMS programs (ranging from the Children's Health Insurance Program to the ACA marketplace), but states that ICE's access "is not limited to" those programs—opening up, for example, the Medicare data of seniors and persons with disabilities.  *Id*. at 1-2.

Defendants also imply that their actions are limited to those with "irregular" or "without lawful" immigration status (*see* Opp'n at 1, 4, 15), and rely on ICE's initial letter that seeks information about "aliens not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law."  *Id*. at 6, 15 (citing ICE Letter).  Yet nothing in the policies provides such limits.  Even Defendants' attempt to rebut Plaintiffs' allegations on this point requires qualification.   Opp'n at 15 ("[*a*]*t this time*, the information that ICE intends to request and receive from HHS will be limited […].") (citing ICE Memo at 7) (emphasis added)).  The CMS Notice is even more explicitly broad. It references ICE's policy—which applies to medical information far beyond Medicaid—and simply states that CMS will share "the minimum required information with ICE"—without explaining who or what will limit the information "required."  And CMS states it will also provide "other information on a case-by-case basis as permitted by law," with no limits beyond a vague "due consideration."  CMS Notice at 5-6.  CMS provides no explanation of what will be "considered."

The ICE Memo and the CMS Notice also provide no information about the volume of data that ICE can access, or how that data will be transferred.  At certain points, ICE refers to "case-

by-case" requirements, but the metes and bounds of what "case-by-case" means are never drawn, including whether they are limited to individual requests for a single person's information or whether a "case" may include broad surveillance of significant portions of the population, e.g., a massive immigration raid. *See* ECF No. 83-2 (Charles Decl.) ¶ 12 (stating ICE's recognition of "value" of access to millions of individuals' CMS records). Moreover, there is nothing in the ICE Memo or the CMS Notice that provides concrete criteria for evaluating when ICE might actually "need" Medicaid (or other healthcare) data. Nor do Defendants explain what ICE plans to do with the vast trove of Medicaid records that have already been transferred.[1] See ECF No. 134 (Pls. 3rd Mot for PI) at 2-3.

## ARGUMENT

### I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS

#### A.    The ICE Memo and CMS Notice Are Final Agency Actions

Defendants renew the argument made in their opposition to Plaintiffs' first motion for a preliminary injunction (ECF No. 83, Defs.1st Opp. at 16-18) that no "final agency action" exists for purposes of APA review. This is an odd argument to renew in the current posture, after the Court has ordered Defendants to complete a final decisionmaking process that will be judicially reviewed. But Defendants raise no new legal issue or fact suggesting that the ICE Memo or CMS Notice are less susceptible to review than their previously challenged policy changes, and Plaintiff's prior arguments apply equally to this latest round of decisionmaking. ECF No. 42-2 (Pls. 1st Mot. for PI) at 16-17; ECF No. 89 (Pls. 1st Reply) at 9-10.

---

[1] The States raise these concerns about ambiguity and potential overreach in the context of the federal government's increasingly aggressive attempts to weaponize access to medical records based on pretext rather than legitimate need. *See, e.g.*, Br. of Amici Colorado et al., *In re: Department of Justice Administrative Subpoena No. 25-1431-030*, \*2 No. 25-mc-00063-SKC-CYC (D. Colorado, Dec. 4, 2025) (opposing the U.S. DOJ's "baseless attempt to sweep the routine prescription and administration of medications […] into federal criminal prohibitions and civil liability in pursuit of its stated goal of "ending" gender affirming care").

**B.    Plaintiffs Have Appropriately Raised Legal Issues in the Context of Their Arbitrary and Capricious Claim**

Defendants object that Plaintiffs have "bootstrapped" arguments regarding the ICE Memo and CMS Notice's flawed legal analyses into the claim that those actions are arbitrary and capricious. Opp'n at 16. This misunderstands Plaintiffs' claims. The fact that Defendants' Memorandum and Notice rest on legal flaws or erroneous legal reasoning *supports* the claim that the agencies have violated the APA's prohibition on arbitrary and capricious rulemaking. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16, 28 (2020) (finding that DHS's decision to rescind Deferred Action for Childhood Arrivals (DACA) program was arbitrary and capricious where it rested on Attorney General's erroneous conclusion about her discretion); *Safe Air for Everyone v. U.S. E.P.A*, 488 F.3d 1088, 1101 (9th Cir. 2007) (noting that when an agency decision rests on a "flawed basis" that is then removed, the agency's analysis is then incomplete and must be re-done).

To be clear, Plaintiffs believe that Defendants' policies *are* contrary to law for the reasons explained in the complaint. *See* ECF No. 108 (Am. Compl.) ¶¶ 274-294 (Second Cause of Action). But Defendants have attempted to obscure these legal infirmities by making their new polices so vague as to resist legal analysis. Plaintiffs intend to pursue their "contrary to law" claim on a more fulsome record as this litigation moves forward. For the purpose of this preliminary motion, however, the Court can determine that these new vague policies, which make erroneous assumptions about past policies and lack of limitations on Defendants' data sharing, are arbitrary and capricious for reasons that include, but are not limited to, legal errors.

**C.    ICE's New Policy Is Likely Arbitrary and Capricious**

**1.    ICE's New Policy Rests on Flawed Assumption of Its Right to Broad, Unfettered Access to Federal Healthcare Data**

Chief among these legal errors and flaws is a failure to acknowledge *why* DHS has changed its view regarding the limitations on its ability to demand data from HHS, as well as its overly expansive and simplistic view of the authorities on which the new ICE policy determination now rests.

Defendants state that DHS has revoked its 2013 ICE Policy Memorandum (*see* Opp'n at 16; ICE Memo at 1), but do not grapple with the fact that the 2013 ICE memorandum described its policy of refraining from using HHS records for civil immigration purposes as "[c]onsistent with the ACA's [Affordable Care Act], the SSA's [Social Security Act], and implementing regulations' *limitations on the use of information provided by individuals for such coverage.*" *See* ECF No. 134-2 (Rich Decl. Ex. A) at 1 (emphasis added).  Characterizing the 2013 ICE policy as merely an "exercise of enforcement discretion" is contrary to the language of the 2013 memo itself, which presented legal conclusions and not mere policy preferences.  Defendants point to no change in law since 2013 that would justify a change in those limitations on the use of ACA or SSA (which includes the Medicaid Act) data.

Instead, DHS simply asserts that three statutes (all of which pre-date 2013) have "enabled, and in some cases, mandated interagency sharing of immigration-status information."  ICE Memo at 2.  Most crucially, none of these statutes *requires* ICE to demand access to Medicaid (or any other federal healthcare) data.  Although 6 U.S.C. §122(a)-(b) plainly supports broad access by DHS to information about terrorism and homeland security threats, its catchall reference to "other information" relating to DHS responsibilities does not clearly authorize the unfettered access to healthcare data that ICE now demands.  And Defendants do not attempt to respond to Plaintiffs' argument that Section 122 should be read in harmony with, rather than as an exception to, existing federal frameworks that govern interagency sharing of medical records containing individually identifiable information, like the Health Insurance Portability and Accountability Act (HIPAA), the Privacy Act, the Social Security Act, and their implementing regulations.  *See* Pl. 3d Mot. at 16 (arguing that Congress should not be interpreted to have altered "fundamental details of a regulatory scheme" in vague or ancillary provisions).  None of these laws—including their various exceptions for civil law enforcement activities—support the kind of broad, unfettered access to a wide range of data that the ICE Memo now encompasses.

**2.    ICE's Rescission of 2013 Policy and Adoption of 2025 Policy Was Otherwise Arbitrary and Capricious**

For purposes of Plaintiffs' current motion, the Court need not determine the exact scope of ICE's statutory authority in order to decide that the actions the agency has taken are likely arbitrary and capricious.  "Agency action may be consistent with the agency's authorizing statute and yet arbitrary and capricious under the APA."  *Animal Legal Def. Fund, Inc., v. Perdue*, 872 F.3d 602, 619 (D.C. Cir. 2017).  This is because the Court's inquiry "depends not solely on the agency's legal authority, but instead on the agency's ability to demonstrate that it engaged in reasoned decisionmaking."  *Id*. (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins*., 463 U.S. 29, 52 (1983)); *see also Regents*, 591 U.S. at 16 (noting that DHS's decision to rescind Deferred Action for Childhood Arrivals program was reviewable under APA despite being within DHS's legal authority).  While the APA does not ask the Court to determine the wisdom of Defendants' actions, nor is it allowed to "merely rubber-stamp an agency decision"; it must instead "ensure that the agency take a 'hard look' at all relevant issues and considered reasonable alternatives."  *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 639 (D.C. Cir. 1984).

As Plaintiffs have explained, Defendants' failure to engage in reasoned decisionmaking includes a failure to consider narrowing the policy in ways that would have ameliorated negative impacts.  Defendants' brief belatedly claims that a "fair reading" of the record shows that "ICE is tailoring its request" to non-citizens information, but this post-hoc litigation statement is insufficient to save the policy decision itself, which leaves the door wide open to "information provided to [CMS] by individuals seeking coverage … *and certain information about their household members*."  ICE Memo at 1-2 (emphasis added).  *See also State Farm*, 463 U.S. at 50 ("courts may not accept . . . counsel's post hoc rationalizations for agency action."); *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 111 (2d Cir. 2018) ("review is limited to the rationales offered by [the agency] at the time it published" rule, as opposed to in later litigation).  Medicaid data sharing will harm U.S. citizens in mixed-status households—a population not considered in the ICE Memo.  ECF No. 43-20 (Mangia Decl.) ¶¶ 20-22; ECF No. 43-31 (Silva Decl.) ¶ 12; *see also* ECF No. 136-1, Br. of Nat'l Health L. Program, et al. as Amici

6

Curiae, at 12 (detailing chilling effect of sharing Medicaid data with ICE on citizen children living in mixed-status families).

Over and over, ICE summarily dismissed serious reliance interests as of "little" or "no" weight. *Compare* ICE Memo at 6–7 *with* ECF 43-19 (Connolly Decl.) ¶¶ 17, 31; ECF No. 43-17 (Hadler Decl.) ¶¶ 26-27; ECF No. 43-16 (Groen Decl.) ¶¶ 14, 15, 28; ECF No. 43-20 (Mangia Decl.) ¶ 28; ECF No. 43-21 (Mendoza Decl.) ¶¶ 8, 11; ECF No. 43-28 (Probert Decl.) ¶¶ 12, 14. ICE concludes that these reliance interests are "unjustified" or "unlawful," while ignoring that Defendants established those interests, starting with CMS's assurance, "your information will not be used for immigration enforcement purposes." Such a clear governmental statement, coupled by the significant benefits to health and well-being that come with accessing lawfully provided healthcare services, cannot reasonably be simply dismissed on that basis after the fact. Nor do noncitizens' obligations to apprise DHS of their location obviate their separate interest in keeping their families' healthcare records private. ICE likewise gave no significant weight to the interests of other participants in the healthcare system, who the Court found would be harmed by the policy change. ICE dismissed those concerns as "downstream," but the APA does not allow for such summary dismissal. *See City and Cnty. of San Francisco v. U.S. Citizenship and Imm. Servs.*, 408 F.Supp.3d 1057 (N.D. Cal. 2019) (holding DHS required to grapple with credible data about impact of proposed immigration policy on healthcare providers and States).

Finally, ICE completely failed to consider other important aspects of the problem, like the increased data safety risks that come from transferring sensitive medical files out of HHS. Defendants claim that ICE "thoroughly addressed concerns about safeguarding information," *see* Opp'n at 7-8. But Defendants' idea of "thoroughly addressed" is nothing but recitation of boilerplate language: "ICE has internal safeguards to ensure compliance with all federal statutory and regulatory requirements relating to the handling, maintenance, and use of information." ICE Memo at 7. A policy generated through reasoned decisionmaking would provide clear, transparent and enforceable requirements—not empty assurances.

D.    **CMS's New Policy Is Arbitrary And Capricious**

     1.    **CMS's New Policy Rests on Flawed Assumption that it Must Allow ICE Broad, Unfettered Access to Federal Healthcare Data**

In the case of Defendant CMS, the CMS Notice demonstrates that the agency has abdicated its responsibility to steward the privacy and confidentiality of the records for healthcare programs it administers, based on the same erroneous assumption about ICE's power to demand unfettered data transfers.  Agencies always bear the "affirmative burden" of "examining a key assumption" when "promulgating and explaining a non-arbitrary, non-capricious rule." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 389 (D.C. Cir. 2018) (quotations and alterations omitted).  "An unjustified leap of logic or unwarranted assumption … can erode any pillar underpinning an agency action, whether constructed from the what-is or the what-may-be." *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 588 (4th Cir. 2012).

Defendants attempt to minimize the breadth of the CMS Notice by claiming that that CMS is "committed to taking a minimalist approach" in response to data requests. Opp'n at 19; *see also* 90 Fed. Reg. at 53,325 (stating CMS's approach of sharing "the minimum required information with ICE, giving due consideration" to ICE's requests and acknowledging "federal laws that govern the provision of information to DHS and the CMS information requested").

Yet the issue of CMS's authority is never acknowledged directly or with specificity.  And CMS's "minimalist" caveats are meaningless in light of the actual text of the ICE Memo and CMS Notice, which provide no clear guardrails to which CMS could refuse an ICE data demand.  Although Defendants certainly grant that "immigration authorities" have exercised "enforcement discretion," with respect to the ICE Memo, Opp. at 22, nowhere in their opposition do Defendants argue that CMS has the same sort of discretionary authority.  And indeed, that would undercut their entire legal argument that currently flows from ICE's purported authority to demand any federal record at any time.  It is notable that CMS's prior data sharing reportedly took place over the objections of CMS career staff who raised these concerns and legal principles. ECF No. 43-6 Boergers Decl. Ex. A at 2.  And given the opportunity to explain, the agency has failed to substantiate core aspects of its reasoning:  by failing to interrogate whether

8

civil immigration enforcement counts as "law enforcement" for purposes of HIPAA, what steps are required by the Privacy Act to protect the information of citizens and Lawful Permanent Residents, and so forth. In *Regents*, the Supreme Court held that DHS acted arbitrarily and capriciously when it over-relied on the U.S. Attorney General's legal conclusion in deciding to terminate DACA, while failing to consider other important aspects of the problem (there, DACA recipients' reliance on the federal public benefits to which they had become eligible). *See* 591 U.S. at 24-33. So too here.

### 2. CMS's 2025 Notice Was Otherwise Arbitrary And Capricious

Meanwhile, CMS, like ICE, brushes away serious reliance interests and important aspects of the problem on the assumption that ICE is authorized by law to require transfers of data. Access to federal public benefits is "an interest 'courts often are called upon to protect,'" even when changing or enforcing immigration policy. *Regents*, 591 U.S. at 19 (citing *Chaney*, 470 U.S. at 832); *see also Cook Cnty., Illinois v. Wolf*, 962 F.3d 208, 233 (7th Cir. 2020) (DHS failed to consider "reliance interests of state and local governments" in prior policy regarding when immigrants are public charges). The preliminary record has already established the deep reliance that Plaintiffs and Medicaid users placed in CMS's prior statements and policy. *See* Pls. 1st Mot. for PI at 6-7; Pls. 3rd Mot. for PI at 7-9. Yet CMS, the agency that bears responsibility for effectuating Congress's intent in establishing the Medicaid program and its partnerships with the States, entirely ignores those reliance interests and the harms resulting from its policy shift in its opposition brief. This abdication of agency responsibility is not reasoned.

Neither Defendants in their opposition nor CMS in the Federal Register directly acknowledge the representations that both the federal government and the States have made in the federally mandated applications for Medicaid and other federal healthcare programs, which for years have promised confidentiality. Pls. Mot. at 8. CMS promises that it will be updating guidance it provides to the public "to reflect that federal laws authorize CMS to share certain information with DHS," 90 Fed. Reg. at 53,326, but the concrete action described says only that CMS "will update relevant websites." Updating CMS's websites does not provide sufficient

education or "guidance" to the public about the planned change in healthcare record privacy.   Nor does CMS mention the time it would take to revise and implement new applications in a legally compliant manner.  *See*, *e.g.*, 44 U.S.C. §§ 3501, 3507 (specifying requirements for agency collection of information). It is arbitrary and capricious to make this kind of a change without planning for time to revise the health program applications used across the country.

CMS also unreasonably ignores the impact that this change in policy will have on public trust.  *See* ECF 43-8 Cash Decl. ¶ 52; ECF 43-11 Flores-Brennen Decl. ¶ 25; ECF 43-12 Fontinos Decl. ¶ 26; ECF 43-28 Probert Decl. ¶ 22; ECF 43-30 Sandoe Decl. ¶ 25.  Defendants dismiss the damage to public trust as "derivative of […] reliance interests," but this dismissal is wrong.  Opp'n at 15.  Public trust in governmental healthcare institutions is a value all its own.  And this trust is endangered when an agency responsible for administering federal healthcare programs, after years of promising to the contrary, shares private information outside the agency for an unrelated purpose.  *See City and Cnty of San Francisco*, 783 F.Supp.3d at 1187-88 (finding changes in immigration policy would cause harm to local governments that had "deliberately endeavored to build trust with immigrant community […] regardless of immigration status" to feel comfortable interacting with government public agencies).

CMS also ignored the financial impacts that chilling effects will have on implementation of the Emergency Medical Treatment and Labor Act (EMTALA), which requires hospitals to provide emergency medical treatment to everyone in need, regardless of insurance coverage or ability to pay, and regardless of citizenship or immigration status.  42 U.S.C. § 1395dd.  While Plaintiffs do not argue that the CMS Notice directly violates EMTALA, they did explain that reduced willingness to apply for Medicaid when seeking emergency treatment will shift costs of uncompensated care to the States.  *See* Pls. 1st PI Mot. at 23 (citing declarations).  CMS should have weighed those types of costs when making its decision.  It did not.  Likewise, CMS's reliance on the supposed "scheme that Congress created," CMS Notice at 8, is flawed because it failed to consider EMTALA and other laws authorizing federal and state payment for medical

services for individuals who will be chilled from using those services.  CMS also failed to

consider that Congress expressly prohibited use of DHS's key benefits eligibility verification

system (the Systemic Alien Verification of Eligibility (SAVE) program) for immigration

enforcement purposes.  Pub. L. No. 99-603, tit I, pt. C, § 121(c)(1), 100 Stat. At 3391.

      The ambiguous nature of CMS's new policy compounds its flaws.  By refusing to place

clear limits on transfers of data relating to any particular category of individual, including U.S.

citizens, and by refusing to keep provider information, medical diagnoses, and other information

that is traditionally considered highly sensitive off limits, CMS's action likely contributes to

further fear and confusion.  CMS also fails to consider how its vague policy works in practice.

This problem is laid bare by ICE's nonsensical follow-up request to CMS for data regarding

those with what it calls "unsatisfactory immigration status" that does not track how that term is

actually used.  *See* Pls. Mot for 3d PI at 5-6. As Amici point out, that type of vagueness will have

a chilling effect on immigrant families who are legally entitled to Medicaid benefits.  CMS's

failure to consider limitations on data sharing—leaving the public to understand that there are *no*

meaningful limits on whose and what records will be shared with ICE—is further evidence that

CMS has failed to consider reliance interests.

      Defendants dismiss States' reliance interests, and the obvious solution of delaying any

implementation date in order to allow more time for informed choices about how to handle

residents' healthcare data, and adequate time to implement any changes, see Pls. Mot. at 19, by

noting that CMS has told States not to enter state-only data in T-MSIS.  CMS Notice at 8.  But

for States with policies that place all enrollees—both those eligible for state-only preventive

services and federal emergency Medicaid, and those eligible for full scope federal Medicaid—

into integrated, ACA-authorized managed care plans, the practical reality is not so simple.  These

States have made deliberate decisions to combine state-only and federally-funded plan

enrollment—relying on CMS's explicit assurances of privacy and confidentiality.  *See, e.g*., ECF

No. 43-12 (Fontinos Decl.) ¶¶ 13, 18.  CMS should have—but did not—consider the same type

of delayed implementation plan afforded to CMS's decision to stop allowing state-only enrollment in per capita ACA plans. *See* Mot. at 19.

Just as the Supreme Court in *Regents* held that DHS should have considered options for ameliorating the reliance interests of DACA recipients, 591 U.S. at 32, here, Defendants should have (but did not) consider alternatives like extending the implementation period for healthcare stakeholders to adjust to the administration's new policies. To require CMS to consider these kinds of obvious alternatives is not the same as requiring the agency to explore "every alternative device and thought conceivable to by the mind of man." *Id*. at 33 (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc*., 435 U.S. 519, 551 (1978)). CMS's action therefore is arbitrary and capricious.

### 3. CMS Likely Violated The APA's Notice And Comment Requirements

Plaintiffs are also likely to succeed on their claim that the APA requires CMS to comply with Section's notice and comment requirements.

Once again, Defendants' primary argument is that ICE data demands must be allowed because they fit within the Social Security Act's provision for disclosure "except as otherwise provided by Federal law." 42 U.S.C. § 1306(a)(1). But this argument fails to address that HHS's own regulations *already govern* interagency disclosures (all of which, presumably, are "provided by Federal law" on the receiving end), as DHS previously recognized in its 2013 policy. If this were generally true, HHS's extensive regulations on datasharing, as set forth *inter alia* at 42 C.F.R. § 401.135 [Medicare/Medicaid] and 45 C.F.R. § 155.260 [ACA plans] would be superfluous.

Moreover, the Social Security Act states that no disclosure "shall be made except as the head of the applicable agency may by regulations prescribe **and** except as otherwise provided by Federal law." 42 U.S.C. § 1306(a)(1) (emphasis added). That text suggests that disclosure shall not be made except according to HHS regulations "and" as provided by Federal law. *See Shubash v. District Director of U. S. Immigration and Naturalization Service*, 450 F.2d 345, 346

(9th Cir. 1971) (when "statutory conditions […] are in the conjunctive; both must be met");
*Hightower v. Kaiser Foundation Health Plan, Inc.*, No. 5:23-cv-00282-JWH-KK, 2023 WL
10406708, at * 4 (C.D. Cal. Aug. 14, 2023) ("The use of the conjunction 'and' means that all of
those conditions must be met").

There is no indication that CMS has attempted to analyze its obligations with respect to
its own regulations. Notably, Defendants concede that the new documents they have released in
their attempt to comply with the Court's order for a "reasoned decisionmaking process," are "at
most, statements of policy." Opp'n at 6. "Statements of policy" are plainly insufficient to
amend formally promulgated CMS regulations about Medicaid data. *Cf. Hemp Indus. Ass'n v.
Drug Enf't Admin*., 333 F.3d 1082 (9th Cir. 2003) (citing *American Min. Congress v. Mine Safety
& Health Admin*., 995 F.2d 1106, 1109-1112 (D.C. Cir. 1993)) (a rule is legislative when it
"effectively amends a prior legislative rule"). And these vague "statements of policy" are also
categorically insufficient to support the massive data sharing operation envisioned here (given
the procedural and substantive requirements that federal law ordinarily places on data use).

Plaintiffs do not dispute that HHS has authority to change its own regulations, including
in response to other federal agency data demands and other changes. But because there are
formal regulations on the books that affirmatively limit the purposes for which CMS can share
the records it administers, the agency must go through formal notice and comment—including
solicitation and consideration of stakeholder feedback—before it can create a new, per se
exception for immigration enforcement, as it seeks to do here. *See Linoz v. Heckler*, 800 F.2d
871, 877 (9th Cir. 1986) (rules that effect a change in existing law or policy, or remove previous
rights, must go through advance public notice and comment requirements).

## II.    PLAINTIFFS HAVE SHOWN ARTICLE III STANDING AND IRREPARABLE HARM

Defendants renew their arguments that Plaintiffs have not shown a significant likelihood of
standing, and or irreparable injury. Plaintiffs have put forth substantial evidence of both harm
for Article III purposes, and irreparable injury for purposes of a preliminary injunction. *See, e.g.,*
Reply Br. at 5-6, 13-15. Consistent with Plaintiffs' initial Motion for a Preliminary Injunction,

Pl.'s Mot. For 1st PI at 20-23, Plaintiffs continue to face the same harm and irreparable injury under the new CMS Notice, ICE Memo, and ICE Letter. Defendants offer no new evidence or argument that would alter Court's conclusion on these issues. *See* PI Order at 4.

## III.    REMAINING FACTORS CONTINUE TO WEIGH IN PLAINTIFFS' FAVOR

Defendants renew the argument made in their opposition to Plaintiffs' first motion for a preliminary injunction that the remaining preliminary injunction factor (the balance of harms and the public interest) favors them. But the Court has already considered this factor and found that it weighed in Plaintiffs' favor. PI Order at 4. Defendants raise no new legal issues, identify no new factual findings made in the course of their supposed "reasoned decisionmaking process," and offer no evidence to support alleged harm to the public interest if the status quo is preserved. *See* Opp'n at 24. This factor continues to weigh in Plaintiffs' favor under the new CMS Notice, ICE Memo, and ICE Letter

## IV.    REQUESTED RELIEF IS PROPER

As in their first motion, Plaintiffs' Notice of Motion seeks a preliminary injunction prohibition transfer of "the States'" Medicaid data files. Therefore, this motion does not implicate *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025).

In addition, to the "extent the Court rules on arbitrary and capricious grounds," Defendants ask it to "limit the scope of what is enjoined to actual identified deficiencies in the notice." This is not an appropriate request to make in response to a preliminary injunction, especially in response to decisions as broad and ambiguous as the ICE Memo and CMS Notice. The agencies' actions can only be upheld, "if at all, on the basis articulated by the agenc[ies] themselves" (*see State Farm*, 463 U.S. at 50); the Court should not accept Defendants' invitation to rewrite the policies.

Finally, for the reasons described in Plaintiffs' first reply brief, the Court should exercise its discretion to waive a bond or require one in a nominal amount. *See* ECF No. 89 (Pls. Reply Br.) at 15. There is no reason this case should not proceed expeditiously to summary adjudication after Defendants' production of the administrative record.

Dated:  December 6, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General for the State of New York
MARK LADOV*
Special Counsel
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
ZOE LEVINE*
Special Counsel for Immigrant Justice
NATASHA KORGAONKAR*
Special Counsel
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov
*Attorneys for the State of New York*
*Admitted pro hac vice

ROB BONTA
Attorney General for the State of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
MARIA F. BUXTON
KEVIN G. REYES
ANNA RICH
STEPHANIE T. YU

/s/_ Anna Rich_____
ANNA RICH
Deputy Attorneys General
*Attorneys for the State of California*

*Additional Counsel*
KRISTIN K. MAYES
Attorney General for the State of Arizona
ALEXA G. SALAS*
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Alexa.Salas@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*
*Admitted pro hac vice

PHILIP J. WEISER
Attorney General for the State of Colorado
RYAN LORCH*
Senior Assistant Attorney General
SAM WOLTER*
Assistant Attorney General
1300 Broadway, #10
Denver, CO 80203
Ryan.lorch@coag.gov
samuel.wolter@coag.gov
*Attorneys for the State of Colorado*
*Admitted pro hac vice

WILLIAM TONG
Attorney General of Connecticut
JANELLE MEDEIROS*
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
Janelle.Medeiros@ct.gov
*Attorneys for the State of Connecticut*
*Admitted pro hac vice

KATHLEEN JENNINGS
Attorney General for the State of Delaware
IAN R. LISTON
Director of Impact Litigation
JENNIFER KATE AARONSON
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
vanessa.kassab@delaware.gov
*Attorneys for the State of Delaware*
*Admitted pro hac vice

ANNE E. LOPEZ
Attorney General for the State of Hawaiʻi
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
DAVID D. DAY*
Special Assistant to the Attorney General
425 Queen Street
Honolulu, HI 96813
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
*Attorneys for the State of Hawaiʻi*
*Admitted pro hac vice

KWAME RAOUL
Attorney General for the State of Illinois
HARPREET KHERA*
Bureau Chief, Special Litigation
SHERIEF GABER*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
sherief.gaber@ilag.gov
harpreet.khera@ilag.gov
*Attorneys for the State of Illinois*
*Admitted pro hac vice

S. TRAVIS MAYO
General Counsel
Office of the Governor of Kentucky
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Governor of Kentucky,
Andy Beshear*
* Admitted pro hac vice

AARON M. FREY
Attorney General for the State of Maine
BRENDAN KRECKEL*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
brendan.d.kreckel@maine.gov
*Attorneys for the State of Maine*
*Admitted pro hac vice

ANTHONY G. BROWN
Attorney General for the State of Maryland
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Mdrezner@oag.state.md.us
*Attorneys for the State of Maryland*
*Admitted pro hac vice

ANDREA JOY CAMPBELL
 Attorney General for the State of
Massachusetts
KATHERINE DIRKS
Chief State Trial Counsel
CHLOE CABLE
ETHAN W. MARKS*
Assistant Attorneys General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
Katherine.Dirks@mass.gov
Chloe.Cable@mass.gov
Ethan.W.Marks@mass.gov
*Attorneys for the Commonwealth of
Massachusetts*
*Admitted pro hac vice

DANA NESSEL
Attorney General for the State of Michigan
NEIL GIOVANATTI*
BRYAN BEACH*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
GiovanattiN@michigan.gov
BeachB@michigan.gov
*Attorneys for the State of Michigan*
*Admitted pro hac vice

AARON D. FORD
Attorney General for the State of Nevada
HEIDI PARRY STERN* (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov
 *Attorneys for the State of Nevada*
*Admitted pro hac vice

RAUL TORREZ
Attorney General of New Mexico
AMY SENIER*
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504-1508
asenier@nmdoj.gov
*Attorneys for the State of New Mexico*
*Admitted pro hac vice

PETER F. NERONHA
Attorney General for the State of Rhode
Island
LEE B. STALEY*
Chief, Health Care Unit
150 South Main Street
Providence, RI 02903
lstaley@riag.ri.gov
*Attorneys for the State of Rhode Island*
*Admitted pro hac vice

KEITH ELLISON
Attorney General for the State of Minnesota
KATHERINE J. BIES
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Katherine.Bies@ag.state.mn.us
*Attorneys for the State of Minnesota*

MATTHEW J. PLATKIN
Attorney General for the State of New Jersey
ESTEFANIA PUGLIESE-SAVILLE*
ELIZABETH R. WALSH*
Deputy Attorneys General
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
Estefania.Pugliese-Saville@law.njoag.gov
elizabeth.walsh@law.njoag.gov
*Attorneys for the State of New Jersey*
*Admitted pro hac vice

DAN RAYFIELD
Attorney General State of Oregon
BRIAN S. MARSHALL
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Brian.S.Marshall@doj.oregon.gov
*Attorneys for the State of Oregon*

CHARITY R. CLARK
Attorney General for the State of Vermont
RYAN P. KANE*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
Ryan.kane@vermont.gov
 *Attorneys for the State of Vermont*
*Admitted pro hac vice

NICHOLAS W. BROWN
Attorney General of Washington
ZANE MULLER, WSBA 63777*
WILLIAM MCGINTY, WSBA #41868*
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
*Attorneys for the State of Washington*
*Admitted pro hac vice

JOSHUA L. KAUL
Attorney General for the State of Wisconsin
KARLA Z. KECKHAVER*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

PLAINTIFFS' REPLY IN SUP. OF THIRD MOTION FOR PRELIMINARY INJUNCTION (3:25-cv-05536-VC)