ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
MARIA F. BUXTON
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
  1515 Clay St., Floor 20
  Oakland, CA 94612-1499
  Telephone: (510) 879-0296
  E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR,** in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,** | 3:25-cv-05536-VC <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THIRD MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: <br> Time: <br> Dept:      Courtroom 4 <br> Judge:    Hon. Vince Chhabria <br> Trial Date:   Not set <br> Action Filed: July 1, 2025 |
| Plaintiffs, | |
| v. | |
| **U.S. DEP'T OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of Health and Human Services**; U.S. DEP'T OF HOMELAND SECURITY; KRISTI NOEM,** in her official capacity as Secretary of Homeland Security, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

Introduction...............................................................................................................................1

Argument ...................................................................................................................................2

    I.     Defendants Fail to Clarify the Scope of their New Policies and Rules ...................2

    II.    Defendants' Other Arguments Do Not Remedy Deficiencies in the
           Decisionmaking Process .......................................................................................8

    III.   Preliminarily Enjoining Defendants' Actions in their Entirety is the
           Correct Remedy ...................................................................................................11

Conclusion .................................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Bioscience, Inc. v. Thompson*
  243 F.3d 579 (D.C. Cir. 2001) ............................................................................... 14

*American Federation of Government Employees, AFL-CIO v. Federal Labor*
  *Relations Authority*
  24 F.4th 666 (D.C. Cir. 2022) ................................................................................ 12

*Bowen v. Am. Hosp. Ass'n*
  476 U.S. 610 (1986) ................................................................................................ 12

*Building & Construction Trades Dep't, AFL-CIO v. Allbaugh*
  295 F.3d 28 (D.C. Cir. 2002) ................................................................................... 7

*City & Cnty. of San Francisco v. U.S. Citizenship and Imm. Servs.*
  981 F.3d 742 (9th Cir. 2020) ............................................................................... 2, 7

*City of Columbus v. Kennedy*
  796 F.Supp.3d 123 (D. Md. 2025) ......................................................................... 15

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*
  No. CV 25-0457 (CKK), 2025 WL 3251044 (D.D.C. Nov. 21, 2025) ............... 7, 14

*Dep't of Homeland Sec. v. Regents of the Univ. of California*
  591 U.S. 1 (2020) .......................................................................................... 8, 10, 15

*E. Bay Sanctuary Covenant v. Trump*
  354 F. Supp. 3d 1094 (N.D. Cal. Dec. 19, 2018) .................................................. 14

*Encino Motorcars, LLC v. Navarro*
  579 U.S. 211 (2016) .................................................................................................. 8

*FCC v. Fox Television Stations*
  556 U.S. 502 (2009) .................................................................................................. 7

*In re Meta Pixel Healthcare Litig.*
  647 F.Supp.3d 778 (N.D. Cal. 2022) ...................................................................... 9

*League of Women Voters v. U.S.Dep't of Homeland Sec.*
  2025 WL 3198970 (Nov. 17, 2025) .......................................................................... 8

*League v. Ross*
  No. 20-CV-05799-LHK, 2020 WL 5441356 (N.D. Cal. Sept. 10, 2020) ............... 14

**TABLE OF AUTHORITIES**
(continued)

Page

*Loper Bright Enterprises v. Raimondo*
603 U.S. 369 (2024)..................................................................................................15

*Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*
73 F.4th 657 (9th Cir. 2023) ....................................................................................14

*Montana Wildlife Federation v. Haaland*
127 F.4th 1 (9th Cir. 2025) ......................................................................................14

*Nasdaq Stock Market LLC v. Securities and Exchange Commission*
38 F.4th 1126 (D.C. Cir. 2022)................................................................................12

*Norton v. Southern Utah Wilderness Alliance*
542 U.S. 55 (2004).....................................................................................................7

*People of State of Cal., By & Through Younger v. Weinberger*
505 F.2d 767 (9th Cir. 1974) ...................................................................................10

*Peters v. United States*
853 F.2d 692 (9th Cir. 1988) .....................................................................................9

*QueerDoc, PLLC v. U.S. Dep't of Justice*
2025 WL 3013568 (W.D. Wash. Oct. 27, 2025) ......................................................9

*Reyes-Reyes v. Ashcroft*
384 F.3d 782 (9th Cir. 2004) ...................................................................................12

*Sierra On-Line, Inc. v. Phx. Software, Inc.*
739 F.2d 1415 (9th Cir. 1984) .................................................................................13

*Thompson v. U.S. Dep't of Lab.*
885 F.2d 551 (9th Cir. 1989) ...................................................................................14

*Town of Southold v. Wheeler*
48 F.4th 67, 79, 83-84 (2nd Cir. 2022) .....................................................................7

*Trump v. American Federation of Government Employees*
145 S.Ct. 2635 (2025)................................................................................................7

*Trump v. CASA*
606 U.S. 831 (2025) (Kavanaugh, J., concurring)...................................................15

*U.S. Philips Corp. v. KBC Bank N.V.*
590 F.3d 1091 (9th Cir. 2010) .................................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

5 U.S.C.
§ 552a(b) .............................................................................................................9
§ 552a(e)(2) ........................................................................................................9
§ 705 ...........................................................................................................11, 15
§ 706(1) ...............................................................................................................7

8 U.S.C.
§ 1613 .................................................................................................................3

42 U.S.C.
§ 1306(a)(1) ......................................................................................................10
§ 1320d-5 ..........................................................................................................10
§ 1396a(a)(7) ....................................................................................................10

Administrative Procedure Act (APA).................................................... passim

Affordable Care Act.........................................................................................5

Freedom of Information Act .........................................................................10

Health Insurance Portability and Accountability Act (HIPAA) ................9

Privacy Act........................................................................................................8

**OTHER AUTHORITIES**

42 C.F.R.
§ 401.101(b) ......................................................................................................10
§§ 401.126(c) .....................................................................................................10

45 C.F.R.
§ 160.103 .............................................................................................................9
§ 164.512(f)(1)(ii)(C)(2) ....................................................................................9

64 Federal Register
28689, 28693 (Mar. 26, 1999) ..........................................................................3

84 Federal Register
41292, 41363 (Aug. 14, 2019) ...........................................................................3

87 Federal Register
55472, 55476 (Sept. 9, 2022).............................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page**

90 Federal Register
    52168 (Nov. 19, 2025) ..................................................................................................2

## INTRODUCTION

In their Supplemental Brief, Defendants fail to clarify the scope of their new healthcare data sharing policies—to the Court, the States, or the public at large.  It is not enough for Defendants to simply say that ICE will collect information from CMS "as permitted by law," when Defendants themselves have provided no clarity or specificity as to how they now interpret the phrase "as permitted by law."  These defects are all the more serious because Defendants' change in policy results in substantial harms to the States' Medicaid programs—harms Defendants summarily dismiss.  This is not the type of reasoned decisionmaking that the Administrative Procedure Act (APA) requires.

Here, the agencies' arbitrary and capricious reasoning infects the 2025 ICE Memo (ECF No. 131-2) and the CMS Notice (ECF No. 131-1) beyond cure. While federal courts have broad authority to fashion appropriate remedies for preliminary relief, the APA does not allow courts to fix defects in an agency's reasoning, or to accept counsel's litigation statements or other post-hoc rationalizations for reasoned decisionmaking.

Furthermore, an injunction that would permit some forms of data sharing is not feasible under the circumstances of this case.  Defendants' Supplemental Brief demonstrates that the data collected by Medicaid programs on immigration status would not permit CMS to respond to ICE's open-ended request with information only about individuals who are not citizens or permanent residents.  It also leaves open questions like what portions of Medicaid data files constitute "biographical" data.  It is the responsibility of the agencies—not the judiciary—to define with sufficient clarity the information that ICE believes it can access.  These policies (and any subsequent agency implementation of these actions) should be preliminarily enjoined in order to maintain the status quo between the parties, pending production of the administrative record and summary adjudication of Plaintiffs' claims.

//

//

//

//

1

## ARGUMENT

I.    **DEFENDANTS FAIL TO CLARIFY THE SCOPE OF THEIR NEW POLICIES AND RULES**

Defendants fail to provide clear answers to the Court's specific questions regarding the breadth of their new data sharing rules, policies, and practices.  Plaintiffs highlight below some key points on which Defendants' statements continue to be vague, incomplete, or misleading.

*Access to citizens' and lawful permanent residents' data*.  When the Court inquired whether Defendants' new policies "should be understood as not permitting ICE to obtain information about Medicaid patients and other patients who are U.S. citizens or permanent residents," Defendants' counsel responded, "That is correct, yes."  Tr. at 15:6-10.[1]  But that answer was wrong.  As Defendants now admit in their Supplemental Brief, the ICE Memo "does not preclude" obtaining information about "citizens."  ECF No. 146 (Defs. Supp. Br.) at 6.  And, as explained further below, the new policies and their implementation will require CMS to share data on lawful permanent residents (LPRs).  The Supplemental Brief conspicuously avoids the Court's question about whether ICE could access Medicaid records for LPRs under the new policy.  *Compare* Tr. at 12:3-6 (asking whether new policy "entitle[s] ICE to obtain information about citizens or permanent residents") *with* Defs. Supp. Br. at 5 (citing Tr. at 12:3-6 but addressing only "citizens and household members").

The question of sharing of citizens' and LPRs' Medicaid data is particularly high stakes because of the federal government's recent proposal to expand immigration officials' ability to consider receipt of public benefits like Medicaid in making decisions about a noncitizen's admissibility.  *See* Public Charge Ground of Inadmissibility, 90 Fed. Reg. 52168 (Nov. 19, 2025); s*ee generally, e.g.*, *City & Cnty. of San Francisco v. U.S. Citizenship and Imm. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020) (affirming preliminary injunction blocking 2019 public charge rulemaking).  In its proposal, the Department of Homeland Security ("DHS") suggests that it could use this information for LPRs "in the context of naturalization," meaning that an LPR who

---

[1] *See also* Tr. at 15:11-17 ("THE COURT: [A]ny ruling . . . about this could say the Federal Government concedes that ICE is only permitted to obtain information pursuant to this policy about people who are not U.S. citizens and not permanent residents? MR. GERARDI: I think that's correct under this policy.").

2

is on the path to citizenship and scrupulously complying with all legal requirements could be denied citizenship (and even deported) because of their lawful use of public healthcare benefits. *Id*. at 52185 n.95.[2]  Read together with the new public charge proposal, the 2025 ICE Memo and the CMS Notice would seem to open the door for immigration officials to conduct fishing expeditions through large pools of LPRs' data.

 *Specific immigration status data*.  The Court asked whether HHS tracks the specific immigration status of Medicaid users, including whether individuals are LPRs, are "otherwise permanently residing in the United States under color of law," or are unlawfully present.  Tr. at 29:9- 31:23.  Defendants' counsel said HHS does (*id*.), but this is incorrect.  HHS tracks whether an individual's immigration status renders them eligible for full scope Medicaid—but that is a separate question from whether an individual is potentially subject to an ICE enforcement action.

 The T-MSIS data elements Defendants cite in their Supplemental Brief bear this out.  *See* Defs. Supp. Br. at 3-4 (citing T-MSIS Data Guide data element, available at https://perma.cc/6VTC-VM4E).  Those elements show that T-MSIS's Medicaid records track four broad categories relating to immigration status: (1) "qualified" aliens; (2) those lawfully present under CHIPRA 214; (3) those "eligible only for payment of emergency services"; and (4) those for whom immigration status is "not applicable" (i.e. U.S. citizens or U.S. nationals).  Crucially, being "eligible only for payment of emergency services" does *not* mean that an individual is in the United States unlawfully.  It just means that that individual is not a "qualified alien" eligible for full scope, federally funded Medicaid (and not a citizen or lawfully present under CHIPRA in a state that elects an option to cover all lawfully present children and pregnant women).  *See* 8 U.S.C. § 1613 (restricting eligibility for federally funded, full scope

---

[2] While the federal government has in the past consistently taken the position that immigration authorities may not consider the receipt of emergency Medicaid in a public charge inquiry, *see* Public Charge Ground of Inadmissibility, 87 Fed. Reg. 55472, 55476 (Sept. 9, 2022) ("Consideration of Current and/or Past Receipt of Public Benefits" section); Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41292, 41363 (Aug. 14, 2019) ("DHS will not consider receipt of Emergency Medicaid . . . ."); Field Guidance on Deportability and Inadmissibility on Public Charge Grounds, 64 Fed. Reg. 28689, 28693 (Mar. 26, 1999) ("Benefits That May Not Be Considered for Public Charge Purposes" section), the latest Proposed Rule does not address how accessing emergency Medicaid coverage (or any healthcare programs for which the federal government can access data) would be construed by immigration officers.

Medicaid to LPRs who have resided in the U.S. at least five years).  For example, individuals who have LPR status but are still in a five-year waiting period can only receive emergency Medicaid coverage.[3]  Some state Medicaid programs refer to those eligible only for federally funded emergency services as having "unsatisfactory immigration status" for purposes of Medicaid, but this is not a proxy for *lack* of lawful status for immigration enforcement purposes—as CMS itself has noted.  *See* ECF No. 74, Ex. 1 (Mar. 18, 2025 Letter from CMS) (explaining that "without a satisfactory immigration status" includes LPRs "subject to a five-year waiting period").

This is why the November 24 ICE letter (ECF No. 133-1) and the December 10 ICE letter asking for data from non-Plaintiff states (ECF No. 146-1) make little sense.  *See* ECF No. 134 (Pls. 3rd PI Br.) at 5-6.  Those letters ask for information about "individuals with unsatisfactory immigration status (aliens not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law)."  But individuals who appear in Medicaid records with an "unsatisfactory immigration status" *include* individuals who are lawfully and permanently residing in the United States.  Moreover, the data demanded in the letters does not correspond to a T-MSIS data element; it is not one of the four categories of immigration statuses that CMS tracks.  Therefore, Defendants' prior statements that their actions would only impact individuals with "[i]rregular" or "without a lawful" immigration status are erroneous.  *See* ECF No. 138 (Opp'n) at 1, 4, 6, 15; Nov. 24, 2025 ICE letter.

*Household member data*.  Another question relating to the scope of Defendants' new data policies is whether ICE can access data about individuals who are not recipients of any federally funded Medicaid (either full-scope or emergency), but who have family or household members who are.  At the hearing, Defendants' counsel first said the "the answer is no," and then later clarified that he was "not sure of a precise answer."  Tr. at 12:3-7, 19:13-20:4.  Defendants now

---

[3] The federal government's Medicaid and CHIP Payment and Access Commission (MACPAC) spells this out on its website: "Legal permanent residents entering after August 22, 1996, are generally barred from receiving full Medicaid benefits for five years, after which coverage becomes a state option."  *See  Non-citizens*, Medicaid and CHIP Payment and Access Commission (Mar. 3, 2020), https://www.macpac.gov/subtopic/noncitizens/ (last visited Dec. 22, 2025).

vaguely state that their new actions "do not preclude the possibility." Defs. Supp. Br. at 6. Defendants' shifting statements only create more confusion on this issue.

*Application to other federal healthcare program data.* The Court asked Defendants to clarify whether their new data sharing policies cover only Medicaid participants (as referenced in the CMS Notice), or the data of participants in any CMS-administered federal healthcare program (as the 2025 ICE Memo suggests). In response, Defendants say that ICE "*may* have a legal right" to request other federal healthcare data. Defs. Supp. Br. at 4 (emphasis added). This means the data of participants in any other federal healthcare program, such as Medicare or the healthcare marketplaces authorized by the Affordable Care Act (ACA), is now at risk, raising new legal issues (which Defendants have not contended with in either the 2025 ICE Memo or CMS Notice). *See, e.g.,* Pls. 3rd PI Br. at 15 (describing ACA confidentiality rule). The broad scope of Defendants' policies would allow impacted programs to be changed at any time—with no public disclosure. *See* CMS Notice at 8 (claiming that "notice and comment is unnecessary" and stating that the notice was filed in the Federal Register because the agency "has been explicitly instructed by the district court").

*Scope of protected health data available to ICE.* Despite repeated questions raised by Plaintiffs and the Court, key terms in the 2025 ICE Memo and the CMS Notice remain undefined. For example, Defendants never explain what the term "biographical" information means, which could include protected health information about an individual's race, medical diagnoses, or other personal characteristics. Defendants similarly fail to answer the Court's request for "some examples of information that ICE would not be permitted to obtain from . . . HHS under this policy." Tr. at 26:9-12. Although Defendants have admitted that immigration authority does not create an "unlimited grant to ask for whatever the [DHS] secretary wants," Tr. at 28: 19-20, the new policy fails to explain those limits.

*Scope of permissible law enforcement activities.* Defendants suggest that the new data sharing policy may be applied for any purpose "relevant to ICE's criminal and civil enforcement mission," Opp'n at 13, but the 2025 ICE Memo also states that its action is "not limited" to those purposes. 2025 ICE Memo at 2. Despite questions from the Court, however, Defendants'

5

Supplemental Brief provides no meaningful information that would narrow or limit the purposes for which ICE may seek information, nor does it answer the Court's question of what authority ICE has beyond civil and criminal law enforcement. *See* Tr. at 16:7-18, 17:17-21. Instead, Defendants vaguely explain that their latest agency actions "did not attempt … to provide a complete legal … justification for such sharing," and cite to the 2025 ICE Memo's statement that it will only obtain information "as permitted by law." Defs. Supp Br. at 7. Defendants' decision to decline to provide "complete" legal justification for agency policy makes it hard for Plaintiffs (and the Court) to evaluate that justification.

*Recognition of privacy and confidentiality guardrails.* Finally, Defendants still have not clearly explained what, if any, legal guardrails limit ICE's ability to access federal healthcare data. Defense counsel conceded that some of the authority that the agencies have relied upon is "not an obviously unlimited grant to ask for whatever the secretary wants." Tr. at 28:18-20. But Defendants never articulate those limits. Instead, they simply state that the 2013 ICE Memo had "caused confusion and suggested ICE would not use HHS information at all for immigration enforcement." *Cf.* Defs. Supp. Br. at 2 (citing 2025 ICE Memo at 3). But nothing in the record supports a finding that the 2013 ICE Memo "caused confusion" (at least, not prior to the instant agency actions). Nor does merely rescinding the 2013 ICE Memo's explicit acknowledgment[4] that *there are legal guardrails* provide the Court, the States, or the public with an understanding of what ICE currently believes those guardrails to be. *See also* ECF No. 89-1 (Supp. Cash Decl.) ¶ 5 (noting that CMS had previously "continually assured States and Medicaid applicants (and the general public) that their data would be used for administration of the program" and "would not be used for immigration enforcement purposes").

---

[4] ICE previously stated:
**Consistent with** the ACA's, the SSA's, and implementing regulations' limitations on the use of information provided by individuals for such coverage, and in line with ICE's operational focus, ***ICE does not use information about such individuals or members of their household that is obtained for purposes of determining eligibility for such coverage as the basis for pursuing a civil immigration enforcement action*** against such individuals or members of their household, whether that information is provided by a federal agency to the Department of Homeland Security for purposes of verifying immigration status information or whether the information is provided to ICE by another source." ECF No. 134-2 (Rich Decl., Ex. A, ICE Policy Letter) (emphasis added).

6

These unanswered questions demonstrate that Defendants have not engaged in reasoned decisionmaking. Defendants complain that they do not need to "respond in advance to every hypothetical objection," and they "reserve[e] the right to consider questions about uses not explicitly contemplated in the memo." Defs. Supp. Br. at 8. An agency's "generality coupled with an expression of uncertainty" is not adequate analysis under the APA. *City & Cnty. of San Francisco*, 981 F.3d at 759. And the questions raised by the Court are far from "hypothetical"— they are core questions about how ICE's authority to acquire federal healthcare data intersects with CMS's legal responsibility to protect that data, which Defendants should have considered when promulgating the 2025 ICE Memo and CMS Notice. Defendants cannot consider all reliance interests without a clear understanding of the scope of individuals who will be impacted, but the APA requires this "more detailed justification" when an agency changes a prior policy that "rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009).

This case is very different from those cited by Defendants. This is not a case where a Presidential Executive Order has been issued directing agencies to make plans "consistent with applicable law" but federal agencies have not yet taken action, as in *Trump v. American Federation of Government Employees*, 145 S.Ct. 2635, 2635 (2025) or *Building & Construction Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).[5] In fact, the preliminary record in this case demonstrates that Defendants had begun secretly sharing confidential Medicaid data without regard for "applicable law" prior to the filing of this lawsuit. *See* Pls. 3rd PI Br. at 2-3 (summarizing and citing evidence); *cf. Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. CV 25-0457, 2025 WL 3251044, at *35 (D.D.C. Nov. 21, 2025) (enjoining data

---

[5] The other cases cited by Defendants to justify the vagueness and uncertainty of their new policies are similarly inapposite. For example, *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) involved claims pursuant to 5 U.S.C. § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed," which is plainly not the case here. Nor is this case similar to *Town of Southold v. Wheeler*, a "classic example of a factual dispute the resolution of which implicates substantial agency expertise," in which an agency action was upheld after a plaintiff failed to raise an issue during a formal notice-and-comment process. 48 F.4th 67, 79, 83-84 (2nd Cir. 2022).

7

sharing between IRS and ICE where the administrative record demonstrated that those agencies had "exhibited 'material noncompliance'" with written data sharing safeguards).

The Court should therefore enjoin further data sharing until Defendants can produce a policy that explains how their future data sharing will comply with the law, and how that compliance will be enforced. Defendants do not need to explain every possible application of a new policy, but they do need to address reasonably foreseeable questions, especially when they "involve important policy choices," *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020), as Medicaid data sharing clearly does. Defendants' failure to clarify their new policies will leave States unable to explain the new rules around confidentiality and privacy of individual data in Medicaid (or other federal healthcare programs) to their residents. *See* ECF No. 75 (Cash Decl.) ¶¶ 51-52. Failing to address these reliance interests is arbitrary and capricious decisionmaking. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (a "summary discussion" of reliance interests is not sufficient).

## II.    DEFENDANTS' OTHER ARGUMENTS DO NOT REMEDY DEFICIENCIES IN THE DECISIONMAKING PROCESS

Defendants raise additional legal arguments in their Supplemental Brief, but none demonstrates that the 2025 ICE Memo or CMS Notice complies with the APA's prohibition on arbitrary and capricious rulemaking. As stated above, the 2025 ICE Memo and the CMS Notice both fail to acknowledge any concrete limits on ICE's ability to collect personal healthcare information from CMS. In addressing sharing of data in ACA programs, Defendants acknowledge that "[r]equests for information collected by other health benefit programs would also have to consider any statutes governing privacy under those authorities." Defs. Supp. Br. at 5. But that is exactly what ICE and CMS failed to do in promulgating their new policies. Privacy statutes are namechecked, but given no meaningful consideration.

To begin, the Privacy Act "offers substantial protections regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S.Dep't of Homeland Sec.*, 2025 WL 3198970 at *1 (Nov. 17, 2025). The law requires federal agencies to "collect information to the greatest extent practicable directly from the subject individual" when

use of the information can adversely affect the individual's rights and prohibits interagency disclosure of government records except in limited circumstances. 5 U.S.C. §§ 552a(e)(2), (b); *see generally* ECF No. 108 (Am. Compl.) ¶¶ 69-80. Defendants state that the "Privacy Act only applies to citizens and lawful permanent residents, information that ICE's request letters do not seek." Defs. Supp. Br. at 8. But this response is not reasonable because the challenged agency actions *do* permit sharing of LPR and citizen data, and the requests in ICE's recent letters are likely to lead to the sharing of LPR data. *See supra* pp. 2-4.

　　With respect to the Health Insurance Portability and Accountability Act (HIPAA), Defendants again fail to provide any meaningful explanation of how the new challenged 2025 ICE Memo or the CMS Notice will comply, especially in light of those documents' open-ended purposes and the applicability of HIPAA to all individually identifiable Medicaid records. *See* 45 C.F.R. §§ 160.103 (definition of "protected health information"), 160.103(v) (definition of "health plan" which includes the Medicaid program).[6] Defendants assert, with no analysis, that ICE's request "complies with th[e] regulation" implementing HIPAA that permits disclosure of protected health information "for law enforcement purposes to a law enforcement official." Defs. Supp. Br. at 9 (citing 45 C.F.R. §164.512(f)(1)(ii)). Defendants fail to explain how CMS will ensure that disclosures to ICE are appropriately narrowed, or how the agencies will comply with the requirement that law enforcement requests be "specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought." 45 C.F.R. §164.512(f)(1)(ii)(C)(2). This is not reasoned decisionmaking. Defendants' "*ipse dixit* reasoning" would "preclude any form of judicial review as the Government's self-proclaimed say-so" and preemptively bless the kind of administrative "fishing expedition" that the Ninth Circuit held in *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) to be an improper use of administrative authority. *QueerDoc, PLLC v. U.S. Dep't of Justice*, 2025 WL

---

[6] *See generally* U.S. Dep't of Health and Human Servs., *Summary of the HIPAA Privacy Rule, What Information is Protected* (last updated Mar. 14, 2025), https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html#what (explaining that names, addresses, and many other common identifiers are protected health information in connection with provision of or payment for healthcare); *see also In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 792 (N.D. Cal. 2022) (holding that patient status is HIPAA-protected health information).

9

3013568, *5, 6 _ F.Supp._ (W.D. Wash. Oct. 27, 2025) (citing *Peters* and granting motion to
quash federal government's broad administrative demand for HIPAA-protected patient data).[7]

      Finally, Defendants take issue with the States' interpretation of the Social Security Act's
(SSA's) limitation that "no disclosure ... of any file, record, report, or other paper, or any
information … shall be made except as the head of the applicable agency may by regulations
prescribe and except as otherwise provided by Federal law."  42 U.S.C. §1306(a)(1).
Apparently, Defendants' view of this provision is that so long as a different federal agency is
authorized by federal law to *obtain* records, the rules and regulations governing an agency's
limits on *disclosing* those records are irrelevant.  But even assuming CMS has some legal
obligation to respond to a request for information made by ICE, it still must respond in a manner
consistent with HHS's own regulations governing release of federal healthcare data to federal
agencies—which *inter alia* forbid sharing of Medicaid data "[e]xcept as authorized by the rules
in this subpart," 42 C.F.R. § 401.101(b) —or it must change those regulations to eliminate that
conflict.  *See, e.g.*, 42 C.F.R. §§ 401.126(c) (Medicaid data can only be shared in accordance
with "obligations of confidentiality and administrative necessity"); *see also People of State of
Cal., By & Through Younger v. Weinberger*, 505 F.2d 767 (9th Cir. 1974) (rejecting application
of Freedom of Information Act claim as it applies to SSA-covered records).  HHS should have
considered how its new policy of opening up Medicaid records for broad-based immigration
enforcement would conflict with its existing privacy rules and practices, and what steps were
needed to address or mitigate that conflict.  It did not do so.

      Even assuming that disclosure of some information from Medicaid records to ICE is
legally permissible, Defendants' actions are *still* arbitrary and capricious because they "failed to
consider important aspects of the problem before [them]", *Regents*, 591 U.S. at 25 (quoting

---

[7] Defendants also argue that the States cannot enforce HIPAA in their role
as *parens patriae*, notwithstanding that Congress specifically gave the States authority to enforce
on behalf of their citizens, *see* 42 U.S.C. § 1320d-5.  But here, the States are not trying to step
into the shoes of their residents and directly bring claims against the federal government for
HIPAA violations; instead, States are bringing an APA challenge to Defendants' underlying
policies in order to preserve their own ability to administer their Medicaid programs in
accordance with federal confidentiality protections, e.g., 42 U.S.C. § 1396a(a)(7) (providing that
States must safeguard disclosure of information "to purposes directly connected with … the
administration of the [Medicaid] plan" (or verifying eligibility for school lunch)).

10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (internal marks omitted), or "alternatives that are within the ambit of the existing policy," *id*. at 30 (internal marks omitted). These include the States' *own* reliance interests on CMS's assurances of confidentiality and privacy (including statements made on healthcare.gov and in the States' required healthcare applications); damage to public trust; whether alternative, narrower data sharing policies could have been adopted instead; and increased uncompensated care costs and other harms to State Medicaid programs. *See* ECF No. 140 (Pls. 3rd Reply Br.) at 9-12. All of these factors were either not considered at all or assigned "little weight" based on Defendants' conclusory assumption that they were derivative of noncitizens' interest in keeping their addresses confidential. This reasoning is arbitrary and capricious.

III. **PRELIMINARILY ENJOINING DEFENDANTS' ACTIONS IN THEIR ENTIRETY IS THE CORRECT REMEDY**

As a general matter, Plaintiffs agree that the Court has broad authority to issue relief under Section 705 of the APA "as may be required and to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.

In this case, however, the flaws in Defendants' reasoning are so numerous and pervasive that it is not possible to segregate "reasonable" elements of the new policies. That is particularly so when it comes to the important aspects of the problem that Defendants failed to consider, none of which hinge on a single distinct and severable element of datasharing. *See* Pls. 3rd PI Br. at 10-14 (describing important aspects of the problem). As the Court noted, "separate from the reliance interests ... there is also the issue of what sort of harm" this will cause the Medicaid program, and the "Federal/State goal of delivering healthcare to the nation's most indigent residents." Tr. at 32:24-33:4.

Severing "reasonable" from "unreasonable" elements of Defendants' policies also does not make sense in light of the 2025 ICE Memo and CMS Notice's many ambiguities and lack of formal rule structure. For example, Defendants' refusal to clarify whether their new policy applies to LPRs and citizens is an issue that, upon examination, is not severable—in light of the broad T-MSIS categories that CMS collects related to immigration status, it is not clear that an

11

injunction that allowed only sharing of non-citizen, non-LPR data would even be feasible.  *See supra* at pp. 3-4.

Defendants repeatedly refer to the 2025 ICE Memo's severability provisions, but "'the ultimate determination of severability will rarely turn on the presence or absence' of a severability clause," instead, courts "look to agency intent and whether the valid portions can function absent the invalid portions."  *Nasdaq Stock Market LLC v. Securities and Exchange Commission*, 38 F.4th 1126, 1145 (D.C. Cir. 2022).  Because the 2025 ICE Memo and CMS Notice are not formally promulgated regulations, a partial grant of a preliminary injunction is not as simple as enjoining some provisions while allowing others.  The better course would be to preliminarily enjoin the actions as a whole.  *See American Federation of Government Employees, AFL-CIO v. Federal Labor Relations Authority*, 24 F.4th 666, 674 (D.C. Cir. 2022) (suggesting that courts should invalidate agency action as a whole if they are "not sure" that the arbitrary and capricious provisions are "wholly independent" of the rest of the rule).

It would also be improper (and would potentially usurp the role of the agency) for the Court to rewrite the agencies' policies to correct the infirmities in Defendants' reasoning.  For example, ICE claims that it needs "biographical" information from confidential Medicaid files to support its immigration enforcement activities, without ever defining what "biographical" means.  As explained above, that lack of clarity is part of why the 2025 ICE Memo and ICE's letters requesting data from CMS do not reflect reasoned decisionmaking.  But ICE, not the Court, should define and explain what specific "biographical" information is needed to support its purposes in the first instance.  "[T]he principle of agency accountability ... means that 'an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'"  *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 (1986) (quoting *State Farm*, 463 U.S. at 50).  DHS and HHS should be required to issue clear and reasoned policies, rather than relying on the Court fix their errors, because a core purpose of the APA is to ensure that the agencies "consistently apply a coherent set of rules."  *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004).

Complete relief will also better preserve the status quo and prevent the States from suffering significant and irreparable harm.  *See* ECF No. 42-2 (Pls. 1st PI Br.) at 20-24; ECF No.

12

89 (Pls. 1st Reply Br.) at 13-15; *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) ("[The] purpose of a preliminary injunction ... is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."); *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). ("A preliminary injunction ... is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment."). Granting a partial injunction would require the Court to make predictions about the effects of different aspects of the agency actions (e.g., the harms caused by disclosure of names and addresses compared to harms caused by even broader disclosures). And Plaintiffs' evidence shows that sharing of Medicaid data for immigration enforcement purposes as a whole would likely cause irreparable harm to the States.[8]  A partial preliminary remedy would not provide full preliminary relief from those harms. It would also create new practical problems on the ground, requiring the States and Medicaid providers to bounce back and forth between different versions of a new datasharing policy, contributing to further fear and confusion, and requiring yet more difficult communications with patients that would be costly both in terms of administrative resources and public trust.

Furthermore, it would be improper for the Court to interpret these agency policies and define the scope of injunctive relief based solely on litigation representations about the Defendants' actions and intent when they conflict with their public statements. For example, Defendants insist that ICE is only seeking "information that aliens already have an obligation to provide to immigration authorities," Defs. Supp. Br. at 6, and only for individuals who are "not complying with their legal obligations respecting immigration authorities," *id.* at 4. But the new policies go far beyond those limits by reserving the right to seek "other information on a case-by-case basis." CMS Memo at 6. And as noted above, CMS will not be able to respond to ICE's

---

[8] Indeed, reporting from non-plaintiff states found that "significantly higher-than-usual number of immigrant patients have skipped health care appointments and experienced heightened stress levels" during recent immigration enforcement actions. *See* Halle Parker, *'The baby was completely gray':* Halle Parker, *Immigrants choose between health care and risk of deportation*, Verite News (Dec. 16, 2025), available at https://veritenews.org/2025/12/16/immigrants-health-care-catahoula-crunch/.

pending letter request without sharing information on LPRs' legal use of Medicaid benefits (which could now put them at risk of being labeled a "public charge" under new proposed rules), due to the limitations of how existing Medicaid data is collected. *See supra* pp. 3-4. Considering Defendants' secretive (and likely unlawful) conduct prior to the filing of this lawsuit, and the deliberately vague nature of the new policies, it would be improper for the Court to impose limits on Defendants' data sharing based solely on "post hoc rationalization" and materials "drafted for litigation." *See League v. Ross*, No. 20-CV-05799-LHK, 2020 WL 5441356, at *12 (N.D. Cal. Sept. 10, 2020) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*, 73 F.4th 657, 668 (9th Cir. 2023) ("[A]n agency must defend its actions based on the reasons it gave when it acted, not with post hoc rationalizations.") (cleaned up). Instead, the Court should order Defendants to produce an administrative record that reveals "the agency's reasons for acting at the time of the action." *See League*, 2020 WL 5441356, at *12.[9] That record should be the "whole" administrative record, which "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original).

The APA does permit a Court, in appropriate cases, to fashion remedies other than injunctive relief. For example, a court does "retain[] equitable discretion in 'limited circumstances' to remand" a defective action to the agency "without vacatur while the agency corrects its errors.'" *Montana Wildlife Federation v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)). But this

---

[9] *See also E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106–07 (N.D. Cal. Dec. 19, 2018) (holding that "[t]he APA instructs that . . . the court shall review the whole record or those parts of it cited by a party" and "to the extent practicable, a court should determine a plaintiff's likelihood of success on the merits of such a challenge based on the administrative record") (internal quotation marks removed); *see also Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (holding that the district court abused its discretion in denying a preliminary injunction by using "the parties' written or oral representations to discern the basis on which the [agency] acted" instead of "calling for the administrative record"); *Ctr. for Taxpayer Rts*, 2025 WL 3251044, at *30 ("In determining whether agency action is arbitrary and capricious, the Court's review must be based on the full administrative record that was before the agency at the time it made its decision.") (cleaned up, citation omitted).

case does not meet the stringent criteria for remand without vacatur, which include "how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'"  *Id.* (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012)).  Here, as described above, the agency's errors are numerous and its arbitrary decisionmaking has infected the new policy.  And the consequences of partial implementation of the new policies while the agency considers additional options would cause more confusion and harm to States and Medicaid stakeholders without causing any corresponding harm to Defendants beyond delaying their desired disruption to the well-established status quo.

For these reasons, the Court should exercise its authority to stay enforceability or postpone the effective date of the 2025 ICE Memo and the CMS Notice until the administrative record has been produced and summary adjudication is complete.  *See* 5 U.S.C. § 705 (allowing courts to "postpone the effective date of an agency action"); *see also City of Columbus v. Kennedy,* 796 F.Supp.3d 123, 175 (D. Md. 2025) (finding appropriate remedy is postponement of effective date of agency rule); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391 (2024) (citation omitted) (explaining that courts must serve "as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices"); *Trump v. CASA*, 606 U.S. 831, 872-74 (2025) (Kavanaugh, J., concurring) (noting that even after *CASA*, a court may preliminarily set aside a new agency rule in APA cases).  Or the Court could use its equitable authority to continue the prior preliminary injunction until such a time as Defendants have promulgated yet another decisionmaking process.  But "permitting agencies to invoke belated justifications … can upset the orderly functioning of the process of review, forcing both litigants and courts to chase a moving target."  *Regents*, 591 U.S. at 23.  Defendants have already had two bites at this apple and have failed to adequately justify their policies; the Court should require production of the full administrative record and review before giving them a third.

## CONCLUSION

In order to give the States complete relief while this case is pending, the Court should preserve the status quo and grant Plaintiffs' motion for a preliminary injunction in full.

15

Dated:  December 22, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General for the State of New York
MARK LADOV*
Special Counsel
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
ZOE LEVINE*
Special Counsel for Immigrant Justice
NATASHA KORGAONKAR*
Special Counsel
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov
*Attorneys for the State of New York*
*Admitted pro hac vice

ROB BONTA
Attorney General for the State of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
MARIA F. BUXTON
KATHERINE MILTON
KEVIN G. REYES
ANNA RICH
STEPHANIE T. YU

/s/  *Anna Rich*_____
ANNA RICH
Deputy Attorneys General
*Attorneys for the State of California*

*Additional Counsel*
KRISTIN K. MAYES
Attorney General for the State of Arizona
ALEXA G. SALAS*
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Alexa.Salas@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*
*Admitted pro hac vice

PHILIP J. WEISER
Attorney General for the State of Colorado
RYAN LORCH*
Senior Assistant Attorney General
SAM WOLTER*
Assistant Attorney General
1300 Broadway, #10
Denver, CO 80203
Ryan.lorch@coag.gov
samuel.wolter@coag.gov
*Attorneys for the State of Colorado*
*Admitted pro hac vice

WILLIAM TONG
Attorney General of Connecticut
JANELLE MEDEIROS*
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
Janelle.Medeiros@ct.gov
*Attorneys for the State of Connecticut*
*Admitted pro hac vice

KATHLEEN JENNINGS
Attorney General for the State of Delaware
IAN R. LISTON
Director of Impact Litigation
JENNIFER KATE AARONSON
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
vanessa.kassab@delaware.gov
*Attorneys for the State of Delaware*
*Admitted pro hac vice

PLAINTIFFS' SUPP. BRIEF ISO THIRD MOTION FOR PRELIM. INJ. (3:25-cv-05536-VC)

ANNE E. LOPEZ
Attorney General for the State of Hawaiʻi
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
DAVID D. DAY*
Special Assistant to the Attorney General
425 Queen Street
Honolulu, HI 96813
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
*Attorneys for the State of Hawaiʻi*
*Admitted pro hac vice

S. TRAVIS MAYO
General Counsel
Office of the Governor of Kentucky
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Governor of Kentucky,
Andy Beshear*
* Admitted pro hac vice

ANTHONY G. BROWN
Attorney General for the State of Maryland
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Mdrezner@oag.state.md.us
*Attorneys for the State of Maryland*
*Admitted pro hac vice

KWAME RAOUL
Attorney General for the State of Illinois
HARPREET KHERA*
Bureau Chief, Special Litigation
SHERIEF GABER*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
sherief.gaber@ilag.gov
harpreet.khera@ilag.gov
*Attorneys for the State of Illinois*
*Admitted pro hac vice

AARON M. FREY
Attorney General for the State of Maine
BRENDAN KRECKEL*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
brendan.d.kreckel@maine.gov
*Attorneys for the State of Maine*
*Admitted pro hac vice

ANDREA JOY CAMPBELL
 Attorney General for the State of
Massachusetts
KATHERINE DIRKS
Chief State Trial Counsel
CHLOE CABLE
ETHAN W. MARKS*
Assistant Attorneys General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
Katherine.Dirks@mass.gov
Chloe.Cable@mass.gov
Ethan.W.Marks@mass.gov
*Attorneys for the Commonwealth of
Massachusetts*
*Admitted pro hac vice

17

DANA NESSEL
Attorney General for the State of Michigan
NEIL GIOVANATTI*
BRYAN BEACH*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
GiovanattiN@michigan.gov
BeachB@michigan.gov
*Attorneys for the State of Michigan*
*Admitted pro hac vice

AARON D. FORD
Attorney General for the State of Nevada
HEIDI PARRY STERN* (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov
*Attorneys for the State of Nevada*
*Admitted pro hac vice

RAÚL TORREZ
Attorney General of New Mexico
AMY SENIER*
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
asenier@nmdoj.gov
*Attorneys for the State of New Mexico*
*Admitted pro hac vice

PETER F. NERONHA
Attorney General for the State of Rhode
Island
LEE B. STALEY*
Chief, Health Care Unit
150 South Main Street
Providence, RI 02903
lstaley@riag.ri.gov
*Attorneys for the State of Rhode Island*
*Admitted pro hac vice

KEITH ELLISON
Attorney General for the State of Minnesota
KATHERINE J. BIES
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Katherine.Bies@ag.state.mn.us
*Attorneys for the State of Minnesota*

MATTHEW J. PLATKIN
Attorney General for the State of New Jersey
ESTEFANIA PUGLIESE-SAVILLE*
ELIZABETH R. WALSH*
Deputy Attorneys General
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
Estefania.Pugliese-Saville@law.njoag.gov
elizabeth.walsh@law.njoag.gov
*Attorneys for the State of New Jersey*
*Admitted pro hac vice

DAN RAYFIELD
Attorney General State of Oregon
BRIAN S. MARSHALL
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Brian.S.Marshall@doj.oregon.gov
*Attorneys for the State of Oregon*

CHARITY R. CLARK
Attorney General for the State of Vermont
RYAN P. KANE*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
Ryan.kane@vermont.gov
*Attorneys for the State of Vermont*
*Admitted pro hac vice

NICHOLAS W. BROWN
Attorney General of Washington
ZANE MULLER, WSBA 63777*
WILLIAM MCGINTY, WSBA #41868*
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
*Attorneys for the State of Washington*
*Admitted pro hac vice

JOSHUA L. KAUL
Attorney General for the State of Wisconsin
KARLA Z. KECKHAVER*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

PLAINTIFFS' SUPP. BRIEF ISO THIRD MOTION FOR PRELIM. INJ. (3:25-cv-05536-VC)