UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>　　　　Defendants. | Case No.  25-cv-05536-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 134 |

　　　　As explained in an order granting the States' prior motion for a preliminary injunction, Dkt. No. 98, DHS and HHS needed to engage in a reasoned decisionmaking process to explain their abrupt departure from their past policies of not sharing or using Medicaid data for immigration enforcement purposes. DHS and HHS have since released documents explaining their new proposed data-sharing policies. Dkt. Nos. 131-1 (ICE Memo), 131-2 (CMS Notice). The States challenge those new policies in a renewed motion for a preliminary injunction. The motion is denied as to the data that is the primary focus of the new policies—basic biographical, location, and contact information—because the sharing of such information is clearly authorized by law and the agencies have adequately explained their decisions. But the motion is granted to the extent the new policies authorize the sharing of information beyond these categories because the new policies are totally unclear about what that information would be, why it would be needed for immigration enforcement purposes, and what the risks of sharing it with DHS would be. This ruling assumes the reader's familiarity with the facts, the applicable legal standards, and

the arguments made by the parties.[1]

1. Under the Administrative Procedure Act, agencies must address important aspects of the problem and any reasonable alternatives "within the ambit" of the policy at issue, especially when they "involve important policy choices." *DHS v. Regents of the University of California*, 591 U.S. 1, 30 (2020). But they "are not compelled to explore every alternative device and thought conceivable by the mind of man." *Id.* at 33. Applying this standard, the States have not demonstrated a likelihood of success on the merits as to the core aspects of the new data-sharing policies, which primarily focus on Medicaid data revealing the biographical, contact, and location information of unlawfully present aliens that DHS is already entitled to know. *See* ICE Memo at 5-7 (explaining that aliens are typically required by law to provide certain data to DHS). The formal data request sent by ICE to CMS reflects that focus by specifying "citizenship and immigration status, address, phone number, [and] date of birth" as examples of what is being requested with respect to "aliens not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." Dkt. No. 133-1. And the CMS Notice states that, in response to such requests, CMS "will share the minimum required information," such as "citizenship and immigration status, location, and phone numbers." CMS Notice at 6-7.

That kind of data sharing is clearly authorized by statute. As the ICE Memo explains, DHS has always possessed broad statutory authority to request and to use certain data from other agencies to pursue legitimate law enforcement objectives, like immigration enforcement. ICE Memo at 2; *see also* 8 U.S.C. § 1360(b) ("Any information in any records kept by any

---

[1] As a threshold matter, the challenged policies are "final" agency actions that are reviewable under the APA. Agency action is "final" it marks "the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also Oregon National Desert Association v. U.S. Forest Service*, 465 F.3d 977, 986-87 (9th Cir. 2006). Here, the ICE Memo and CMS Notice mark the consummation of a reasoned decisionmaking process required by this Court's prior order. And legal consequences flow from the agencies' position that ICE is entitled to obtain certain information from CMS.

department or agency of the Government as to the identity and location of aliens in the United States shall be made available to [DHS] upon request made by the Attorney General to the head of any such department or agency."); 6 U.S.C. § 122(a)(2) ("The [DHS] Secretary shall also have access to other information relating to matters under the responsibility of the Secretary that may be collected, possessed, or prepared by an agency of the Federal Government as the President may further provide."). The CMS Notice relies on those same statutory authorities. CMS Notice at 4-5.

The States argue that DHS's statutory authority to request information does not mean that CMS has the authority to share that information. But the statutes upon which the ICE Memo relies clearly state that the relevant data requested by DHS "shall be made available," 8 U.S.C. § 1360(b), and that the Secretary "shall . . . have access" to such data. 6 U.S.C. § 122(a)(2). Congress could not have made a clearer statement about DHS's entitlement to certain data from other agencies, and that entitlement would be meaningless if it did not also obligate agencies to comply with DHS's legitimate data requests.

The States further argue that the Government engaged in flawed legal analysis by failing to consider the countervailing restrictions imposed by the Affordable Care Act, Privacy Act, HIPAA, and the Social Security Act on HHS's disclosing certain data. But those authorities do not support setting aside the policies at issue in their entirety. The CMS regulations implementing the ACA prohibit the disclosure of data created or collected by the Exchange, which does not cover the Medicaid data actually requested by ICE. *See* 45 C.F.R. § 155.260(a); Dkt. No. 133-1. The Privacy Act and the CMS regulations implementing HIPAA permit disclosure of otherwise protected data for law enforcement purposes such as immigration enforcement.[2] *See* 5 U.S.C. § 552a(b)(7) (Privacy Act); 45 C.F.R. § 164.512(f) (HIPAA regulations). And the SSA allows disclosures when "provided by Federal law," such as the

---

[2] In any event, the Privacy Act applies only to citizens and lawful permanent residents, whose data is off limits for the reasons explained later. *See* 5 U.S.C. 552a(a)(2).

statutes cited in the ICE Memo. 42 U.S.C. § 1306(a)(1).[3] Those authorities therefore do not restrict ICE from obtaining Medicaid data pertaining to the basic biographical, contact, and location data of unlawfully present aliens.

The States' other APA challenges also fail—at least, as applied to basic biographical, contact, and location information. The States argue that the Government failed to consider important reliance interests, but the ICE Memo assesses the reliance interests of unlawfully present aliens at length before concluding that those interests are entitled to "little to no weight" and that they are "outweighed by ICE's legitimate law enforcement interest" in using updated contact and location information "for effective immigration enforcement." ICE Memo at 6-7. The ICE Memo further concluded that any interests of the States that are distinct from those of unlawfully present aliens "are entitled to little weight because they simply reflect the scheme that Congress created." ICE Memo at 7-8. The CMS Notice adopted the same analysis. CMS Notice at 7-9. The documents are hardly masterpieces, but their reasoning satisfies the APA's highly deferential standard, which gives the Government leeway in how to "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS*, 591 U.S. at 32; *see also Ranchers Cattlemen Action Legal Fund v. USDA*, 499 F.3d 1108, 1115 (9th Cir. 2007) (emphasizing the APA's "highly deferential" standard of review).

Finally, the States argue that the CMS Notice is a legislative rule and therefore needed to undergo notice-and-comment rulemaking. In particular, the States contend that the CMS Notice

---

[3] The States argue that because the SSA provides that no disclosure "shall be made except as the head of the applicable agency may by regulations prescribe *and* except as otherwise provided by Federal law," both statutory conditions must be met. Dkt. No. 140, at 12 (citing 42 U.S.C. § 1306(a)(1) (emphasis added)). In other words, according to the States, not only must some other federal law authorize disclosure, but CMS itself must promulgate separate regulations doing the same. But that reading of the statutory text defies common sense because it would effectively allow CMS to unilaterally thwart a congressional mandate for disclosure by simply refusing to promulgate its own regulations. *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1051 (9th Cir. 2003) ("A statute's use of disjunctive or conjunctive language is not always determinative. Rather, we must strive to give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that defies common sense." (cleaned up)).

carries the force of law because, without it, CMS would have no legislative basis for sharing data with ICE and because it effectively amends other legislative rules that purportedly restrict routine data sharing with other agencies. Those arguments are incorrect. As explained above, even without the CMS Notice, CMS would have been authorized—and, in fact, required—to share certain data with ICE under 8 U.S.C. § 1360(b) and 6 U.S.C. § 122(a)(2). *See supra* at 3-4 & n.4. The CMS Notice therefore did not effectively amend the rules cited by the States, 45 C.F.R. § 155.260 and 42 C.F.R. § 401.134, because those rules do not prohibit CMS from fulfilling its statutory obligations. In other words, the CMS Notice does not add to or revise any existing law; it "merely represents an agency position with respect to how it will treat—typically enforce—the governing legal norm." *Syncor International Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997).

  2. Beyond the basic information discussed above, the policies are totally unclear and do not appear to be the product of a coherent decisionmaking process. It is unclear (1) whether DHS may obtain from HHS any information relevant to any proceedings beyond criminal immigration investigations or civil enforcement actions; (2) what data DHS is authorized to obtain from HHS on a "case-by-case" basis and what factors are considered in such inquiries; and (3) whether DHS may request any data from HHS about citizens or lawful permanent residents, including members of mixed-status households. It's even an open question whether the policies would allow HHS to share sensitive medical information about Medicaid patients with DHS—information that's difficult to imagine the agency needing for any legitimate purpose. Furthermore, neither the ICE Memo nor the CMS Notice address why a more narrowly tailored policy, focused on the basic biographical information discussed above, would not suffice for immigration enforcement purposes. At the December 9, 2025, hearing, the Government failed to provide satisfactory answers to these and other questions based on the contemporaneous record, and the Government's supplemental brief only adds to the confusion.[4] Because the scope of

---

[4] For example, at the December 9, 2025, hearing, the Government asserted that ICE's new policy permits ICE to obtain information only about people who are not U.S. citizens and

DHS's authority to obtain and to use certain data about unlawfully present aliens (or any data about citizens or lawful permanent residents) is a matter of significant consequence, the challenged policies are likely arbitrary and capricious to the extent that they offer no coherent explanation as to their vague language and likely overbroad scope.

The States have also shown that they will suffer irreparable harm from these vague and likely overbroad portions of the ICE and CMS policies. *See* Dkt. 42-2, at 20-24 (citing various declarations in the record). This same evidence shows that they have Article III standing. And it shows that the balance of hardships and the public interest warrant preliminary injunctive relief.

As both sides agree, the Court has authority under the APA to issue relief "as may be required and to the extent necessary to prevent irreparable injury," including by severing invalid portions of the challenged agency actions. 5 U.S.C. § 705; *Nasdaq Stock Market LLC v. SEC*, 38 F.4th 1126, 1145 (D.C. Cir. 2022). Accordingly, while this litigation is pending, HHS and CMS are preliminarily enjoined from sharing any information received from the plaintiff States[5] with DHS or ICE, unless it (1) is from the Medicaid program, (2) pertains only to aliens who are not lawfully residing in the United States, and (3) divulges only those aliens' citizenship and immigration status, address, phone number, date of birth, and Medicaid ID. To the extent that such basic biographical, contact, or location information about unlawfully present aliens is not severable from other information that DHS and ICE are not entitled to obtain (*e.g.*, information about lawful permanent residents or citizens, sensitive health records), HHS or CMS may not share it. If DHS or ICE believes that other types of basic information must be collected to effectuate the portions of the policies that have not been preliminarily enjoined, they must seek a modification of this ruling before obtaining such information from HHS or CMS. DHS and ICE

---

not permanent residents. Dkt. No. 145, at 15:11-21. But in its supplemental brief, the Government states that the ICE Memo "does not preclude the possibility" that ICE could obtain information about citizens. Dkt. No. 146, at 6. The face of the ICE Memo itself could be construed to support either reading, and the record does not contain evidence settling the ambiguity.

[5] The plaintiff States are California, Arizona, Colorado, Connecticut, Delaware, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin.

are also preliminarily enjoined from using any data obtained from HHS or CMS (including any data already acquired from HHS or CMS) for immigration enforcement purposes, unless the data satisfies the aforementioned requirements. This preliminary injunction shall remain in place for the shorter of: (1) the duration of this litigation, or (2) 14 days from the issuance of a new policy that clarifies what additional information DHS needs from HHS and explains the legal and policy basis for it.

Solely for administrative purposes, the prior preliminary injunction, Dkt. No. 98, shall remain in place until January 5, 2026. *See* Dkt. No. 143.

**IT IS SO ORDERED.**

Dated: December 29, 2025

VINCE CHHABRIA
United States District Judge