ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
  1515 Clay St., Floor 20
  Oakland, CA 94612-1499
  Telephone: (510) 879-0296
  E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR,** in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,** | 3:25-cv-05536-VC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE THE THIRD PRELIMINARY INJUNCTION ORDER** <br><br> Date:      April 30, 2026 <br> Time:      10:00 a.m. <br> Dept:      4 <br> Judge:      The Honorable Vince Chhabria <br> Trial Date:   Not Set <br> Action Filed: July 1, 2025 |
| Plaintiffs, | |
| v. | |
| **U.S. DEP'T OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of Health and Human Services**; U.S. DEP'T OF HOMELAND SECURITY; KRISTI NOEM,** in her official capacity as Secretary of Homeland Security, | |
| Defendants. | |

## NOTICE OF MOTION AND MOTION TO ENFORCE THE THIRD

## PRELIMINARY INJUNCTION ORDER

PLEASE TAKE NOTICE that on April 30, 2026 at 10 a.m. in Courtroom 4 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs the States of Arizona, California, Colorado, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, Wisconsin, the Commonwealth of Massachusetts, and the Office of the Governor ex. rel. Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky (collectively, "Plaintiffs" or "the States") will and hereby do move this Court to enforce the third preliminary injunction order (ECF No. 148) against Defendants U.S. Department of Health and Human Services (HHS); Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS; U.S. Department of Homeland Security (DHS); and Kristi Noem, in her official capacity as Secretary of DHS; and their officers, agents, servants, employees, and any other persons who are in active concert or participation with them.

Plaintiffs ask the Court to exercise its inherent power to enforce the third preliminary injunction order (Order) to bar Defendants from sharing or using federal healthcare data of citizens, Lawful Permanent Residents (LPRs), and those otherwise lawfully present. Plaintiffs also request the Court confirm that its Order protects the data of *all* noncitizens who are "lawfully residing" in the United States (*see* ECF No. 148 at 6), not only LPRs. Finally, because Defendants have failed to provide satisfactory responses to even the most basic questions from Plaintiffs regarding their compliance with the injunction—and indeed have confirmed they did *not* comply—Plaintiffs request the Court allow Plaintiffs to conduct targeted discovery into what data have already been shared, how the data have been utilized by DHS (including by its subagencies and contractors), and what communications, policies, or guidance that Defendants have issued regarding compliance with the Court's orders.

This motion is based on this notice; the accompanying Memorandum of Points and Authorities; the supporting declarations; this Court's file; and any matters properly before the Court.

i

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff States initiated this litigation to protect public trust in the Medicaid program after Defendant the U.S. Department of Health and Human Services (HHS) began secretly sharing Medicaid recipient data with Defendant the Department of Homeland Security (DHS) for immigration enforcement purposes. This Court preliminarily determined that, while the case proceeds, HHS "may not share," and DHS is "enjoined from using," information obtained from the Plaintiff States' Medicaid programs unless it "pertains only to aliens who are not lawfully residing in the United States," and then only "citizen and immigration status, address, phone number, date of birth, and Medicaid ID" may be shared. ECF No. 148 at 6-7 (Order).

Defendants appear to have violated this Court's Order. Though Defendants' communications have been far from clear, recent statements to Plaintiffs indicate that HHS shared with ICE "a large and complex . . . set" of Medicaid recipient data (Declaration of Anna Rich ¶ 9), even though the Court unambiguously held that the data of citizens and lawful permanent residents is "off limits." ECF No. 148 at 3 n.2. And despite over two months of Plaintiffs' attempts at clarification, Defendants have not explicitly confirmed (1) whether CMS sharing the data of citizens and Lawful Permanent Residents (LPRs) with ICE or (2) how it is determining who it deems to be "lawfully present" and, as such, subject to the terms of the Court's preliminary injunction. As a result, Plaintiffs have been unable to provide basic information to their residents about how exactly their healthcare data is being used by the federal government.

Plaintiffs ask the Court to exercise its inherent power to enforce the Order barring Defendants from sharing or using federal healthcare data of citizens, LPRs, and those otherwise lawfully present. Plaintiffs also request the Court confirm that its Order protects the data of *all* noncitizens who are "lawfully residing" in the United States (*see* ECF No. 148 at 6), not only LPRs. Finally, because Defendants have failed to provide satisfactory responses to even the most basic questions from Plaintiffs, Plaintiffs request the Court allow Plaintiffs to conduct targeted discovery into what data was already shared, how the data have been utilized by DHS (including by its contractors and sub-agencies), and what communications, directives, instructions, or guidance documents that Defendants have issued to agency staff, contractors, State Medicaid

1

agencies, or other entities, so that Plaintiffs, and members of the public, can be assured of compliance with the Court's Order.

## BACKGROUND

Plaintiffs filed this action on July 1, 2025. ECF No. 1. After multiple rounds of preliminary injunction briefing, the Court entered an Order granting in part and denying in part Plaintiffs' third motion for a preliminary injunction on December 29, 2025. ECF No. 148. In that Order, the Court stated explicitly that the data of citizens and lawful permanent residents is "off limits." *Id.* at 3 n.2. The Court further held that the denial of the preliminary injunction "pertains only to aliens who are *not lawfully residing* in the United States." *Id.* at 6 (emphasis added). And, in the event information of someone not lawfully residing was *not* severable from protected information, such as for LPRs or citizens, the Court specified that Defendants "may not share it." *Id.*

Since the Court issued its Order, the parties have repeatedly conferred over its application to citizens, LPRs, and those who are otherwise lawfully present in the United States. Plaintiffs initiated this dialogue because of the States' need to communicate clearly with their residents, and because of Defendants' failure to provide any public communication about implementation of the Court's Order. Plaintiffs asked Defendants to confirm the accuracy of the following language they were planning on sharing with Medicaid stakeholders:

> HHS will not share, and DHS will not use, Medicaid data from individuals who have permission to live and/or work in the United States, or are otherwise lawfully present. This includes, for example: lawful permanent residents ("LPRs," also known as "green card holders") and those with pending applications for adjustment to LPR status, people with valid visas (immigrant and non-immigrant), refugees and asylees, applicants for asylum or withholding or deferral of removal, people who have been granted withholding or deferral of removal, recipients of deferred action (including Deferred Action for Childhood Arrivals (DACA)), recipients of deferred enforced departure (DED) status, special immigrant juveniles, holders of Temporary Protected Status, and anyone otherwise permanently residing under color of law (PRUCOL).

Rich Decl. ¶ 6.

On February 6, 2026, Defendants responded that while they believed they were operating in compliance with the Court's Order, "the fact that someone has a legal immigration benefit (a green card, a visa, etc.) is not completely determinative of whether they are legally present in the

2

United States" and that, for example, "even a green card holder could be removed from the United States if they commit a crime or otherwise fail to meet their obligations." *Id*. ¶ 7.

It was therefore unclear from Defendants' response whether ICE and CMS were complying with the limitations on information sharing set forth in the Court's Order. Plaintiffs accordingly requested Defendants clarify (1) whether ICE was requesting, and CMS was providing, Medicaid data for LPRs and others with lawful status, (2) whether Defendants believed this interpretation was consistent with the Court's Order, and (3) how ICE was determining which individuals "are not lawfully present in the United States." *Id*. ¶ 8.

On February 20, 2026, Defendants responded in part:

> ICE has based its requests to date on its internal data about removal cases it is pursuing. Although that includes many people about whom we are permitted to share information under the Court's injunction, ICE is still trying to wrap its arms around what the edge cases of the data set are and how those cases map onto the language the Court used in the injunction. This is a large and complex data set, and we want to make sure ICE is confident about its position before we respond in full. […] [*A*]*s of today*, ICE has not yet ingested the data requested from HHS/CMS into any ICE system officers use and has not used the data for any law enforcement operations. I have asked ICE to take appropriate measures to ensure the data is quarantined and not used until counsel at ICE and DOJ have cleared them to do so while these concerns are hammered out.

*Id*. ¶ 9. Plaintiffs then requested confirmation that Defendants would not "ingest" the data going forward and that it would not be "accessed by DHS, or any of its components," until the parties could resolve Plaintiffs' outstanding questions. After repeated requests and delays, Defendants responded on March 13 as follows:

> The situation is largely the same as it was on 02/20 . . . .  The State Medicaid data remains outside of ICE enforcement databases, and ICE has not done anything to the data since 02/20.  At this time none of the data has been ingested into ICE enforcement databases. Additionally, ICE has not initiated any requests for new Medicaid data since 02/20.
>
> Furthermore, ICE has authorized me to represent that ICE is capable of filtering the Medicaid data for any individuals who are currently subject to a final order of removal, *i.e.*, an order of removal that is administratively final.  For these limited purposes, ICE will treat as a final order only those removal orders that are administratively final and have not been stayed (although as a matter of law a stay does not render a removal order not final).  That filtering would occur outside of the enforcement databases, meaning the Medicaid data would remain segregated

3

during the filtering process.  Since ICE has determined that it can filter the data to include only aliens with an administratively final order of removal, the next step would be to ingest the data about those individuals into the enforcement databases.  This action has not happened, but nonetheless, this is compliant with the PI—aliens subject to a final order of removal are not "lawfully residing in the United States," and thus ICE is able to use data about those aliens under the PI's terms.

While this process is ongoing, I am not in a position yet to discuss what other aliens are "not lawfully residing in the United States."  But, to reiterate: the Medicaid data remains segregated.  Also, until the parties can clarify these issues, ICE will not initiate any new requests for new Medicaid data from CMS for aliens without administratively final orders of removal that have not been stayed.

*Id*. ¶ 15.

On March 16, Plaintiffs requested an opportunity to meet and confer to discuss their outstanding concerns with Defendants' reply, in an attempt to avoid the Court's involvement.[1] But to date, despite repeated requests, Defendants have provided no satisfactory response. In a last-minute effort to forestall this motion, Defendants stated that "ICE will delete the data received from CMS after issuance of the PI," arguing that this action "will return the parties to the status quo that existed right after the Court issued its PI." Rich Decl. ¶ 21. Defendants explained that CMS had provided data to ICE about "individuals shown in the T-MSIS database as non-citizens." *Id*.

## LEGAL STANDARD

Courts have broad authority to issue orders to "secure compliance with [their] earlier orders and governing law." *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013) *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (federal courts can issue orders as "necessary or appropriate to effectuate and prevent the frustration of orders"). "[T]here is no question that courts have inherent power to enforce compliance with their lawful orders[.]" *Calif. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1996)).

---

[1] Plaintiffs are currently negotiating the scope of Defendants' production of the administrative record and will likely ask the Court to supplement the administrative record in light of what appear to be deficiencies in the records produced so far.

## ARGUMENT

### I.   DEFENDANTS' REPRESENTATIONS INDICATE THEY HAVE FAILED TO COMPLY WITH THE COURT'S ORDER

In their communications with Plaintiffs, Defendants have confirmed that they did not comply fully with the Court's Order. According to Defendants' representations, CMS shared "a large and complex data set" with ICE (Rich Decl. ¶ 9) that ICE "can filter" to find "aliens subject to a final order of removal." *Id*. ¶ 15. This indicates that the data shared with ICE included individuals who *do not* have a final order of removal. However, the Court's Order explicitly prohibits CMS from sharing data, and ICE from using data, concerning people who are lawfully present.

Defendants also have not been able to explain how they are determining which individuals are "not lawfully residing in the United States." *Id*. ¶ 15. Despite months of conferral, Defendants refuse to confirm that they have not, and are not, sharing data that is "off limits" (ECF No. 148 at 3 n.2), raising additional significant concerns regarding lack of compliance with the Court's Order.

The Court's Order states that HHS may not share, and DHS may not use, information obtained from the Plaintiff States' Medicaid programs unless it "pertains only to aliens who are not lawfully residing in the United States," and then only limited data elements may be shared. ECF No. 148 at 6. All other information—such as the data of citizens and lawful permanent residents—is "off limits." *Id*. at 3 n.2; *see also id*. at 6 (ordering that if data pertaining to unlawfully present individuals was "not severable from other information that DHS and ICE are not entitled to obtain . . . HHS or CMS may not share it").

As described above, *see supra* pp. 2-4, Defendants have failed to provide complete and substantive responses to Plaintiffs' questions, including on the critical issue of whether CMS is sharing the data of citizens and LPRs with ICE. In fact, Defendants' communications indicate the opposite. When asked to confirm that "HHS will not share, and DHS will not use, Medicaid data from individuals who have permission to live and/or work in the United States, or are otherwise lawfully present," Defendants responded that even though someone is "legally present" in the

United States (i.e., a green card holder), they still can be subject to removal. Rich Decl. ¶ 7. Of course, an individual remains lawfully present in the United States unless, and until, their status is finally adjudicated. But the Court's directive remains: the data of lawfully present individuals cannot be shared with ICE. Instead of abiding by this directive, CMS has shared with ICE a dataset that likely includes individuals who are not subject to final orders of removal, and ICE is using (or will use) this data to locate targets of their immigration enforcement operations.

Defendants' belated statement (*see id*. ¶ 21) that ICE will disgorge the data that it already received from CMS *after* issuance of the December 29, 2025 Order is welcome, but insufficient under the circumstances. It does not address use of CMS healthcare data it may have received *prior* to December 29, when the agencies were subject to the court's earlier preliminary injunction orders (ECF Nos. 98, 144). It does not disavow collection of data for any category of noncitizen, including LPRs. Fundamentally, the fact that Defendants chose to disregard aspects of the Court's Order calls into question the government's ongoing ability or willingness to abide by it. Without an order of enforcement, the States cannot rely on Defendants' representations about their current compliance with the Order.

## II.    THE COURT SHOULD AFFIRM THE SCOPE OF ITS INJUNCTION

As the Court recognized in its first preliminary injunction Order, States, providers, and patients have significant interests in prior federal assurances that patient data would *not* be used for immigration enforcement. ECF No. 98 at 3-4. But Defendants' communications since the December 29, 2025 Order have left Plaintiffs unable to explain to stakeholders exactly whose information is being shared between CMS and ICE, or even to confirm that this Court's Order is being followed. As a result, Defendants' actions continue to send "ripples of fear through families and communities," including among those with legal immigration status. *See* Rich Decl. Ex. 3, National Public Radio, "Medicaid Can Share Data with ICE. Here's How That 180-Degree Change Spreads Fear" (Mar. 13, 2026). In the meantime, the States are unable to respond clearly to legitimate stakeholder questions regarding the use of state Medicaid data.

To avoid any potential future dispute between the parties, Plaintiffs respectfully request the Court confirm that Defendants are enjoined from sharing Medicaid data of anyone who is living

in the United States lawfully, i.e., as a Lawful Permanent Resident, valid visa-holder, or other noncitizen with permission to reside here, as set forth in Plaintiffs' communications to Defendants, and the accompanying proposed order.

### III.    THE COURT SHOULD PERMIT DISCOVERY REGARDING DEFENDANTS' IMPLEMENTATION OF THE PRELIMINARY INJUNCTION ORDER

Due to the above serious concerns, Plaintiffs ask the Court to order targeted discovery to obtain answers from Defendants in order to provide the transparency Plaintiffs, the Court, healthcare stakeholders, and members of the public need to ensure that the Court's Order is being followed. This Court possesses a "great deal of flexibility and discretion in choosing the remedy best suited to curing the violation." *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) (citations omitted).

Plaintiffs ask that Defendants produce documents relating to the implementation of the Court's orders. The Court should order Defendants provide, within one week of the Court's enforcement order, (1) any communications, directives, instructions, and guidance documents issued to agency staff, contractors, State Medicaid agencies, or other entities, regarding implementation of the current CMS and ICE policies (Dkt. Nos. 131-1 and 131-2) and compliance with the Order; (2) a description of what data CMS has shared with DHS/ICE from December 29, 2025 to present, including identification of the immigration status of the Medicaid recipients whose data was shared, and exemplars or model spreadsheets of any data files shared by CMS with DHS/ICE;[2] and (3) a description of what data DHS has used or accessed from December 29, 2025 to present, including how such data has been used (i.e. "filtered," "ingested," or otherwise) and identification of the immigration status of the Medicaid recipients whose data was used.

The Court should also order Defendants provide monthly disclosures to Plaintiffs of any prospective communications, directives, instructions, and guidance documents issued to agency staff, contractors, State Medicaid agencies, or other entities by Defendants relating to

---

[2] Plaintiffs request production of such files in a manner that discloses specific data fields and the amount of data shared, but are not asking for details that would include the personally identifiable or confidential medical information of any Medicaid recipient.

7

implementation of any enforcement order. This will help Plaintiffs determine whether proper guardrails are in place to ensure their residents' data are protected.

## CONCLUSION

The Court should grant Plaintiffs' motion to enforce the Order.

Dated:  March 26, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General for the State of New York
MARK LADOV*
Special Counsel
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
ZOE LEVINE*
Special Counsel for Immigrant Justice
NATASHA KORGAONKAR*
Special Counsel
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov
*Attorneys for the State of New York*
*Admitted pro hac vice

ROB BONTA
Attorney General for the State of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
ANNA RICH
STEPHANIE T. YU

/s/ _Anna Rich_____
ANNA RICH
Deputy Attorneys General
*Attorneys for the State of California*

*Additional Counsel*
KRISTIN K. MAYES
Attorney General for the State of Arizona
ALEXA G. SALAS*
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Alexa.Salas@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*
*Admitted pro hac vice

PHILIP J. WEISER
Attorney General for the State of Colorado
RYAN LORCH*
Senior Assistant Attorney General
SAM WOLTER*
Assistant Attorney General
1300 Broadway, #10
Denver, CO 80203
Ryan.lorch@coag.gov
samuel.wolter@coag.gov
*Attorneys for the State of Colorado*
*Admitted pro hac vice

WILLIAM TONG
Attorney General of Connecticut
JANELLE MEDEIROS*
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
Janelle.Medeiros@ct.gov
*Attorneys for the State of Connecticut*
*Admitted pro hac vice

KATHLEEN JENNINGS
Attorney General for the State of Delaware
IAN R. LISTON
Director of Impact Litigation
JENNIFER KATE AARONSON
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
vanessa.kassab@delaware.gov
*Attorneys for the State of Delaware*
*Admitted pro hac vice

PLAINTIFFS' MOTION TO ENFORCE THE THIRD PRELIMINARY INJUNCTION ORDER (3:25-cv-05536-VC)

ANNE E. LOPEZ
Attorney General for the State of Hawaiʻi
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
DAVID D. DAY*
Special Assistant to the Attorney General
425 Queen Street
Honolulu, HI 96813
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
*Attorneys for the State of Hawaiʻi*
*Admitted pro hac vice

S. TRAVIS MAYO
General Counsel
Office of the Governor of Kentucky
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Governor of Kentucky,
Andy Beshear*
* Admitted pro hac vice

ANTHONY G. BROWN
Attorney General for the State of Maryland
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Mdrezner@oag.state.md.us
*Attorneys for the State of Maryland*
*Admitted pro hac vice

KWAME RAOUL
Attorney General for the State of Illinois
HARPREET KHERA*
Bureau Chief, Special Litigation
SHERIEF GABER*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
sherief.gaber@ilag.gov
harpreet.khera@ilag.gov
*Attorneys for the State of Illinois*
*Admitted pro hac vice

AARON M. FREY
Attorney General for the State of Maine
BRENDAN KRECKEL*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
brendan.d.kreckel@maine.gov
*Attorneys for the State of Maine*
*Admitted pro hac vice

ANDREA JOY CAMPBELL
 Attorney General for the State of
Massachusetts
KATHERINE DIRKS
Chief State Trial Counsel
CHLOE CABLE
ETHAN W. MARKS*
Assistant Attorneys General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
Katherine.Dirks@mass.gov
Chloe.Cable@mass.gov
Ethan.W.Marks@mass.gov
*Attorneys for the Commonwealth of
Massachusetts*
*Admitted pro hac vice

10

DANA NESSEL
Attorney General for the State of Michigan
NEIL GIOVANATTI*
BRYAN BEACH*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
GiovanattiN@michigan.gov
BeachB@michigan.gov
*Attorneys for the State of Michigan*
*Admitted pro hac vice

KEITH ELLISON
Attorney General for the State of Minnesota
KATHERINE J. BIES
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Katherine.Bies@ag.state.mn.us
*Attorneys for the State of Minnesota*

AARON D. FORD
Attorney General for the State of Nevada
HEIDI PARRY STERN* (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov
 *Attorneys for the State of Nevada*
*Admitted pro hac vice

JENNIFER DAVENPORT
Attorney General for the State of New Jersey
ESTEFANIA PUGLIESE-SAVILLE*
Deputy Attorneys General
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
Estefania.Pugliese-Saville@law.njoag.gov
*Attorneys for the State of New Jersey*
*Admitted pro hac vice

RAÚL TORREZ
Attorney General of New Mexico
AMY SENIER*
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504-1508
asenier@nmdoj.gov
*Attorneys for the State of New Mexico*
*Admitted pro hac vice

DAN RAYFIELD
Attorney General State of Oregon
BRIAN S. MARSHALL
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Brian.S.Marshall@doj.oregon.gov
*Attorneys for the State of Oregon*

PETER F. NERONHA
Attorney General for the State of Rhode Island
LEE B. STALEY*
Chief, Health Care Unit
150 South Main Street
Providence, RI 02903
lstaley@riag.ri.gov
*Attorneys for the State of Rhode Island*
*Admitted pro hac vice

CHARITY R. CLARK
Attorney General for the State of Vermont
RYAN P. KANE*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
Ryan.kane@vermont.gov
 *Attorneys for the State of Vermont*
*Admitted pro hac vice

PLAINTIFFS' MOTION TO ENFORCE THE THIRD PRELIMINARY INJUNCTION ORDER (3:25-cv-05536-VC)

NICHOLAS W. BROWN
Attorney General of Washington
ZANE MULLER, WSBA 63777*
WILLIAM MCGINTY, WSBA #41868*
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
*Attorneys for the State of Washington*
*Admitted pro hac vice

JOSHUA L. KAUL
Attorney General for the State of Wisconsin
KARLA Z. KECKHAVER*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

OK2025900292
USDC Northern (2 Party).docx

PLAINTIFFS' MOTION TO ENFORCE THE THIRD PRELIMINARY INJUNCTION ORDER (3:25-cv-05536-VC)