ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
  1515 Clay St., Floor 20
  Oakland, CA 94612-1499
  Telephone: (510) 879-0296
  E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR,** in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEP'T OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of Health and Human Services; **U.S. DEP'T OF HOMELAND SECURITY; KRISTI NOEM,** in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | 3:25-cv-05536-VC<br><br>**DECLARATION OF ANNA RICH IN SUPPORT OF MOTION TO ENFORCE THE THIRD PRELIMINARY INJUNCTION**<br><br>Date:          April 30, 2026<br>Time:          10 a.m.<br>Dept:          4<br>Judge:        The Honorable Vince Chhabria<br>Trial Date:   Not Set<br>Action Filed:  July 1, 2025 |

DECLARATION OF ANNA RICH IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION

## DECLARATION OF ANNA RICH

I, Anna Rich, declare as follows:

1.      I am a member of the California State Bar, admitted to practice before this Court, employed as a Deputy Attorney General in the California Office of the Attorney General, and lead counsel to Plaintiff the State of California. I make this declaration in support of Plaintiffs' Motion to Enforce the Third Preliminary Injunction.

2.      I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

3.      On December 29, 2025, the Court granted in part and denied in part Plaintiffs' Motion for Third Preliminary Injunction in its order (hereinafter "Order").

4.      On January 12, 2026, the parties had a meet and confer call where we discussed Plaintiffs' questions about Defendants' implementation of the Order. On the same day, I emailed counsel for Defendants, Michael J. Gerardi, to ask how Defendants were planning to implement "the Court's requirement that HHS and CMS share only information pertaining to noncitizens not lawfully residing in the U.S." A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 1**.

5.      On January 22, 2026, Mr. Gerardi responded by email stating "I have conferred with the agencies and they have confirmed that they are in compliance with the injunction. CMS/HHS shares information (in compliance with the injunction and to the extent they possess it) in response to requests from ICE for information about individuals who are not lawfully present in the United States." A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 1**.

6.      On January 30, 2026, I sent an email to Mr. Gerardi asking him to confirm that the following statement Plaintiffs intended to share publicly with Medicaid stakeholders was accurate:

> HHS will not share, and DHS will not use, Medicaid data from individuals who have permission to live and/or work in the United States, or are otherwise lawfully present.  This includes, for example: lawful permanent residents ("LPRs," also known as "green card holders") and those with pending applications for adjustment to LPR status, people with valid visas (immigrant and non-immigrant),

1

refugees and asylees, applicants for asylum or withholding or deferral of removal, people who have been granted withholding or deferral of removal, recipients of deferred action (including Deferred Action for Childhood Arrivals (DACA)), recipients of deferred enforced departure (DED) status, special immigrant juveniles, holders of Temporary Protected Status, and anyone otherwise permanently residing under color of law (PRUCOL).

A true and correct copy of this email is included in the email chain attached hereto as

**Exhibit 1**.

7.    On February 6, 2026, Mr. Gerardi responded to my inquiry by stating in part:

With respect to the various categories of immigration status in your note: ICE executes criminal arrest warrants for immigration related crimes and administrative arrests of those it has probable cause to believe are removable from the United States. Please bear in mind that immigration law is subject to various legal and policy changes which may impact the viability of the various immigration benefits listed in your note, and the fact that someone has a legal immigration benefit (a green card, a visa, etc.) is not completely determinative of whether they are legally present in the United States. For instance, even a green card holder could be removed from the United States if they commit a crime or otherwise fail to meet their obligations.

A true and correct copy of this email is included in the email chain attached hereto as

**Exhibit 2**.

8.    On February 13, 2026, I sent an email to Mr. Gerardi raising concerns and seeking

clarification regarding his statements as follows:

In the meantime, however, we are very concerned about your most recent representations, and Defendants' compliance with the Court's preliminary injunction.  For example, you state that ICE is only requesting information "about individuals who are not lawfully present in the United States," but at the same time you state that "even a green card holder could be removed from the United States" depending on certain circumstances like the commission of a crime.  We first note that as a matter of basic procedure, residents with permanent status remain so, and are therefore lawfully present, unless and until their removability is adjudicated.

It also appears from your statements regarding Lawful Permanent Residents (LPRs) that ICE is currently requesting, and CMS is providing, Medicaid data for LPRs, and presumably others with lawful status, who are being investigated by ICE, or perhaps merely those who ICE has an interest in.  Please clarify whether this is the case.  And if so, do Defendants believe that these practices are consistent with the Court's order, which repeatedly stated that data on citizens and LPRs was covered by the PI (see, e.g., n.2)?

Regardless, please clarify how ICE is determining which individuals "are not lawfully present in the United States" such that it may seek information about them, and how it would convey that determination to CMS?  We greatly appreciate your dialogue, but the Court's Order has been in place for well over a

2

DECLARATION OF ANNA RICH IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION

month and we have yet to understand how ICE and CMS are implementing restrictions on datasharing.

A true and correct copy of this email is included in the email chain attached hereto as

**Exhibit 2**.

9.    On February 20, 2026, Mr. Gerardi, copying counsel for Defendants Christian

Dibblee and Elizabeth Shapiro, responded in part:

> ICE has based its requests to date on its internal data about removal cases it is pursuing. Although that includes many people about whom we are permitted to share information under the Court's injunction, ICE is still trying to wrap its arms around what the edge cases of the data set are and how those cases map onto the language the Court used in the injunction. This is a large and complex data set, and we want to make sure ICE is confident about its position before we respond in full.
>
> […]
>
> I learned in making inquiries about this issue that, as of today, ICE has not yet ingested the data requested from HHS/CMS into any ICE system officers use and has not used the data for any law enforcement operations. I have asked ICE to take appropriate measures to ensure the data is quarantined and not used until counsel at ICE and DOJ have cleared them to do so while these concerns are hammered out. We will circle back to you once we have a complete position on both the factual and interpretive questions so we can have a meaningful conferral on them prior to use of this data.

A true and correct copy of this email is included in the email chain attached hereto as

**Exhibit 2**.

10.    On February 23, 2026, I emailed Mr. Gerardi requesting "assurances that the States'

Medicaid data will be quarantined and not accessed by DHS, or any of its components (including,

but not limited to, ICE, CBP, and USCIS) until the scope of that access and use is resolved

between the parties or, if necessary, by the Court[.]" A true and correct copy of this email is

included in the email chain attached hereto as **Exhibit 2**.

11.    After receiving no response to my February 23, 2026, email, I followed up with

counsel for Defendants on March 2, 2026. A true and correct copy of this email is included in the

email chain attached hereto as **Exhibit 2**.

12.    On March 6, 2026, Mr. Dibblee responded, "I've been in discussions with the

agencies and am working on a more detailed answer to your question. I am not sure when I will

DECLARATION OF ANNA RICH IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION

have that answer, but there is a chance that it won't be until Monday [March 9, 2026]." A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

13.    After counsel for Defendants did not follow up by March 9, 2026, I sent an email on March 11 stating that if Plaintiffs did not receive any substantive response by close of business on Friday, March 13, Plaintiffs would seek relief from the Court. A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

14.    On March 11, 2026, Mr. Dibblee confirmed receipt of my email from that same day but did not provide any substantive response to my questions. A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

15.    On March 13, 2026, Mr. Dibblee sent a follow-up email to me stating in part:

> The situation is largely the same as it was on 02/20 when Michael emailed you. The State Medicaid data remains outside of ICE enforcement databases, and ICE has not done anything to the data since 02/20. At this time none of the data has been ingested into ICE enforcement databases. Additionally, ICE has not initiated any requests for new Medicaid data since 02/20.
>
> Furthermore, ICE has authorized me to represent that ICE is capable of filtering the Medicaid data for any individuals who are currently subject to a final order of removal, *i.e.*, an order of removal that is administratively final.  For these limited purposes, ICE will treat as a final order only those removal orders that are administratively final and have not been stayed (although as a matter of law a stay does not render a removal order not final). That filtering would occur outside of the enforcement databases, meaning the Medicaid data would remain segregated during the filtering process. Since ICE has determined that it can filter the data to include only aliens with an administratively final order of removal, the next step would be to ingest the data about those individuals into the enforcement databases. This action has not happened, but nonetheless, this is compliant with the PI— aliens subject to a final order of removal are not "lawfully residing in the United States," and thus ICE is able to use data about those aliens under the PI's terms.
>
> While this process is ongoing, I am not in a position yet to discuss what other aliens are "not lawfully residing in the United States." But, to reiterate: the Medicaid data remains segregated. Also, until the parties can clarify these issues, ICE will not initiate any new requests for new Medicaid data from CMS for aliens without administratively final orders of removal that have not been stayed.

A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

16.    On March 16, 2026, I sent an email to Mr. Dibblee stating in part:

4

Plaintiffs are concerned, based on your statement, that CMS shared a large data set of the States' Medicaid information with ICE, and now ICE is filtering from that data set to find individuals it believes have a final order of removal.  Is that correct?  This indicates that the data shared with ICE included individuals who do not have a final order of removal.  However, the Court's current PI order explicitly prohibited CMS from sharing data, and ICE from using data, with information other than that for individuals unlawfully present.  Assuming that our understanding is accurate, we do not agree that Defendants' actions are in compliance with the Court's order; CMS shared information on information including individuals lawfully present, and ICE is currently filtering/searching through this database.

Please let us know when you are free this week to discuss these issues so we can avoid seeking intervention by the Court.

A true and correct copy of this email is included in the email chain attached hereto as

**Exhibit 2**.

17.    On March 18, 2026, Mr. Dibblee sent an email to me stating in part "I am trying extremely hard to get an answer this week, but I cannot guarantee it at this point. It might not be until early next week. I understand you have dealt with delays, but I assure you this is at the top of my list." Mr. Dibblee did not respond to my request to provide a time to meet and confer telephonically. To date, Defendants have not provided a time to telephonically meet and confer with Plaintiffs. A true and correct copy of Mr. Dibblee's March 18 email is included in the email chain attached hereto as **Exhibit 2**.

18.    On March 18, 2026, I sent an email responding to Mr. Dibblee and advising him that "without additional information clarifying and confirming Defendants' implementation of the PI order," Plaintiffs would go forward with a motion to the Court. A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

19.    On March 23, 2026, I followed up with Mr. Dibblee and said that Plaintiffs would file their motion on Thursday, March 26, 2026 if Defendants did not provide substantive answers to Plaintiffs' questions by then. In my email, I reiterated the key questions for which Plaintiffs are seeking answers:

5

(a) "How is ICE determining which individuals 'are not lawfully present in the United States,' such that it may seek information from CMS about them?"

(b) "How is ICE conveying that determination to CMS?"

(c) "What data is CMS producing to ICE in response to such requests? Specifically, which data elements are CMS producing to ICE, and for which Medicaid beneficiaries?"

A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

20.    On March 23, 2026, Mr. Dibblee confirmed receipt of my email.

21.    On March 26, 2026, Mr. Dibblee replied to my March 23 email with the following response:

> To avoid any imminent dispute before the Court, ICE will delete the data received from CMS after issuance of the PI.  As a reminder, none of that information has been ingested into ICE's enforcement databases.  This deletion will return the parties to the status quo that existed right after the Court issued its PI.
>
> I also have an answer to your question about CMS.  In compliance with the PI and in response to a data request from ICE identifying specific individuals, CMS has provided the following data fields to ICE for those individuals shown in the T-MSIS database as non-citizens:  Citizenship and immigration status, address, phone number, date of birth, and Medicaid ID.

A true and correct copy of this email is included in the email chain attached hereto as **Exhibit 2**.

22.    On March 13, 2026, Alex Olgin of National Public Radio published an article online titled "Medicaid can share data with ICE. Here's how that 180-degree change spreads fear." A true and correct copy of the article is attached hereto as **Exhibit 3**.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2026 in Oakland, California.

_/s/ Anna Rich_____
Anna Rich
Deputy Attorney General

6