**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | ) Case No. 3:25-cv-05536-VC |
| | ) |
| Plaintiffs, | ) **JOINT STATUS REPORT ON PRELIMINARY** |
| | ) **INJUNCTION DISCOVERY** |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Pursuant to the Court's order entered during the hearing on April 30, 2026, the parties have met and conferred about the extent of discovery into Defendants' violations of the preliminary injunction. As discussed below, the parties disagree about the scope and nature of that discovery. Their respective positions follow, and the parties request the Court's assistance to resolve their disagreement on this topic.

**Defendants' Position**

Defendants believe that the "limited confirmatory discovery" that this Court ordered should be limited to (1) Defendants' non-ingestion of data transferred from HHS in January 2026 into ICE enforcement databases and (2) Defendants' actions to delete or make inaccessible that same data. ECF No. 161 at 10:25-11:1. Discovery beyond those two topics is unnecessary given Defendants' concessions that the two data transfers which occurred earlier this year violated the preliminary injunction. *See* ECF No. 155 at 1 (making this concession). Plaintiffs do not need further discovery into the circumstances of violations that Defendants have already conceded, particularly given the Court's conclusions that such circumstances do not demonstrate bad faith. *See* ECF No. 161 at 3:23-4:4. Nor have Plaintiffs suggested any other transfers have occurred since January 6 that could violate the injunction and, indeed, CMS has already represented that it will not share Medicaid data from the Plaintiff States for immigration enforcement purposes during

Case No. 3:25-cv-5536-VC                                    Joint Status Report on Preliminary Injunction
                                                                                                          Discovery

the pendency of the parties' dispute regarding the scope of the injunction. *See* ECF No. 155 at 9.

The main subject left to verify, then, is whether Defendants' statements about what they did to "fix the problem" are true and accurate. ECF No. 161 at 4:11. Defendants therefore suggest a discovery plan that is limited to those two topics. And to avoid the "free-for-all" approach that this Court rejected on the record, *id.* at 11:20, Defendants believe that one document request per topic is sufficient, without the need for any depositions or interrogatories. Defendants suggest that Plaintiffs propound those discovery requests by May 25, with Defendants' responses due by June 26. The parties would otherwise follow the procedures set out in Local Civil Rule 37 for resolving any disputes about discovery.

**Plaintiffs' Position**

As the Court has determined, the "plaintiffs have the right to do some ... form of confirmatory discovery to make sure that everything the Federal Government is asserting about what happened is accurate." Apr. 30, 2026 Hearing Tr. 4:7-9. Contrary to Defendants' proposal, that confirmatory discovery should include verification of Defendants' representations concerning the conceded multiple violations of the PI Order, as well as confirmation that no other violations of the PI Order have occurred. This discovery is particularly needed in light of Defendants' statements that agency staff became aware of violations of the PI Order only after being alerted to concerns from Plaintiffs' counsel. *See, e.g.*, Briseno Decl. ¶ 13, Katz Decl. ¶ 12.

Furthermore, in proposed stipulation language shared with Plaintiffs on May 11, 2026 and proffered to the Court in a parallel filing, Defendants assert their interest in "*preserv[ing]* ICE's ability to request and use data from Plaintiff States for criminal investigations" (emphasis added). Defendants' proposal raises new concerns that Defendants have been interpreting the Court's preliminary injunction to permit data sharing between HHS and DHS for criminal investigations, even though the Court's prior Order enjoined the agencies from such data sharing (outside of the Court's specific instructions) because the agencies' policies were "likely arbitrary and capricious to the extent that they offer no coherent explanation as to their vague language and likely overbroad scope." (ECF 148 at 5-6.) Plaintiffs' proposed confirmatory discovery plan would permit targeted

investigation of these issues to ensure that no other data transfers have occurred that violate the existing injunction.

Plaintiffs are sensitive to the Court's concerns that confirmatory discovery should be limited and not a "free-for-all," and therefore propose the narrow discovery plan set forth below. To accommodate the Court's concerns, and reduce any burden on Defendants, Plaintiffs will forego depositions at this time, and will limit their discovery to targeted written discovery and document requests only. The proposed discovery is not overly burdensome in light of Defendants' representation that they have already "systematically reviewed internal communications and records to determine the details of any data sharing that occurred since the Court entered its preliminary injunction," Opp. Br. at 4. The targeted document requests below are designed to confirm the accuracy of that review, verify the technical completeness of the remedial steps Defendants represent they have taken, and ensure that no residual data risks remain.

### A. Subjects on Which Discovery is Allowed

Plaintiffs propose that the Court permit discovery to verify specific statements made in the Brandt, Briseno and Katz Declarations (ECF 155-3, 155-4, 155-5) as well as to confirm that no other violations of the December 29, 2026, PI Order have occurred or are likely to occur. This will allow Plaintiffs to confirm Defendants' representations, and ensure that guardrails are in place to prevent future violations of the PI Order.

### B. Form and Timing of Discovery

Plaintiffs propose that the Court approve the document requests and written discovery set forth below. To the extent Defendants believe some of these materials are privileged in part or in whole, they should be logged appropriately. Plaintiffs propose dates that would work with the current briefing schedule, but expect that these will be subject to further negotiation.

**By Friday May 22,** Defendants must produce:

1. All instructions, directives and/or guidance documents issued to HHS and DHS agency staff or contractors regarding implementation of the Court's PI Order.

2. Documents and communications referenced in or relied upon in the following specific sections of the Brandt, Briseno and Katz Declarations (ECF 155-3, 155-4, 155-5). Specifically, Defendants should produce:

   a. The data requests from DHS and its subagencies (ICE/USCIS) and the respective written responses from HHS referenced in the declarations. Brandt Decl. ¶ 17, 19, 20, 26, 27, 32-33; Katz Decl. ¶ 4-8; Briseno Decl. ¶ 4-10. Note that Plaintiffs do *not* seek production of the spreadsheets HHS provided in response to the referenced data requests in native format, but request sample exemplar images of spreadsheets (redacted to remove any personally identifying information) that would otherwise satisfy this document request.

   b. Materials supporting the statements of Kimberly Brandt that HHS "understood" the ICE-provided spreadsheet to contain only "individuals with final orders of removal," Brandt Decl. ¶ 17, and that HHS "understood" DHS's request for "unadjusted refugees in the State of Minnesota" to pertain only to "individuals . . . not lawfully residing in the United States." *Id*. ¶ 26.

   c. Materials supporting the statement of Kimberly Brandt that "[a]fter this data [shared on January 19, 2026] was shared, it was identified that approximately 50 entries showed the individual's status as U.S. citizen or U.S. national." Brandt Decl. ¶ 33.

   d. Materials supporting the statement of Alberto Briseno that "[i]t was ICE's understanding that the HHS/CMS list contained data for aliens unlawfully residing in the United States." Briseno Decl. ¶ 10.

   e. Materials supporting the statement that ICE shared data concerning "aliens with open cases from the ENFORCE Alien Removal Module (EARM)" and ICE's determination that "the parameters of the open EARM cases could have been further limited." Briseno Decl. ¶¶ 7, 13.

   f. Materials supporting the statement of Evan C. Katz that "On April 2, 2026, I was informed that the data transfer from HHS/CMS could potentially include information related to aliens who were not unlawfully residing in the United States," Katz Decl. ¶ 12, as well as all materials concerning when and how this determination was made, and identifying who (if anyone) was aware of this error prior to April 2, 2026.

   g. Materials supporting the statements of Albert Briseno and Evan C. Katz that the data files received by ICE were quarantined or deleted and no other sources or derived versions of the data were retained, and no data was shared with any other enforcement database. Briseno Decl. ¶ 13-16; Katz Decl. ¶ 13. This shall include: (i) technical logs or system records confirming the scope and completeness of the deletion of the data loaded into Databricks, including confirmation of whether any residual data versions, snapshots, or version history records remain in Databricks storage; and (ii) records confirming that no analytical outputs, normalized records, confidence scores, or other results derived from enjoined data while it resided in Databricks were retained in any ICE system or any third-party analytics platform

Case No. 3:25-cv-5536-VC                    3                    Joint Status Report on Preliminary Injunction
Discovery

integrated with Databricks (including but not limited to any platform used by ICE's National Criminal Analysis and Targeting Center (NCATC) referenced in Katz Decl. ¶¶ 8-10).

h.  Materials supporting the statement of Kimberly Brandt that the July 2025 data-sharing agreement permitting ICE employees direct access to the T-MSIS database expired on September 9, 2025, "without ICE employees receiving training required under the agreement or accessing T-MSIS." Brandt Decl. ¶ 10. This shall include records confirming that no system credentials, API keys, or programmatic access tokens were provisioned to any ICE employee or contractor under that agreement, and that no access to T-MSIS data (whether by human login, automated query, or API-based data transfer) occurred prior to the agreement's expiration.

**By Friday May 29:**

Plaintiffs will serve interrogatories on Defendants by email. These interrogatories will be related to any gaps or deficiencies in the initial document production, such as representations in declarations noted above that do not have any apparent supporting documentation from Defendants; gaps or inconsistencies between Defendants' representations in the declarations and the supporting documentation; confirmation that there were no other data disclosures or data use in violation of the December 29, 2025 Order; and confirmation that HHS and DHS have taken appropriate corrective action to ensure that no further violations of the Order are likely to occur.

**By Friday June 12:**

Defendants will respond to these interrogatories or state their objections to Plaintiffs.

**C. Adjudication of Disputes**

Plaintiffs will make a good faith effort to meet and confer regarding any additional requests or discovery disputes. If those efforts are unsuccessful, Plaintiffs will include any requests for leave of the Court for remaining confirmatory discovery in their brief regarding the adequacy of the administrative record in the brief currently due **June 22, 2026**. Should Plaintiffs disagree with Defendants' assertions of privilege, or encounter other obstacles to discovery, Plaintiffs will raise those objections at the same time.

Dated: May 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

MICHAEL J. GERARDI
Senior Trial Counsel
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 353-5980
Christian.r.dibblee@usdoj.gov
*Counsel for Defendants*

Dated:  May 11, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General for the State of New York
MARK LADOV*
Special Counsel
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
ZOE LEVINE*
Special Counsel for Immigrant Justice
NATASHA KORGAONKAR*
Special Counsel
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov
*Attorneys for the State of New York*
*Admitted pro hac vice

ROB BONTA
Attorney General for the State of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU

/s/  *Anna Rich*
ANNA RICH
Deputy Attorneys General
*Attorneys for the State of California*

## ATTORNEY ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Christian Dibblee, hereby attest that concurrence in the filing of this document has been obtained from any signatories indicated by a "conformed" signature (/s/) within this e-filed document.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: May 11, 2026                                        /s/ Christian Dibblee
                                                           Christian Dibblee