**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | ) Case No. 3:25-cv-05536-VC |
| | ) |
| Plaintiffs, | ) **JOINT STATUS REPORT ON STIPULATION** |
| | ) **AND PROPOSED ORDER REGARDING DATA** |
| v. | ) **SHARING FOR PENDENCY OF CURRENT** |
| | ) **DISPUTE** |
| U.S. DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

Pursuant to the Court's order entered during the hearing on April 30, 2026, the parties have met and conferred about a stipulation and proposed language of an order to govern data sharing for the pendency of the current dispute. As discussed below, the parties disagree about the nature of the proposed order that this Court ordered and what that order should say. The parties' respective positions follow.

**Defendants' Position**

Pursuant to the Court's directives as stated on the record at the hearing of April 30, 2026, Defendants have participated in a process to submit language for purposes of a proposed order. Defendants respectfully object to entry of such an order. Defendants have already remediated their errors in administering the preliminary injunction. *See* ECF No. 155 at 4–6. And Defendants' errors do not change the legal reasoning underlying the Court's preliminary injunction. Moreover, the order is unnecessary. CMS has already committed not to share with ICE for immigration enforcement purposes Medicaid data received from Plaintiff States until the dispute over the scope of the injunction is resolved. *See* ECF No. 155 at 9. ICE will not, therefore, be receiving from CMS for immigration enforcement purposes any of Plaintiff States' Medicaid data during the pendency of this dispute. Because ICE has already affirmed that it has deleted or

Case No. 3:25-cv-5536-VC

Joint Status Report on Stipulation and Proposed
Order Regarding Data Sharing for Pendency of
Current Dispute

made inaccessible the Medicaid data received from Plaintiff States and transferred in 2026 for immigration enforcement purposes, *see* ECF Nos. 155-4 ¶¶ 15–16, 155-5 ¶ 12, ICE cannot use that Medicaid data received from Plaintiff States for immigration enforcement purposes. Expanding the prohibitions in the Court's preliminary injunction, even temporarily, is unnecessary in light of CMS's commitment. Nevertheless, Defendants have conferred with Plaintiffs and hereby submit the below proposed language to the Court, as ordered:

> The Court orders that, until it resolves Defendants' forthcoming motion to clarify or modify the preliminary injunction entered on December 29, 2025, (1) HHS and CMS shall not share any Medicaid information received from plaintiff States with DHS or ICE for immigration enforcement purposes; and (2) DHS or ICE shall not use for immigration enforcement purposes any Medicaid information previously received from HHS and that HHS in turn received from plaintiff States.

> For purposes of this Order, "immigration enforcement purposes" refers to investigations into alleged violations of immigration laws. The phrase "immigration enforcement purposes" does not refer to criminal investigations into violations of sections 286, 371, 641, 911, 1001, 1015, 1028, 1028A, 1029, 1341, 1343, 1344, 1349, and 1956 of title 18. To the extent DHS or ICE receives Medicaid information from plaintiff States for such investigations during the pendency of this order, DHS and ICE can use that information for immigration enforcement purposes only when the criminal investigation reveals a violation of immigration laws by an alien.

Defendants believe this order is proper because it clarifies that the Court's order enjoined sharing data received from Plaintiff States with DHS and ICE for immigration enforcement purposes and reaffirms previous representations that CMS will not share *any* Medicaid information received from Plaintiff States with DHS or ICE for immigration enforcement purposes and that ICE will not use any such data previously received for immigration enforcement purposes.

Defendants also submit that the second paragraph of the proposed order is appropriate because it preserves ICE's ability to request and use data from Plaintiff States for criminal investigations. As a government agency, the Privacy Act allows ICE to request information about any person "for a . . . criminal law enforcement activity," 5 U.S.C. § 552a(b)(7), and Defendants have not interpreted the Court's preliminary injunction to bar what the Privacy Act allows. And ICE does engage in criminal investigations unrelated to immigration. *See, e.g.*, U.S. Atty's Off. S. Dist. of N.Y., *Sean Combs Charged in Manhattan Federal Court with Sex Trafficking and Other*

*Federal Offenses* (Sep. 17, 2024), https://www.justice.gov/usao-sdny/pr/sean-combs-charged-manhattan-federal-court-sex-trafficking-and-other-federal-offenses (noting involvement of Homeland Security Investigations in a sex trafficking investigation). Defendants have further limited the types of investigations for which they can use aliens' data to certain enumerated statutory sections.

Defendants have not included in the definition of "immigration enforcement purposes" other transfers between HHS and DHS, such as those occurring for purposes of determining eligibility for benefits and refugee resettlement, because the Court noted on the record that "that stuff is not implicated by this case." ECF No. 161 at 6:18-19. Taking that statement at face value, there is no need to add those topics to an order when they are not part of the underlying case and were thus never restrained by the current preliminary injunction. Defendants seek clarity with their proposed-order language, but they are not required to list things that even the Court understands are not part of the case.

In conclusion, Defendants welcome the opportunity to confer further with Plaintiffs about the language of any order. But Defendants are submitting this language in the interest of time given today's deadline.

**Plaintiffs' Position**

**A. Background**

At the April 30 hearing on Plaintiffs' motion to enforce the preliminary injunction, the Court observed that there were scenarios that were "complicated from a legal and factual standpoint" that had not been addressed in the PI Order, and that the federal government "should just put the data sharing on hold" until those issues were resolved. Apr. 30, 2026 Tr. 5:16-17, 6:1-2. Defendants' counsel agreed, affirming,

> I certainly agree that data sharing with ICE for immigration enforcement purposes can be put on hold while we resolve the motion. In fact, […] CMS will not be sharing data from the plaintiff states for that purpose during the pendency of this motion.

Tr. 6:3-7; *see also* Tr. 8:11-13 (agreeing that "there will be no use of data shared previously from the plaintiff states for immigration enforcement purposes"). Defendants' counsel also noted that

Case No. 3:25-cv-5536-VC                    2            Joint Status Report on Stipulation and Proposed
Order Regarding Data Sharing for Pendency of
Current Dispute

"there is data sharing that occurs between various components of HHS and components of DHS that" has "nothing to do with immigration enforcement purposes," Tr. 6:8-11, offering as an example "data sharing for refugee resettlement." Tr. 6:15-17. The Court agreed that refugee resettlement and "confirmation of eligibility for Medicaid" were "not implicated by this case," Tr. 6:12-13, 19, and ordered the parties to prepare a stipulation to address Defendants' concerns about overbreadth, and to engage in additional briefing regarding clarification of the terms of the injunction. Tr. 7:12-15.

After multiple delays, Plaintiffs received Defendants' proposed stipulation the morning of May 11, 2026. The proposed stipulation does not mention the exceptions discussed at the hearing (refugee resettlement or Medicaid eligibility). Its exceptions are not limited to ICE activities that are *unrelated* to immigration (such as the cited sex trafficking investigation of Sean Combs). Instead, the proposed stipulation asks for a carveout to the PI Order for a number of criminal statutes that are used to enforce immigration (and other) laws. *Compare* Defendants' Proposed Stipulation ("The phrase 'immigration enforcement purposes' does not refer to criminal investigations into violations of sections 286, 371, 641, 911, 1001, 1015, 1028, 1028A, 1029, 1341, 1343, 1344, 1349, and 1956 of title 18.") *with, e.g., United States v. Pastor-Perez*, 2025 WL 3514108 (N.D. Ohio Dec. 8, 2025) (charging undocumented worker with violations of 18 U.S.C. §§ 1015 and 1028A). Moreover, Defendants' proposed stipulation would create an exception to the PI Order for use of Medicaid information from Plaintiff States for *any* immigration enforcement purposes, including civil immigration enforcement purposes, "when the criminal investigation reveals a violation of immigration laws by an alien." No conviction or other final judgment of such a violation is required.

Once again, as the Court previously found, Defendants' proposal is "vague" and "likely overbroad" because it lacks clarity regarding the scope of relevant proceedings, whether this information will be obtained "case by case" or in bulk (as with the bulk transfer of Minnesotan refugee data), or whether the exceptions would include data on citizens and lawful permanent residents (LPRs). *See* PI Order at 5-6. At the meet-and-confer, Plaintiffs were unable to obtain

Case No. 3:25-cv-5536-VC                    3                    Joint Status Report on Stipulation and Proposed
                                                                 Order Regarding Data Sharing for Pendency of
                                                                 Current Dispute

satisfactory answers to their questions relating to the scope or significance of Defendants' proposed modifications to the PI Order; which HHS/CMS data Defendants expected to share with ICE pursuant to these proposed carveouts; the factual predicates or level of individualized inquiry that would be required for sharing of HHS/CMS data received from Plaintiff States with DHS for criminal immigration enforcement purposes and/or civil immigration enforcement purposes that arise in connection with or from a criminal investigation; whether HHS has already been sharing— or DHS has already been using— Medicaid (or other healthcare) data received from Plaintiff States for the purpose of criminal immigration enforcement purposes; and what other limitations or guardrails might protect this data.

Defendants' proposed stipulation represents a substantial change to the current PI Order. Given the lack of clarity around the scope of Defendants' proposal—as well as Plaintiffs' concerns that DHS and HHS may *already* have been sharing and using Medicaid data outside of "basic biographical, contact, or location information about unlawfully present aliens" (*see* PI Order at 6) for criminal enforcement activities rather than asking the Court for a modification or clarification of the existing preliminary injunction—these issues should now be addressed in the context of Defendants' motion for clarification of the Dec. 29, 2025 PI Order, and through the confirmatory discovery process outlined in Plaintiffs' separate proposal.

Plaintiffs instead propose an order that would permit data sharing for purposes that the parties and the Court already agree do not implicate immigration enforcement (e.g., refugee resettlement), while deferring the complicated questions raised by Defendants' proposal to the parties' planned briefing on the scope of the PI, as follows:

> The Court orders that, until it resolves Defendants' forthcoming motion to clarify or modify the preliminary injunction entered on December 29, 2025, (1) HHS and CMS shall not share "any Medicaid information received from plaintiff States with DHS or ICE"; and (2) DHS or ICE shall not use for immigration enforcement purposes "any data obtained from HHS or CMS and received from plaintiff States (including any data already acquired from HHS or CMS received from plaintiff States)." This Order does not prohibit HHS from sharing, or DHS from using, information received from the Plaintiff States for purposes of refugee resettlement or to permit HHS to confirm eligibility for Medicaid benefits.

Defendants will include in their motion for clarification of the December 29, 2025 PI Order the question of whether "immigration enforcement purposes" should be interpreted to refer to criminal investigations into violations of sections 286, 371, 641, 911, 1001, 1015, 1028, 1028A, 1029, 1341, 1343, 1344, 1349, and 1956 of title 18, but agree not to share or use data acquired from HHS and received from plaintiff States for such purposes pending the Court's clarification of the scope of the preliminary injunction.

Plaintiffs are also willing to engage in further conferral about the language of any stipulation to permit sharing of Medicaid data for purposes that the parties agree are not "immigration enforcement" while Defendants' motion remains pending.   But Defendants' proposed order is instead an amendment to the PI Order that goes far beyond Plaintiffs' reasonable expectations based on Defendants' statements at the hearing.

DATED: May 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

MICHAEL J. GERARDI
Senior Trial Counsel
Civil Division, Federal Programs Branch

/s/ Christian Dibblee
CHRISTIAN DIBBLEE
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 353-5980
Christian.r.dibblee@usdoj.gov
Counsel for Defendants

Case No. 3:25-cv-5536-VC                    5            Joint Status Report on Stipulation and Proposed
Order Regarding Data Sharing for Pendency of
Current Dispute

Dated:  May 11, 2026                              Respectfully submitted,

LETITIA JAMES                                    ROB BONTA
Attorney General for the State of New York       Attorney General for the State of California
MARK LADOV*                                      NELI PALMA
Special Counsel                                  Senior Assistant Attorney General
RABIA MUQADDAM*                                  KATHLEEN BOERGERS
Chief Counsel for Federal Initiatives            Supervising Deputy Attorney General
ZOE LEVINE*                                      WILLIAM BELLAMY
Special Counsel for Immigrant Justice            KATHERINE MILTON
NATASHA KORGAONKAR*                              KEVIN G. REYES
Special Counsel                                  STEPHANIE T. YU
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov                             /s/  Anna Rich
*Attorneys for the State of New York*            ANNA RICH
*Admitted pro hac vice                           Deputy Attorneys General
                                                 *Attorneys for the State of California*

Case No. 3:25-cv-5536-VC                6          Joint Status Report on Stipulation and Proposed
Order Regarding Data Sharing for Pendency of
Current Dispute

## ATTORNEY ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Christian Dibblee, hereby attest that concurrence in the filing of this document has been obtained from any signatories indicated by a "conformed" signature (/s/) within this e-filed document.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: May 11, 2026                                  */s/ Christian Dibblee*
                                                     Christian Dibblee


Case No. 3:25-cv-5536-VC                7        Joint Status Report on Stipulation and Proposed
Order Regarding Data Sharing for Pendency of
Current Dispute