BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Director
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
Senior Trial Counsel
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW,
Washington, DC 20005
Phone: (202) 353-5980
E-mail: christian.r.dibblee@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | 3:25-cv-05536-VC <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO CLARIFY/MODIFY PRELIMINARY INJUNCTION** <br><br> **Date:** July 16, 2026 <br> **Time:** 10:00 AM <br> **Courtroom:** Courtroom 4 <br> **Judge:** Hon. Vince Chhabria |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

NOTICE OF MOTION AND MOTION TO CLARIFY PRELIMINARY INJUNCTION .......... vi

MEMORANDUM OF POINTS AND AUTHORITIES............................................................ 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT.................................................................................................................. 5

I.  The Court Should Clarify That Aliens Not Lawfully Residing in the United States Refers Only To Individuals Who Are Not Citizens or Not Lawful Permanent Residents or, Alternatively, to Aliens Not Permanently Residing in the United States Under Color of Law.................................................................................. 5

II.  The Modified PI Should Define "Immigration Enforcement Purposes" as Investigations of Alleged Violations of Civil Immigration Laws. .................................. 10

III.  The Revised PI Should Restrict HHS Sharing Only for "Immigration Enforcement Purposes." ........................................................................................................... 13

IV.  The Revised PI Should Not Encompass Data Besides Medicaid Data............................ 16

CONCLUSION.............................................................................................................. 17

**TABLE OF AUTHORITIES**

<u>**Page(s)**</u>

<u>**Cases**</u>

*Barton v. Barr,*
    590 U.S. 222 (2020) ............................................................................................................ 9

*Brown v. Plata,*
    563 U.S. 493 (2011) ............................................................................................................ 4

*Cervantes v. Holder,*
    772 F.3d 583 (9th Cir. 2014) .............................................................................................. 7

*Denmore v. Kim,*
    538 U.S. 510 (2003) ............................................................................................................ 9

*Elkins v.Moreno,*
    435 U.S. 647 (1978) ............................................................................................................ 9

*Johnson v. Guzman Chavez,*
    594 U.S. 523 (2021) ............................................................................................................ 8

*Matter of Cahuec Tzalam*
    29 I. & N. Dec. 300 (BIA 2025) ......................................................................................... 9

*Matter of Lok*
    18 I. & N. Dec. 101 (BIA 1981) ......................................................................................... 8

*Matter of Nwozuzu*
    24 I. & N. Dec. 609 (BIA 2008) ......................................................................................... 9

*Matter of Quintero*
    18 I. & N. Dec. 348 (BIA 1982) ......................................................................................... 8

*Matter of Rotimi,*
    24 I. & N. Dec. 567 (BIA 2008) ...................................................................................... 7, 8

*N.A. Sales Co., Inc. v. Chapman Indus. Corp.,*
    736 F.2d 854 (2d Cir. 1984) ............................................................................................... 4

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
    810 F.3d 631 (9th Cir. 2015) ............................................................................................ 12

*Padilla v. Kentucky,*
    599 U.S. 356 (2010) .......................................................................................................... 13

*Smagin v. Yegiazaryan,*
    2020 WL 1652347 (C.D. Cal. Apr. 1, 2020) .................................................................. 4

*Sudomir v. McMahon,*
    767 F.2d 1456 (9th Cir. 1985) .................................................................................... 8

*Toelle v. Jusino,*
    2023 WL 6391453 (N.D. Cal. Sep. 28, 2023) ....................................................... 16, 17

*United States v. Classic,*
    313 U.S. 299 (1941) ................................................................................................... 7

**<u>Statutes</u>**

5 U.S.C. § 552a ............................................................................................................... 1, 6

6 U.S.C. § 203 .................................................................................................................... 11

6 U.S.C. § 279 ................................................................................................................ 14, 15

8 U.S.C. § 1101 ............................................................................................................... 5, 8, 9

8 U.S.C. § 1127 ............................................................................................................... 11, 13

8 U.S.C. § 1157 ..................................................................................................................... 8

8 U.S.C. § 1158 ..................................................................................................................... 8

8 U.S.C. § 1159a ................................................................................................................... 8

8 U.S.C. § 1182 ............................................................................................................. 7, 11, 13

8 U.S.C. § 1186a ................................................................................................................... 8

8 U.S.C. § 1186b ................................................................................................................... 8

8 U.S.C. § 1229a ................................................................................................................... 10

8 U.S.C. § 1229b ................................................................................................................... 13

8 U.S.C. § 1231 ..................................................................................................................... 8

8 U.S.C. § 1232 ..................................................................................................................... 15

8 U.S.C. § 1252 ..................................................................................................................... 8

8 U.S.C. § 1254a ................................................................................................................... 9

8 U.S.C. § 1360 ..................................................................................................................... 6

8 U.S.C. § 1373 ........................................................................................................ 6

8 U.S.C. § 1611 ..................................................................................................... 1, 14

8 U.S.C. § 1641 ........................................................................................................ 1

19 U.S.C. § 1401 ..................................................................................................... 11

19 U.S.C. § 1589a ................................................................................................... 11

22 U.S.C. § 7105 ..................................................................................................... 15

42 U.S.C. § 1320b-7 ............................................................................................... 14

42 U.S.C. § 1396b ............................................................................................. 1, 7, 14

Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
   Pub. L. No. 104-193, 110 Stat. 2105 .................................................................... 1

## Regulations

8 C.F.R. § 1.2 .......................................................................................................... 5

8 C.F.R. § 241.6 ....................................................................................................... 8

8 C.F.R. § 1003.6 ..................................................................................................... 8

8 C.F.R. § 1208.16 ................................................................................................... 9

8 C.F.R. § 1208.17 ................................................................................................... 8

8 C.F.R. § 1241.6 ..................................................................................................... 8

## Administrative and Executive Materials

Privacy Act of 1974; Systems of Records,
   89 Fed. Reg. 100500 (Dec. 12, 2024) ................................................................. 15

Privacy Act of 1974; Systems of Records,
   87 Fed. Reg. 7178 (Feb. 8, 2022) ....................................................................... 15

## Other Authorities

DHS Delegation No. 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement*, (Nov. 13, 2004)
   https://perma.cc/5888-TH46 ............................................................................... 11

ICE, *Criminal illegal alien sentenced to nearly 20 years for leading cartel-linked drug trafficking operation* (Mar. 5, 2026), https://perma.cc/CWJ8-854H ................................................................................................ 12

ICE, *ICE, CBP, and HPD conduct operation targeting counterfeit sports merchandise in Southwest Houston, seize nearly $2 million in counterfeit items* (Apr. 6, 2026), https://perma.cc/Q2MC-7W8D ............................................................................................... 12

ICE, *Missouri man sentenced to 50 years for recording child sexual abuse after HIS St. Louis Investigation* (May 19, 2026), https://perma.cc/CA6Q-DBFA ................................................................................................ 11

ICE, *New York man sentenced to prison for $1 million COVID-19 fraud following HIS task force investigation* (May 19, 2026), https://perma.cc/LMY6-4VUY ............................................................................................... 12

ICE, *Venezuelan man responsible for sex trafficking female illegal aliens sentenced to 10 years in prison* (Sep. 18, 2025), https://perma.cc/H2L4-3C2D ................................................................................................. 12

Off. of the Director, U.S. Immig. & Customs Enforcement, Memo Re: Clarification of Existing Practices Relating to Certain Health Care Information (Oct. 2013), https://perma.cc/C2KY-B66Y ................................................................................................ 13

**NOTICE OF MOTION AND MOTION TO CLARIFY PRELIMINARY INJUNCTION**

**PLEASE TAKE NOTICE** that on July 16, 2026, at 10:00 a.m., Defendants United States Department of Health and Human Services (HHS) and United States Department of Homeland Security (DHS) (collectively, Defendants) will and hereby do move this Court pursuant to a briefing schedule entered on May 6, 2026, *see* ECF No. 163, to clarify and modify the preliminary injunction entered against them.

Defendants respectfully move the Court to clarify that preliminary injunction to (1) permit sharing of data as to Medicaid beneficiaries who are not citizens or lawful permanent residents; (2) define "immigration enforcement purposes" to mean "investigations into alleged violations of immigration laws," for purposes of a preliminary injunction; (3) restrict HHS from sharing data only for "immigration enforcement purposes"; and (4) restrict sharing and usage of only Medicaid data, not any information received from plaintiff States.

This motion is based on the Amended Complaint, ECF No. 108, the accompanying memorandum of points and authorities, the proceeding before the Court in this case, and all matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court has invited briefing on how best to clarify the preliminary injunction entered in late December 2025 to better define the categories of aliens about whom the U.S. Department of Health and Human Services (HHS) can share information with the U.S. Department of Homeland Security (DHS).  Defendants request that, consistent with the Court's stated concerns on the record, the Court permit data sharing as to all persons except citizens and Lawful Permanent Residents (LPRs).  Clarifying the injunction in this way would also respect the Privacy Act's protections for "citizen[s] of the United States" and "alien[s] lawfully admitted for permanent residence[.]"  5 U.S.C. § 552a(a)(2).  Alternatively, the Court could permit sharing except for those aliens "lawfully admitted for permanent residence or otherwise *permanently* residing in the United States under color of law."[1]  42 U.S.C. § 1396b(v)(1) (Social Security Act) (emphasis added).  As explained below, that statutory languages encompasses aliens who are permanently residing in the United States with lawful status.  Defendants provide examples below of which categories of aliens would and would not be covered.

Defendants further request clarification or modification of other portions of the preliminary injunction, specifically to define "immigration enforcement purposes" as investigations into potential violations of civil immigration laws.  Such a definition will tailor the preliminary injunction to the nature of this lawsuit, which does not challenge criminal enforcement authorities. Moreover, as to HHS, Defendants seek to modify the injunction to govern only sharing for immigration enforcement purposes.  HHS components other than and including the Centers for Medicare & Medicaid Services (CMS) share data with DHS for reasons unrelated to civil

---

[1] The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 2105, generally established an eligibility framework for aliens for Federal public benefits, including full Medicaid benefits, namely that only noncitizens who are "qualified aliens" may receive Federal public benefits.  *See* 8 U.S.C. §§ 1611(a), 1641(b).

1

immigration enforcement, and those exchanges should not be enjoined, as the Court has recognized.    Finally, Defendants request that, consistent with Plaintiffs' allegations, the preliminary injunction apply only to the exchange of Medicaid data.

## BACKGROUND

Plaintiff States initiated this lawsuit on July 1, 2025, in response to reports that CMS had transferred Medicaid data obtained from certain Plaintiff States to U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security (DHS).  *See generally* Compl., ECF No. 1.  Plaintiffs subsequently moved for a preliminary injunction to block further transfers after CMS and ICE entered into a data-sharing agreement.  *See* ECF No. 42-2.  In response, this Court concluded that such data sharing appeared lawful, given that "[s]everal federal statutes appear to permit, and sometimes even require, agencies to provide" data for "immigration enforcement purposes" "to DHS upon request."  Order at 2, ECF No. 98.  Nonetheless, the Court determined that HHS and DHS had not "engage[d] in a reasoned decisionmaking process" before initiating transfers of Medicaid data.  *Id.* at 3.  Accordingly, the Court preliminarily enjoined DHS "from using Medicaid data obtained from the plaintiff states for immigration enforcement purposes" and HHS "from sharing Medicaid data obtained from the plaintiff states with DHS for immigration enforcement purposes."  *Id.* at 4–5.  The injunction was to remain in place for the shorter of the end of the litigation or "14 days after both DHS and HHS ha[d] completed a reasoned decisionmaking process."  *Id.* at 5.

Two weeks after the Court entered its first preliminary injunction, Plaintiffs filed their Amended Complaint.  *See* ECF No. 108 (Am. Compl.).  The Court also subsequently modified its preliminary injunction to include two newly added Plaintiff States.  *See* Order, ECF No. 127.

On November 21, 2025, ICE and CMS notified the Court that they had completed their respective decisionmaking processes regarding the data sharing at issue in this case.  Those

processes had resulted in new data-sharing policies focused on the sharing of basic biographical, location, and contact information. *See* ECF Nos. 131-1, 131-2. Plaintiffs sought to preliminarily enjoin those policies, *see* ECF No. 134, to which this Court agreed in part, *see* ECF No. 148 (Third PI Order). The Court ruled that Plaintiffs had not demonstrated a likelihood of success "as to the core aspects of the new data-sharing policies," namely "Medicaid data revealing the biographical, contact, and location information of unlawfully present aliens." *Id.* at 2. The Court also concluded that, "[b]eyond th[at] basic information," *id.* at 5, the new policy was "likely arbitrary and capricious," *id.* at 6. Accordingly, the Court ruled that while this action is pending, HHS and CMS "are preliminarily enjoined from sharing any information received from the plaintiff States with DHS or ICE unless it (1) is from the Medicaid program, (2) pertains only to aliens who are not lawfully residing in the United States, and (3) divulges only those aliens' citizenship and immigration status, address, phone number, date of birth, and Medicaid ID." *Id.* The Court also preliminarily enjoined "DHS and ICE . . . from using any data obtained from HHS or CMS (including any data already acquired from HHS or CMS) for immigration enforcement purposes, unless the data satisfies the aforementioned requirements." *Id.* at 6–7.

Shortly thereafter, the parties engaged in correspondence about Defendants' interpretation of the preliminary injunction. *See* ECF No. 155 at 2–3. Plaintiffs filed a motion to enforce the Court's preliminary injunction. *See* ECF No. 151. As part of that motion, Plaintiffs requested that the Court confirm that Defendants could not share data about "anyone who is living in the United States lawfully, i.e. as a Lawful Permanent Resident, valid visa-holder, or other noncitizen with permission to reside here." *Id.* at 6–7. In response, Defendants conceded that they had identified two data transfers from January 2026 that appeared to include data of individuals who were within the scope of the Court's preliminary injunction. *See* ECF No. 155. Defendants confirmed that

3

they had deleted the transferred data, *see id.* at 7–9, and they requested that the Court order briefing on the meaning of the phrase "not lawfully residing in the United States," *id.* at 10; *see also* Updated Decl. of Albert Briseno, ECF No. 172-1.

At a subsequent hearing on Plaintiffs' motion, the Court noted its belief that Defendants had not intentionally violated the preliminary injunction and that Defendants were operating in good faith. *See* ECF No. 161 at 3:14-4:5. The Court further acknowledged that an aspect of the preliminary injunction is "vague" such that "we need to clarify which categories of people ICE can obtain information about and which categories of people ICE may not obtain information about." *Id.* at 4:19-22. The Court declined to make that determination "on the fly," and instead requested full briefing. *Id.* at 5:19; *see id.* at 9-10 (setting briefing schedule for motion to clarify).

Defendants submit this motion in accordance with the Court's schedule. The Court has since entered an order pausing certain data transfers until the Court resolves this motion or "modif[ies] the preliminary injunction." ECF No. 170.

## LEGAL STANDARD

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Brown v. Plata*, 563 U.S. 493, 542 (2011) (citation omitted). Accordingly, a district court has discretion to clarify or modify the scope of an injunction. *See Smagin v. Yegiazaryan*, 2020 WL 1652347, at *3 (C.D. Cal. Apr. 1, 2020). By clarifying the scope of a previously issued injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). "[C]larification may be obtained on motion by a party or made on the court's own motion." *Smagin*, 2020 WL 1652347, at *3.

4

**ARGUMENT**

Although Defendants respectfully continue to assert that no injunction is necessary because they have acted in compliance with all legal requirements, Defendants move to clarify and modify the Court's preliminary injunction to ensure that it is narrowly tailored to the subject matter of this litigation and does not intrude into the other sharing that routinely occurs between the agencies. Defendants include with this motion a proposed order incorporating their proposed terms of the preliminary injunction.

I.    **The Court Should Clarify That Aliens Not Lawfully Residing in the United States Refers Only To Individuals Who Are Not Citizens or Not Lawful Permanent Residents or, Alternatively, to Aliens Not Permanently Residing in the United States Under Color of Law.**

As prompted by the Court, Defendants seek clarification on "which categories of people ICE can obtain information about and which categories of people ICE may not obtain information about." ECF No. 161 at 4:20-22 (Court's remarks). As Defendants have explained, the phrase used in the Court's preliminary injunction—"not lawfully residing"—does not map well onto immigration law and has led to competing interpretations of that injunction. *See* ECF No. 155 at 10. Defendants appreciate the opportunity to seek clarification of that language.

**1.** Defendants request that the Court clarify the preliminary injunction to permit sharing about Medicaid beneficiaries who do *not* fall into one of the following two categories: (1) U.S. citizen or (2) an alien lawfully admitted for permanent residence, *i.e.*, LPRs as defined by 8 U.S.C. § 1101(a)(20) and 8 C.F.R. § 1.2. This request conforms with the Court's stated concerns and applicable law.

The Court has consistently raised concerns about Defendants sharing data for immigration enforcement purposes about citizens and LPRs. For example, the Court ruled in its Third PI Order that the policy memos promulgated by both agencies did not explain "whether DHS may request

any data from HHS about citizens or lawful permanent residents[.]"  Third PI Order at 5.  The Court also cited Defendants' representations about whether "ICE's new policy permits ICE to obtain information only about people who are not U.S. citizens and not permanent residents" before determining that ICE's policy memo is unclear on sharing as to those individuals.  *Id.* at 5–6 n.4.  And during the hearing about the preliminary-injunction motion, the Court asked if allowing ICE to obtain information about household members of undocumented Medicaid participants "means ICE is going to be getting a bunch of information on citizens and permanent residents[.]"  ECF No. 145 at 22:6-7.

Clarifying the injunction to permit sharing as to all individuals except citizens and LPRs would be appropriate given the Court's stated concerns and the statutes that—as the Court has acknowledged—authorize DHS to obtain information about the "identity and location of aliens in the United States."  8 U.S.C. § 1360(b); *see also id.* § 1373.  This clarification would also conform to the Privacy Act, which provides greater protections to records, defined as information about an individual, within a system of records.  *See generally* 5 U.S.C. § 552a.  "Individual," in turn, is defined as "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 552a(a)(2); *see also* Third PI Order at 3 n.2 (explaining that data of citizens and LPRs is "off limits" and citing the Privacy Act).  It would be reasonable, therefore, to limit[2] sharing as to those persons given the more robust protections Congress afforded their data and Congress's clear decision to exclude other persons from those same protections.

---

[2] To be clear, Defendants do not concede that the Court can enjoin them from transferring data regarding citizens and LPRs so long as those transfers comply with the Privacy Act.  *See* 5 U.S.C. § 552a(b) (establishing conditions of disclosure).  Defendants also do not concede that the Court can enjoin transfers of data about any individual's citizenship or immigration status.  *See* 8 U.S.C. §§ 1360(b), 1373.  Defendants believe their proposed clarification is, however, consistent with the Court's injunctions, which do appear to enjoin transfers about citizens and LPRs.

**2.** Any alternative approach would provide greater protections to non-LPR aliens' data, in contravention of the Privacy Act. But, to the extent the Court wishes its preliminary injunction to apply beyond citizens and LPRs, the Board of Immigration Appeals has said that, "[f]or an alien's residence to be treated as 'lawful,' it must be authorized or in harmony with the law, which requires some formal action beyond a mere request for authorization" to reside permanently in the United States "or the existence of some impediment to actual physical removal." *Matter of Rotimi*, 24 I. & N. Dec. 567, 573 (BIA 2008) (interpreting "lawfully resided" in 8 U.S.C. § 1182(h)); *see also Cervantes v. Holder*, 772 F.3d 583, 591 (9th Cir. 2014) (deferring to *Rotimi*'s interpretation). In other words, an alien must have a lawful, unexpired immigration status under the Immigration and Nationality Act (INA) to be "lawfully" residing in the United States. This interpretation is also consistent with the phrasing in the Social Security Act regarding individuals permanently residing in the United States under "color of law." *See* 42 U.S.C. § 1396b(v)(1). Congress has used the phrase under "color of law" to describe those who are "clothed with the authority" of law. *United States v. Classic*, 313 U.S. 299, 326 (1941). Similarly, an alien who is residing here "under color of law" has a recognized right through government action to reside here. The Court therefore can clarify the injunction to restrict sharing as to those aliens who have lawful status under the INA and who are "permanently residing in the United States." 42 U.S.C. § 1396b(v)(1).

A clarified preliminary injunction that enjoins sharing about citizens, LPRs, and other aliens permanently residing here with a lawful status (*i.e.*, under color of law) makes sense given the Court's recognition that certain statutory authorities authorize access to data about aliens, *see* Third PI Order at 3, and that the subject matter of this suit is Defendants' sharing and usage of "information about Medicaid patients," *id.* at 5. Such an injunction would foreclose Defendants from sharing or using the data of the following populations:

7

- LPRs defined in 8 U.S.C. § 1101(a)(20) and LPRs subject to certain statutory conditions, *see* 8 U.S.C. §§ 1186a(a)(1), 1186b(a)(1)

- Aliens granted refugee status under 8 U.S.C. § 1157, unless and until that status is terminated or the refugee fails to satisfy their statutory obligation to present themselves for adjustment to LPR status, *see id.* § 1159a

- Aliens granted asylum under 8 U.S.C. § 1158, unless and until that status is terminated

- Aliens in valid nonimmigrant status whose conditions are not premised on the maintenance of a foreign resident or temporary residence in the United States, *see, e.g.*, 8 U.S.C. § 1101(a)(15)(S)–(V).

Defendants would in turn be able to share and use data about the following alien populations:

- Applicants for an immigration benefit or relief or protection from removal. *See Rotimi*, 24 I. & N. Dec. at 576 ("To reside here lawfully entails more than being an applicant for a benefit . . . ."); *see also Sudomir v. McMahon*, 767 F.2d 1456, 1462 (9th Cir. 1985) (explaining under 42 U.S.C. § 602(a)(33) (1982) that asylum applicants do not reside in the United States permanently).

- Aliens with an administrative or judicial "stay" while an appeal with the Board of Immigration Appeals or a petition for review (PFR) with a U.S. Court of Appeals is pending. *See* 8 U.S.C. §§ 1231(c)(2), 1252(b)(3)(B); 8 C.F.R. §§ 241.6, 1003.6(a), 1241.6. These aliens are not "permanently residing lawfully" in the United States because the stay of removal is merely "an impediment to actual physical removal" based on the alien's request to review his application to remain in the United States that is pending with an adjudicatory body. *Rotimi*, 24 I. & N. Dec. at 574.

- Recipients of "deferred action" (*e.g.*, DACA). Deferred action is a matter of "prosecutorial grace" that "accords no rights to permanent residence." *Matter of Quintero*, 18 I. & N. Dec. 348, 349 (BIA 1982); c*f. Matter of Lok*, 18 I. & N. Dec. 101, 109 (BIA 1981) ("The fact that the Government refrains, in an individual case or as a matter of general policy, from instituting deportation proceedings against an alien or enforcing his deportation does not legalize the status of the beneficiary of the Government's forebearance [sic].")*, aff'd*, 681 F.2d 107 (2d Cir. 1982).

- Aliens whose removal has been withheld or deferred. 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 1208.17–.18. A grant of withholding or deferral of removal does not vacate or set aside the underlying removal order; the removal order "remains in full force" and that alien can be removed "to any other country authorized by the statute." *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); c*f.* 8 C.F.R.

8

§ 1208.16(f) (permitting removal to "a third country other than the country to which removal has been withheld or deferred"). And aliens ordered removed "enjoy[] no lawful immigration status." *Demore v. Kim*, 538 U.S. 510, 552 (2003) (Souter, J., concurring in part and dissenting in part).

- Special Immigrant Juveniles because that classification does not "by itself confer any lawful status on the respondent or affect his removability." *Matter of Cahuec Tzalam*, 29 I. & N. Dec. 300, 305 n.3 (BIA 2025).

- Temporary Protected Status (TPS) beneficiaries, who by statute are not "considered to be permanently residing in the United States under color of law" during the period of their TPS. 8 U.S.C. § 1254a(f)(1); *see Barton v. Barr*, 590 U.S. 222, 237 (2020) (referring to a TPS beneficiary as "a temporary resident"); *cf. Matter of Nwozuzu*, 24 I. & N. Dec. 609, 613 (BIA 2008) ("Similarly, an alien admitted for a temporary period cannot be considered to be residing permanently in this country, even if he or she maintains lawful status.").

- Aliens admitted under a visa category who must "hav[e] a residence in a foreign country which he has no intention of abandoning." *E.g.*, 8 U.S.C. § 1101(a)(15)(B) (temporary business or tourism visitors), (a)(15)(F) (visa for temporary student), (a)(15)(H)(ii)-(iii) (temporary agricultural laborers and temporary graduate trainees), (a)(15)(J) (temporary exchange visitors), (a)(15)(M) (temporary vocational students), (a)(15)(P) (artists or entertainers), (a)(15)(Q) (participant in international cultrual exchange program). Such nonimmigrants are not "coming to the United States . . . permanently." *Elkins v. Moreno*, 435 U.S. 647, 665 (1978); *see also* 8 U.S.C. § 1101(a)(33) (defining "residence" as a "principal" dwelling).

- Aliens admitted under a visa category whose permission to stay in the United States is temporary. *E.g.*, 8 U.S.C. § 1101(a)(15)(D)(i)–(ii) ("land temporarily"), (a)(15)(H)(i)(b) ("coming temporarily to the United States"), (a)(15)(L) ("seeks to enter the United States temporarily"), (a)(15)(O)(ii)(I) (same), (a)(15)(R)(ii) ("seeks to enter the United States for a period not to exceed 5 years"). Nonimmigrants are not residing in the United States "permanently" because their relationship with the United States is not "of continuing or lasting nature." 8 U.S.C. § 1101(a)(31) (defining "permanent").

The clarification most consistent with the Court's preliminary injunction would be to allow Defendants to share and use data about anyone who is not a citizen or LPR. But if the Court disagrees, the alternative clarification offered above would also be consistent with the Court's previous use of "not lawfully residing in the United States."

II.    **The Modified PI Should Define "Immigration Enforcement Purposes" as Investigations of Alleged Violations of Civil Immigration Laws.**

The current preliminary injunction does not define "immigration enforcement purposes," leading to some confusion among Defendants about which purposes of data sharing are permissible and which are not. And, as noted during previous hearings before the Court, HHS and DHS often share data for purposes "that have nothing to do with immigration enforcement." ECF No. 161 at 6:10-11. Defendants therefore suggest that the Court revise its preliminary injunction to define "immigration enforcement purposes."

Defendants move to define "immigration enforcement purposes" as investigations into alleged violations of civil immigration laws. As an initial matter, this definition is consistent with Plaintiffs' operative complaint, which challenges the transfer of Medicaid data precisely because it will result in enforcement actions based on violations of Title 8 of the U.S. Code. *See* Am. Compl. ¶¶ 228 (alleging that the federal government wants to collect data "to locate and deport" aliens); 229 (alleging creation of "single interoperable database for the purpose of mass deportations and other large-scale immigration enforcement and mass surveillance purposes"). Plaintiffs also allege that aliens will "risk deportation" from the transfer of their data. *Id.* ¶ 242; *see also id.* ¶¶ 246 (alleging aliens will not go to the ER "for fear that doing so will make them a target for deportation"), 247 (alleging fear that Medicaid data "will be used to locate and target immigrants for deportation"). In other words, Plaintiffs raise only that Defendants will use data to "discover, locate, and deport" aliens. Pls' Mot. for Preliminary Injunction, ECF No. 42-2 at 21.

Removal is an exclusively civil consequence that follows from the determination that an alien is removable for a variety of reasons set out in Title 8. *See* 8 U.S.C. § 1229a (establishing that an alien placed in removal proceedings "may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under

10

section 1227(a) of this title"). Those grounds of removability include, for example, illegal entry, *see* 8 U.S.C. § 1182(a)(6), and overstaying one's authorized period of admission, *see id.* § 1127(a)(1)(C)(i). Thus, in order to remove someone, ICE must investigate whether that person has committed actions that make a person eligible for removal under Title 8. In other words, Plaintiffs worry that ICE will use Medicaid data to investigate aliens that might have violated the civil immigration laws. Defining "immigration enforcement purposes" to encompass only those investigations is therefore appropriate to the challenge Plaintiffs bring.

That definition should not encompass or otherwise limit ICE's criminal investigations, which extend to activities beyond immigration. The Homeland Security Act of 2002 transferred all functions of the U.S. Customs Service, formerly in the Treasury Department, to DHS. *See* 6 U.S.C. § 203(a). The Secretary of Homeland Security shortly thereafter delegated customs law authorities to ICE. *See* DHS Delegation No. 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement* (Nov. 13, 2004). Under statutory law, ICE special agents are therefore customs officers, *see* 19 U.S.C. § 1401(i), entitled to "make an arrest without a warrant for any offense against the United States committed in the officer's presence or for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony," 19 U.S.C. 1589a(3). ICE criminal investigators use this authority to investigate individuals and refer them for prosecution for crimes that have no relationship to immigration laws. For example, ICE has investigated and referred for prosecution multiple individuals for possession of child sexual abuse material,[3] defrauding the Small Business

---

[3] ICE, *Missouri man sentenced to 50 years for recording child sexual abuse after HSI St. Lous Investigation* (May 19, 2026), https://perma.cc/CA6Q-DBFA.

Administration,[4] drug trafficking,[5] human trafficking,[6] and the selling of counterfeit goods.[7] Many of these investigations and convictions were for violating some of the criminal statutes that Defendants identified in their last joint status report to the Court. *See* ECF No. 168. For avoidance of doubt, Defendants do not believe that investigations into violations of those criminal statutes, much less any criminal statute, should be considered immigration enforcement.

At no point have Plaintiffs argued that data sharing for criminal investigations is improper. Instead, as explained above, they have asserted harms only from the risk that data sharing would lead to removal, not institution of criminal charges by another part of the Executive Branch. Because preliminary relief cannot extend beyond the scope of the legal violation alleged in the underlying Complaint, the Court should not craft a preliminary injunction that restricts sharing for purposes that Plaintiffs do not challenge, *i.e.* criminal enforcement purposes. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint."). Moreover, it bears mentioning that ICE has never disclaimed that it might need to rely on Medicaid data for *criminal* enforcement purposes. The now-rescinded 2013 ICE Memo disclaimed using Medicaid data only "for pursuing a *civil* immigration

---

[4] ICE, *New York man sentenced to prison for $1 million COVID-19 fraud following HSI task force investigation* (May 7, 2026), https://perma.cc/LMY6-4VUY.

[5] ICE, *Criminal illegal alien sentenced to nearly 20 years for leading cartel-linked drug trafficking operation* (Mar. 5, 2026), https://perma.cc/CWJ8-854H.

[6] ICE, *Venezuelan man responsible for sex trafficking female illegal aliens sentenced to 10 years in prison* (Sep. 18, 2025), https://perma.cc/H2L4-3C2D.

[7] ICE, *ICE, CBP and HPD conduct operation targeting counterfeit sports merchandise in Southwest Houston, seize nearly $2 million in counterfeit items* (Apr. 6, 2026), https://perma.cc/Q2MC-7W8D.

enforcement action."  Off. of the Director, U.S. Immig. & Customs Enforcement, Memo Re: Clarification of Existing Practices Relating to Certain Health Care Information 1 (Oct. 2013) https://perma.cc/C2KY-B66Y (emphasis added).  Thus, to the extent that the Court determined the Policy Memo from last year rescinded an established policy that ICE would not use data for criminal investigation purposes, that determination was incorrect.

A conviction for an aggravated felony, a conviction for having committed certain crimes involving moral turpitude, and a conviction for violating a law related to controlled substances can all trigger removal.  *See* 8 U.S.C. §§ 1127(a)(2)(A)(iii), 1182(a)(2).  But removal proceedings are not criminal proceedings because "[removal] is not, in a strict sense, a criminal sanction."  *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010).  In other words, although civil immigration enforcement sometimes involves underlying questions about the commission of crimes, the end goal of that enforcement is not criminal sanctions but an immigration consequence.  Moreover, even if an alien has a criminal conviction, removal is not guaranteed, since the Attorney General has discretion to cancel removal for aliens convicted of crimes not mentioned in § 1182(a)(2) or § 1227(a)(2).  *See* 8 U.S.C. § 1229b.  Immigration enforcement and criminal enforcement are therefore separate parts of ICE's mission.  Until Plaintiffs challenge ICE's use of data for criminal enforcement, ICE should not be enjoined from using data for that purpose, as it has always done.

### III.    The Revised PI Should Restrict HHS Sharing Only for "Immigration Enforcement Purposes."

Even if the Court adopts a different definition of "immigration enforcement purposes" than what Defendants propose, the Court should clarify that HHS cannot share data only "for immigration enforcement purposes."  Again, Defendants have said that HHS and DHS share data for purposes unrelated to immigration enforcement.  *See* ECF No. 161 at 6:10-11.  And although

13

the Court has said on the record that such sharing "is not implicated by this case,"[8] *id.* at 6:19, the preliminary injunction forbids HHS from sharing "any information from the plaintiff States with DHS or ICE" unless that information meets certain criteria, Third PI Order at 6.  The preliminary injunction notably forbids DHS from using data "for immigration enforcement purposes," *id.* at 7, but includes no similar language for HHS's sharing of data,[9] even though the Court's first preliminary injunction did include such language as to HHS.  *See* ECF No. 98 at 5.  The result is a preliminary injunction that by its terms forbids all sharing by HHS of data from Plaintiff States unless it meets the three criteria, even if that sharing is done for purposes other than those challenged by Plaintiffs.

Such a broad restriction is untenable.  HHS often shares information with DHS about particular aliens to confirm states' compliance with federal program eligibility requirements, including Medicaid program requirements.  *See* 8 U.S.C. § 1611 (restricting federal public benefits to aliens who are not "qualified aliens," subject to certain exceptions); 42 U.S.C. § 1396b(v) (limits on federal matching payments for services furnished to certain aliens); *id.* § 1320b-7 (requiring verification of immigration status with DHS for certain federal public benefits).  HHS (through the Office of Refugee Resettlement) and DHS are also statutorily required to share certain information in matters related to unaccompanied alien children.  *See, e.g.*, 6 U.S.C. § 279(b)(1)(C) (requiring HHS to "mak[e] placement determinations for all unaccompanied alien children who

---

[8] Given this statement, Defendants do not believe the preliminary injunction must mention these other transfers.  After all, if these transfers are "not implicated by this case," enjoining them would exceed the complaint.  But for purposes of clarity and out of an abundance of caution, Defendants still seek to limit HHS's sharing only for civil immigration enforcement purposes.

[9] Defendants believe a restriction on DHS's usage of certain data "for immigration enforcement purposes" is consistent with the Court's preliminary-injunction decision, though they request that the Court's modified preliminary injunction define that term, as suggested above.

14

are in Federal custody by reason of their immigration status"); *id.* § 279(b)(2)(A) (requiring HHS to "consult with" certain DHS officials regarding determinations, "described in paragraph (1)(C)," about certain unaccompanied alien children); 8 U.S.C. § 1232(c)(3)(C) (requiring DHS to "provide information necessary to [HHS to] conduct [sponsor] suitability assessments from appropriate Federal, State, and local law enforcement and immigration databases").   In addition, the Trafficking Victims Protection Act, 22 U.S.C. §§ 7101 *et seq.*, requires HHS to share data with DHS while determining whether a child is a victim of a severe form of trafficking in persons and is therefore eligible for interim assistance.   HHS must inform DHS about interim child assistance cases within 24 hours of issuance, *see id.* § 7105(b)(1)(G)(ii), and seek consultation from DHS and DOJ on interim assistance cases, see *id.* § 7105(b)(1)(G)(iv)(II).   HHS has published notice of these routine use disclosures in the applicable program System of Records Notices, as required by the Privacy Act.   *See, e.g.*, 89 Fed. Reg. 100500 (Dec. 12, 2024); 87 Fed. Reg. 7178 (Feb. 8, 2022).

These disclosures are tangentially related to immigration in that they involve information about aliens.   But they are not about enforcing civil immigration laws in the way that Plaintiffs challenge.   All parties in this case agree on this.   *See* ECF No. 168 at 4 (Plaintiffs' proposed order conceding that sharing for benefits eligibility and refugee resettlement are not for immigration enforcement purposes); ECF No. 170 (Court entering Plaintiffs' proposed order).   Accordingly, Plaintiffs request that the Court's revised injunction expressly forbid HHS from sharing data "for immigration enforcement purposes," as defined above by Defendants.   Even if the Court does not adopt Defendants' proposed definition, however, limiting HHS sharing to "for immigration enforcement purposes" would appropriately tailor the injunction and ensure that not all of HHS's, sometimes statutorily required, data-sharing activities are encompassed within the revised preliminary injunction.

15

## IV.     The Revised PI Should Not Encompass Data Besides Medicaid Data

The current preliminary injunction prohibits HHS from sharing "any information received from the plaintiff states with DHS or ICE, *unless it (1) is from the Medicaid program[.]*"  Third PI Order at 6 (emphasis added).  In other words, HHS can share Medicaid data only if that data meets the second and third criteria set forth by the Court.  As for other data in its possession, HHS cannot share it with DHS or ICE.

Respectfully, that language is overbroad because the Amended Complaint challenges only "HHS's decision to transfer *Medicaid* data."  Am. Compl. ¶ 268 (emphasis added); *see also id.* ¶ 275 (alleging that "HHS's transfer of *Medicaid* data" is illegal (emphasis added)).  That pleading addresses Defendants' decision to change their "policy and practice of keeping personal *Medicaid* data private," *id.* ¶ 212 (emphasis added), and indeed the alleged action that prompted this lawsuit in the first place was the transfer of "*Medicaid* data files" from certain Plaintiff States, *id.* ¶ 219 (emphasis added).    The Amended Complaint further alleges irreparable harm "[i]f CMS is permitted to transfer participants' *Medicaid* data to DHS."  *Id.* ¶ 242 (emphasis added).  In short, the operative pleading is focused on the transfer of only Medicaid data.  It would be improper to grant preliminary relief that exceeds the legal violation alleged in the underlying pleading.  *See Toelle v. Jusino*, 2023 WL 6391453, at *3 (N.D. Cal. Sep. 28, 2023) ("In addition, a plaintiff is not entitled to an injunction based on claims not pled in the complaint.").

Moreover, after Plaintiffs filed their Amended Complaint, CMS completed the "decisionmaking process" that this Court contemplated in its first preliminary injunction.  ECF No. 98 at 5.  That process culminated in a Federal Register Notice explaining the necessity of information sharing between CMS and ICE and why such information sharing is consistent with a variety of legal authorities.  *See generally* ECF No. 131-1.  That Notice makes clear that all of CMS's explanations apply only "to data collected by CMS in connection with its role in the

16

Medicaid program." *Id.* at 2.  In other words, the only data on which CMS has opined is Medicaid data, further reinforcing that this case is about Medicaid data.

Defendants acknowledge this Court's previous questions about whether the ICE Memo potentially opens the door to requesting CMS data from other healthcare programs.  *See* ECF No. 145 at 2:23-10:20.  As explained above, however, Plaintiffs have focused their challenge on the lack of a reasoned decisionmaking process by both agencies to explain the transfer of "Medicaid data."  Am. Compl. ¶¶ 268, 270, 275, 279, 283.  CMS's memo by its own terms applies only to Medicaid data, *see* ECF No. 131-1 at 2, and though the ICE Memo mentions other healthcare programs, ICE has requested only Medicaid data to this point.  In other words, enjoining the ICE Memo as to other sources of healthcare data provides relief for transfers that Plaintiffs never allege have occurred or are likely to occur in the near future.  Defendants therefore request a modified preliminary injunction to impose limitations only on the sharing and usage of Medicaid data, not "any information received from plaintiff States."  Third PI Order at 6; *see also* ECF No. 170 (enjoining HHS and CMS from not sharing "any *Medicaid* information received from plaintiff States" during the pendency of this dispute, rather than "any information received" from those States).

## CONCLUSION

The Court should clarify and modify the Third Preliminary Injunction in the ways identified above.  As noted, Defendants will submit a proposed order with their proposed injunction language.

Dated: June 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
Christian Dibblee
Trial Attorney (DC Bar No. 1017949)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 353-5980
Christian.r.dibblee@usdoj.gov

*Counsel for Defendants*

18