ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
STEPHANIE T. YU
ANNA RICH (State Bar No. 230195)
Deputy Attorneys General
 1515 Clay St., Floor 20
 Oakland, CA 94612-1499
 Telephone: (510) 879-0296
 E-mail: Anna.Rich@doj.ca.gov
*Attorneys for Plaintiff State of California*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR,** in his official capacity as Governor of the Commonwealth of Kentucky**; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEP'T OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of Health and Human Services**; U.S. DEP'T OF HOMELAND SECURITY; MARKWAYNE MULLIN,** in his official capacity as Secretary of Homeland Security,<br><br>Defendants. | 3:25-cv-05536-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY/MODIFY THE PRELIMINARY INJUNCTION**<br><br>Date:　　　August 13, 2026<br>Time:　　　10:00 a.m.<br>Dept:　　　4<br>Judge:　　　The Honorable Vince Chhabria<br>Trial Date:　Not Set<br>Action Filed: July 1, 2025 |

i

**TABLE OF CONTENTS**

**Page**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY/MODIFY
THE PRELIMINARY INJUNCTION.................................................................................1

I.    Background ..........................................................................................................2

    A.    Procedural History ..................................................................................2

    B.    Defendants' Violations of the Preliminary Injunction Order .....................3

II.   Legal Standard ....................................................................................................5

III.  Argument .............................................................................................................7

    A.    The Court Should Clarify that the Preliminary Injunction Order
Protects All Noncitizens Who are Not Subject to a Final Removal
Order or, in the Alternative, Who Are Not Unlawfully Present ..................8

    B.    The Court Should Reject Defendants' Requests for Modifications
that Weaken the Preliminary Injunction ...................................................12

        1.    Defendants' Requests Are Procedurally Improper .........................12

        2.    Defendants' Proposed Narrowing of Individuals Covered
by the PI Order Is Unreasonable and Unworkable .........................14

        3.    Defendants' Proposed Redefinition of "Immigration
Enforcement Purposes" Is Inappropriate and Unreasonable .........20

        4.    Defendants Fail to Justify Their Proposed Narrowing of the
Scope of the PI Order to Immigration Enforcement Only.............22

        5.    Defendants' Proposed Narrowing of the Scope of the PI
Order to Medicaid Data Only Is Unreasonable..............................23

CONCLUSION...................................................................................................................24

## TABLE OF AUTHORITIES

CASES

*Aleksander B. v. Trump*
No. 26-CV-170, 2026 WL 172435 (D. Minn. Jan. 22, 2026)....................................................11

*Alto v. Black*
738 F.3d 1111 (9th Cir. 2013) .........................................................................................................6

*Andrei C. v. Lyons*
No. 26-CV-0166, 2026 WL 123083 (D. Minn. Jan. 16, 2026)..................................................11

*Arizona Dream Act Coal. v. Brewer*
757 F.3d 1053 (9th Cir. 2014) ......................................................................................................16

*Arrington v. Daniels*
516 F.3d 1106 (9th Cir. 2008) ......................................................................................................14

*Bowen v. Am. Hosp. Ass'n*
476 U.S. 610 (1986)........................................................................................................................13

*Chaudhry v. Holder*
705 F.3d 289 (7th Cir. 2013) ........................................................................................................17

*Credit Suisse First Bos. Corp. v. Grunwald*
400 F.3d 1119 (9th Cir. 2005) ...................................................................................................6, 7

*Darvin M. v. Bondi*
No. 26-CV-0437, 2026 WL 184843 (D. Minn. Jan. 24, 2026)................................................11

*Dep't of Homeland Security v. Regents of the University of California*
591 U.S 1 (2020)........................................................................................................................9, 13

*Gon v. First State Ins. Co.*
871 F.2d 863 (9th Cir.1989) ...........................................................................................................7

*Great Am. Ins. Co. v. Weitz Co., LLC*
No. 25-CV-02079-LJC, 2026 WL 323301 (N.D. Cal. Feb. 6, 2026) .....................................12

*Holley v. Lavine*
553 F.2d 845 (2d Cir. 1977)..........................................................................................................17

*Johnson v. Becerra*
111 F.4th 1237 (D.C. Cir. 2024)...................................................................................................14

*Karnoski v. Trump*
926 F.3d 1180 (9th Cir. 2019) .......................................................................................................6

# TABLE OF AUTHORITIES

*Kuang v. United States Dep't of Def.*
No. 18-CV-03698-JST, 2019 WL 718632 (N.D. Cal. Feb. 20, 2019).......................................6

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*
941 F.2d 970 (9th Cir. 1991) .................................................................................................6

*LeTip World Franchise LLC v. Long Island Soc. Media Grp. LLC*
No. CV-24-00165-PHX-SMB, 2024 WL 5434026 (D. Ariz. July 25, 2024)........................12

*Liban G. v. Noem*
No. 26-CV- 0301, 2026 WL 185334 (D. Minn. Jan. 23, 2026)..............................................11

*Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*
729 F.3d 1025 (9th Cir. 2013) ..............................................................................................13

*N.A. Sales Co., Inc. v. Chapman Indus. Corp.*
736 F.2d 854 (2d Cir. 1984)....................................................................................................6

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*
31 F.4th 1203 (9th Cir. 2022) ...............................................................................................13

*Oceana, Inc. v. Coggins*
No. 19-CV-03809-LHK, 2021 WL 1788516 (N.D. Cal. May 5, 2021) .................................14

*Persian Broad. Serv. Glob., Inc. v. Walsh*
75 F.4th 1108 (9th Cir. 2023) ...............................................................................................14

*Pub. Citizen, Inc. v. Trump*
361 F. Supp. 3d 60 (D.D.C. 2019).........................................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*
525 U.S. 471 (1999)..................................................................................................................9

*School Dist. No. 1J, Multnomah County v. ACandS, Inc.*
5 F.3d 1255 (9th Cir. 1993) ...................................................................................................12

*Steele v. United States*
No. 1:14-CV-1523-RCL, 2023 WL 6215790 (D.D.C. Sept. 25, 2023)..................................12

*Sudomir v. McMahon*
767 F.2d 1456 (9th Cir. 1985) .........................................................................................17, 19

*Ta Eh Doh Lah v. Bondi*
No. 26-CV-00171, 2026 WL 184529 (D. Minn. Jan. 23, 2026)............................................11

# TABLE OF AUTHORITIES

*United States v. Pastor-Perez*
   2025 WL 3514108 (N.D. Ohio Dec. 8, 2025) ..........................................................................21

*United States v. Washington*
   853 F.3d 946 (9th Cir. 2017) .................................................................................................6

*W.R. Grace & Co. v. Loc. Union 759*
   461 U.S. 757 (1983) ..............................................................................................................7

**STATUTES**

8 U.S.C.
   § 1101(a)(20) ......................................................................................................................15
   § 1101(a)(27)(J) ..................................................................................................................17
   § 1101(a)(31) ................................................................................................................17, 19

   § 1154(c) .............................................................................................................................21
   § 1182(a)(6)(C) ...................................................................................................................21
   § 1182(a)(9)(B) ...........................................................................................................8, 9, 16
   § 1182(a)(9)(B)(ii)-(iii) ......................................................................................................10
   § 1182(a)(9)(B)(iii) ............................................................................................................10
   § 1182(a)(9)(C) ...................................................................................................................20
   § 1227(a)(3)(A) ...................................................................................................................20
   § 1227(a)(3)(D) ...................................................................................................................21
   § 1255(h) .............................................................................................................................16
   § 1304(e) .............................................................................................................................21
   § 1305(a) .............................................................................................................................20
   § 1306(a) .............................................................................................................................20
   § 1306(b) .............................................................................................................................20
   § 1611 ..................................................................................................................................16
   § 1613 ..................................................................................................................................16
   § 1641(b) ..........................................................................................................................9, 16

18 U.S.C.
   § 911 ....................................................................................................................................21
   § 1015 ..................................................................................................................................22
   § 1028A ...............................................................................................................................22

42 U.S.C.
   § 1396b(v)(1) ................................................................................................................16, 18
   § 1396b(v)(2)-(3) ...............................................................................................................16

Trafficking Victims Protection Act, 22 U.S.C. § 7101 et seq. ......................................................22

# TABLE OF AUTHORITIES

**COURT RULES**

Fed. R. Civ. P.
    Rule 59(e)..................................................................................................................................7
    Rule 65(d)(1).............................................................................................................................5

**OTHER AUTHORITIES**

8 C.F.R.
    § 1.2.......................................................................................................................................15
    § 1.3.......................................................................................................................................16
    § 1.3(a) ...........................................................................................................................8, 9, 10
    § 1.3(a)(1) ................................................................................................................................9
    § 1.3(a)(2)-(5) .........................................................................................................................9

18 NYCRR § 360-3.2(j)(1)(ii) .................................................................................................18

Adjudicator's Field Manual (AFM), USCIS,
    https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-
    external.pdf
    Chapter 40.9.2........................................................................................................................10
    Chapter 40.9.2(a)(2)...............................................................................................................16
    Chapter 40.9.2(b)(2)...............................................................................................................10
    Chaper 40.9.2(b)(3)................................................................................................................10

California Dep't of Health Care Servs., Medi-Cal Immigrant Eligibility FAQs
    https://www.dhcs.ca.gov/medi-cal-immigrant-eligibility-
    faqs/#:~:text=What%20type%20of%20information%20does,and%20security
    %20of%20Medicaid%20data .................................................................................................3

CMS State Health Officials Letter (July 1, 2010),
    https://downloads.cms.gov/cmsgov/archived-
    downloads/smdl/downloads/sho10006.pdf..............................................................................9

Congressional Research Service, Immigration Related Crimes (2026),
    https://www.congress.gov/crs-product/LSB11436................................................................20

*Migrants Criminally Charged After Failing to Register with U.S. Government*,
    WASHINGTON POST (May 31, 2025) Jeremy Roebuck and Marianne LeVine
    https://www.washingtonpost.com/immigration/2025/05/31/trump-immigrants-
    registry-doj-justice/...............................................................................................................21

National Immigration Law Center, *Overview of Immigrant Eligibility for Federal
    Programs* (May 2024) https://media.nilc.org/wp-
    content/uploads/2024/05/overview-immeligfedprograms-2024-05-08-1.pdf .......................16

## TABLE OF AUTHORITIES

USCIS *Unlawful Presence and Inadmissibility* (Jan. 25, 2025),
    https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-
    and-inadmissibility...............................................................................................................9, 10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY/MODIFY THE PRELIMINARY INJUNCTION**

Defendants' Motion to "Clarify/Modify" goes far beyond a request for clarification of a term in the Court's third preliminary injunction order (ECF No. 148) (hereinafter, Order). Instead, Defendants seek substantial modifications of that Order despite making no effort to show significant changes in facts or law that would warrant such relief. Defendants also ask the Court to reconsider issues that they already raised, or could have raised, in their opposition to the preliminary injunction motion, even though they have no legitimate grounds for reconsideration of the Order, and any such motion would be untimely. The motion to "Clarify/Modify" is procedurally improper and should be denied.

On the one point where the parties agree that clarification would be appropriate (the definition of "lawfully residing," Order at 6), Defendants now ask the Court to dramatically reshape the scope of the Order. Defendants' proposals are inconsistent with the parties' prior understandings of that term and would expand the Department of Homeland Security's (DHS) access to and use of health records for a wide swath of noncitizens who are already known to the agency and lawfully residing in the United States. In doing so, Defendants ask the Court to step into the shoes of the agencies and revise the data sharing policies between DHS and the Department of Health and Human Services (HHS). But it is not the province of the Court to rewrite what it has described as the "vague language and likely overbroad scope" of the challenged policies. Order at 6.

Defendants' attempts to weaken the protection of the partial preliminary injunction are particularly concerning in light of evidence that continues to emerge about their failure to adhere to the Order. As recently as last week, Defendants' declarant confessed that, despite sworn testimony going back to April that Immigration and Customs Enforcement (ICE) had deleted data it had transferred in violation of the Order, "technological difficulties" now make it impossible for ICE to represent that all files containing the enjoined data (including records of some citizens and others lawfully present) have in fact been identified and deleted. Fourth Briseno Decl. ¶ 24, ECF No. 181-1. ICE's inability to identify Medicaid records in its possession

1

undercuts any claim that the agency should be entitled to *more* access to that data. The Court should adopt Plaintiffs' proposal to limit the Order to those without a final order of removal. This administrable solution would put Defendants clearly on notice regarding the bounds of the Order. This will also allow Plaintiff States to better assure lawfully present noncitizens in need of medical care that receipt of healthcare services will not place a target on their backs.

## I.    BACKGROUND

### A.    Procedural History

The Court has evaluated Defendants' change in policies regarding sharing of information from healthcare programs, and the consequences of these new policies, on multiple occasions over the course of this litigation.

In December of last year, this Court granted in part Plaintiffs' third motion for a preliminary injunction, barring the Centers for Medicare & Medicaid Services (CMS) from sharing Medicaid data with DHS unless the data met specific, narrow criteria. CMS could only share data if it "(1) is from the Medicaid program, (2) pertains only to aliens who are not lawfully residing in the United States, and (3) divulges only those aliens' citizenship and immigration status, address, phone number, date of birth, and Medicaid ID." Order at 6. The Order bars Defendants from sharing data "beyond these categories" because their policies are "totally unclear about what that information would be, why it would be needed for immigration enforcement purposes, and what the risks of sharing it with DHS would be." *Id.* at 1. The Order strictly cabined any data sharing so that it would be congruent with the limited interests set forth by Defendants: "effective immigration enforcement" pertaining to "unlawfully present aliens." *Id*. at 4; ICE Memorandum at 4 (ECF No. 131-2) (explaining that the sought information would be used "most commonly" to "identify[]" those "who have unlawfully entered the United States" and who "have failed to meet their obligations to register their presence . . . or be fingerprinted").

Plaintiffs relied upon the Court's order when providing information to the public about the privacy and security of Medicaid data. For example, on a list of frequently asked questions pertaining to Medi-Cal and immigrants, California's Department of Health Care Services advised

members of the public that the Order prohibits CMS from sharing data from "lawful permanent residents, U.S. citizens, *and others who are lawfully residing in the United States*."[1]

Upon issuance of the Order, Plaintiffs' counsel attempted to meet and confer with Defendants' counsel regarding implementation of the Order. Subsequent interactions revealed that Defendants did not have a clear understanding of what the Order's "lawfully residing" provision meant—or if they did, they did not share their interpretation with Plaintiffs. *See* Pls.' Mot. to Enforce at 2-4 (ECF No. 151) (describing Plaintiffs' attempts to get confirmation from Defendants that they were adhering to terms of the Order).

## B. Defendants' Violations of the Preliminary Injunction Order

Evidence has emerged since the Court issued its Order that show Defendants engaging in a persistent pattern of violations and inaccurate statements about whether they have adequately addressed these violations.

- On April 9, 2026, only in response to Plaintiffs' Motion to Enforce, Defendants finally disclosed in detail that they had violated the Order on at least two occasions: by sharing Medicaid information with ICE of (1) millions of individuals from Plaintiff States on January 7, 2026, and (2) thousands of Minnesotan refugees on January 19, 2026, in both cases failing to ensure that the data shared met the Court's strict conditions. *See* Defs.' Opp'n to Mot. to Enforce at 4-6, ECF No. 155; Briseno Decl. ¶ 7, ECF No. 155-4. Some of the individuals whose information was transferred were citizens and lawful permanent residents (LPRs), and many others were presumably lawfully present individuals. Second Brandt Decl. ¶¶ 25, 33, ECF No. 155-3; Briseno Decl. ¶¶ 7, 10, 13, ECF No. 155-4. These transfers were not based on any individualized law enforcement determination.

---

[1] California Dep't of Health Care Servs., Medi-Cal Immigrant Eligibility FAQs, available at https://www.dhcs.ca.gov/medi-cal-immigrant-eligibility-faqs/#:~:text=What%20type%20of%20information%20does,and%20security%20of%20Medicaid%20data (last visited July 16, 2026).

3

- HHS admitted that data they shared from thousands of Minnesotan refugees went beyond the Order's clear restrictions on types of data that could be shared (i.e., only "citizenship and immigration status, address, phone number, date of birth, and Medicaid ID," Order at 6), to also include data like the date of the refugees' latest medical claim ("MDCD_LATEST_CLM_DT"), Second Brandt Decl. ¶¶ 28, 31-32.

- On May 11, 2026, Defendants claimed that further discovery was "unnecessary" because "Defendants have already remediated their errors in administering the preliminary injunction," and ICE has "already affirmed that it has deleted or made inaccessible the Medicaid data received from Plaintiff States." Joint Status Rep. at 1-2, ECF No. 168. Defendants further stated that ICE had deleted the files "stored locally or in cloud based storage." Opp. To Mot. To Enforce at 1.

- On June 4, 2026, over a month after the Court granted limited discovery to confirm Defendants' statements regarding their remediation efforts, Defendants filed an "updated" declaration, explaining that ICE had overlooked a copy of the January 7, 2026 Medicaid data containing millions of records from Plaintiff States contained in cloud-based storage, but asserting that ICE had taken the necessary steps to delete this data, and a "comprehensive search did not identify any additional copies of the data." Updated Briseno Decl. ¶¶ 11-17 (ECF No. 172-1).

- On June 5, 2026, Defendants produced documents confirming that Medicaid data from Plaintiff States had been shared with employees or contractors of Palantir, a multinational Artificial Intelligence and data analytics corporation, and also that such data was shared through "Microsoft Teams chat" messages. Rich Decl. Ex. A; *see also id*. ¶ 4 (quoting Defendants' discovery statement that "[t]he January 7, 2026, data were shared by Homeland Security Investigations (HSI) with the ELITE Team and Palantir via a Microsoft Teams chat").[2]

---

[2] Plaintiffs intend to continue to pursue discovery to ensure that any Medicaid information shared by Defendants in violation of this Court's Order has been identified and fully remediated.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY/MODIFY PRELIMINARY INJUNCTION (3:25-cv-05536-VC)

- On July 7, 2026, Defendants filed a notice with the Court that HHS personnel had once again "inadvertently" shared with ICE a file of the January 7, 2026 Medicaid data received from Plaintiff States, in violation of the Order, on June 9, 2026 – weeks after the interim injunction on *all data sharing* pending resolution of the instant motion had been in place. Defs.' Notice to the Court, ECF No. 180. Although Defendants promised to produce "documents showing the deletion of the files," the single document later produced by counsel for Defendants contains only screen shots with extensive redactions. Rich Decl., ¶ 5, Ex. B. Defendants' counsel later stated that these screen shots "corroborate the deletion of the relevant files." Rich Decl. ¶ 6.

- On July 8, 2026, Defendants filed a Fourth Declaration of Alberto V. Briseno, explaining that, after conducting searches in response to Plaintiffs' interrogatories, ICE discovered on June 17, 2026 that an additional six ICE employees had copies of the CMS data. ECF No. 181-1 at ¶ 16. Mr. Briseno stated that ICE "has not used the data for any law enforcement operations," *id*. at ¶ 4, but did not explain why these individuals had copies of the data, or what they did with it. Mr. Briseno further stated that Plaintiffs' discovery requests "highlighted technological difficulties of making a representation that every possible variation of the file has been searched for and located" because "ICE's searches cannot capture the existence of all files where file names have changed, and even a single modification to the content of a file will impact ICE's ability to locate it." *Id*.at ¶ 24.

Each successive revelation of a violation of the Order makes it more difficult for Plaintiff States to have confidence in Defendants' ability to maintain and secure this data in compliance with the Order, and more difficult for Plaintiff States to communicate assurances to Medicaid providers, enrollees (and their counsel), and the public at large about the privacy and confidentiality of their healthcare data.

## II.   LEGAL STANDARD

Defendants cite to the legal standard for a motion for clarification of a preliminary

injunction, *see* Defs.' Mot. at 4, but not to the more rigorous standards that apply to motions for modification of a preliminary injunction or for reconsideration of a prior court order.

An order imposing a preliminary injunction must "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction. *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). By clarifying the scope of a previously issued injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). A motion for clarification is an inappropriate vehicle for litigating the merits of any new policy. *Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 718632, at *3 (N.D. Cal. Feb. 20, 2019).

To the extent that a party requests a substantive modification of the terms of a preliminary injunction, not a mere clarification of an ambiguity, a different standard of review applies. A "motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order." *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting *Favia v. Indiana Univ. of Pennsylvania*, 7 F.3d 332, 338 (3d. Cir. 1993)). It "must rest on grounds that could not have been raised before," *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013), such as "if the circumstances, whether of law or fact, obtaining at the time of [the preliminary injunction's] issuance have changed, or new ones have since arisen." *United States v. Washington*, 853 F.3d 946, 979 (9th Cir. 2017) (quoting *System Federation No. 91 v. Wright*, 364 U.S. 642, 647 (1961)). The party who seeks to modify a preliminary injunction "bears the burden of establishing that a significant change in facts or law warrants revisions or dissolution." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (per curiam) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)).

Where a party seeks to relitigate an issue that could have been raised prior to issuance of the challenged order, the Federal Rules of Civil Procedure impose both a high standard of review

and strict time limits for seeking that review. As the Ninth Circuit has explained, "a motion that merely seeks to relitigate the issues underlying the original preliminary injunction order is subject to Rule 59(e)'s [] limit, while a motion that in substance is based on new circumstances that have arisen after the district court granted the injunction may be filed at any time before entry of a final judgment."[3] *Credit Suisse First Bos. Corp.*, 400 F.3d at 1124. A motion to modify an injunction cannot be used to challenge the imposition of the original injunction. *Gon v. First State Ins. Co*., 871 F.2d 863, 866 (9th Cir.1989). Once issued, Defendants must comply with a preliminary injunction, whether they agree with it or not. *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 766 (1983).

## III.   ARGUMENT

Against the backdrop of Defendants' multiple violations and errors, Defendants now move to "clarify/modify" the Court's Order so that they may share and use the healthcare data of vast numbers of lawfully present immigrants residing in Plaintiff States. The Court should clarify that "aliens not lawfully residing" are those with a final order of removal. Both parties have suggested this interpretation over the course of this litigation. And this interpretation provides a clear, administrable standard for the parties to implement.

The Court should deny Defendants' motion for multiple reasons. First, Defendants' motion is procedurally improper. It goes far beyond a request for clarification and instead seeks substantive amendment of the Court's prior Order, but Defendants do not satisfy the standard needed to justify either a substantive amendment or reconsideration. Defendants essentially ask this Court to approve new administrative policies to allow sharing of healthcare data about any individual who is not a citizen or lawful permanent resident, including unexpired visa holders, pending asylum applicants, and beneficiaries of deferred action, among others. Mot. at 5-9. This is a policy that the agencies themselves never proposed, let alone justified. This is not the Court's role in Administrative Procedure Act (APA) litigation. Furthermore, Defendants' substantive

---

[3] Rule 59(e) was amended in 2009 to allow for a 28-day period for post-judgment motions. Defendants had ample time to review the Order and submit a motion for reconsideration during that time.

proposed amendments are unsupported, unreasonable, and would widen the scope of harm caused by their arbitrary and capricious change in policy. The Court should reject the motion.

**A.     The Court Should Clarify that the Preliminary Injunction Order Protects All Noncitizens Who are Not Subject to a Final Removal Order or, in the Alternative, Who Are Not Unlawfully Present**

In the Order, the Court concluded that statutes and policies cited by Plaintiffs "do not restrict ICE from obtaining Medicaid data pertaining to the basic biographical, contact, and location data of *unlawfully present aliens*." Order at 3-4 (emphasis added). Similarly, the Court accepted ICE's determination that the agency's policy objectives outweighed "the reliance interests of *unlawfully present aliens*" and the States. *Id.* at 4 (emphasis added). Beyond that, however, the Court concluded that the ICE and CMS "policies are totally unclear and do not appear to be the product of a coherent decisionmaking process." *Id.* at 5.[4] Accordingly, the Court limited data sharing while this litigation is pending, including by permitting the sharing of Plaintiff States' Medicaid data only when it pertains to "aliens who are *not lawfully residing* in the United States." *Id.* at 6 (emphasis added).

Limiting the definition of individuals "not lawfully residing in the United States" to individuals who are subject to a final order of removal that has not been stayed would give clear and easily administrable guidance to both Defendants and members of the public. Pls. Reply ISO Mot. to Enforce at 10, ECF No. 156. Defendants have suggested that this was one way that they understood and were implementing the Order. *See* Rich Decl. ISO Pls. Mot. to Enforce Third Prelim. Inj. ¶ 15, ECF No. 151-1 (noting Defendants' representation that ICE can identify "aliens subject to a final order of removal" and stating that ICE "will treat as a final order only those removal orders that are administratively final and have not been stayed"). This clarification would also provide Plaintiff States and their residents with clear and administrable notice of whose information may be shared.

---

[4] *See also id.* at 5-6 ("Because the scope of DHS's authority to obtain and to use certain data about *unlawfully present aliens* (or any data about citizens or lawful permanent residents) is a matter of significant consequence, the challenged policies are likely arbitrary and capricious to the extent that they offer no coherent explanation as to their vague language and likely overbroad scope.") (emphasis added).

Alternatively, the Court should define the Order to cover all except those who are "unlawfully present," relying on federal immigration law where "unlawfully present" and "lawfully present" appear as terms of art. *See, e.g.,* 8 U.S.C. § 1182(a)(9)(B) (defining "Aliens unlawfully present"); 8 C.F.R. § 1.3(a) (defining "[l]awfully present aliens for purposes of applying for Social Security benefits"). Such a definition would correspond to the plainest reading of the Court's entire Order, that "aliens who are not lawfully residing in the United States" refers to aliens who are "unlawfully present."

As a general matter, a noncitizen is unlawfully present when their "continuing presence in this country is in violation of the immigration laws." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999). By contrast, DHS regulations provide a definition of "lawfully present aliens" for purposes of Social Security benefits that explains whose presence is *not* in violation of immigration law. *See* 8 C.F.R. § 1.3(a). This definition includes any "qualified alien" as defined by PRWORA, 8 U.S.C. § 1641(b), which includes lawful permanent residents, approved asylees, and many other noncitizens who are eligible for certain federally funded public benefits. 8 C.F.R. § 1.3(a)(1). The DHS regulation also defines "lawfully present aliens" to include, among others, asylum applicants, temporary visa holders in good status, refugees, TPS holders, individuals in deferred action status, and many others already known to DHS. 8 C.F.R. § 1.3(a)(2)-(5)*; see also Dep't of Homeland Security v. Regents of the University of California*, 591 U.S 1, 10 (2020) (explaining that deferred action recipients are considered "lawfully present" for purposes of Social Security and Medicare eligibility). CMS uses a similar definition for its rules allowing States to cover children and pregnant women who are "lawfully residing in the United States." *See, e.g.*, CMS, Dear State Health Officials Letter (July 1, 2010), https://downloads.cms.gov/cmsgov/archived-downloads/smdl/downloads/sho10006.pdf. Plaintiffs believe this regulatory language would provide a legally appropriate and workable definition for Defendants to follow.

This regulatory definition of "lawfully present" is essentially the mirror image of the definition of "unlawfully present" that Congress has provided by statute for the purposes of

determining an individual's inadmissibility into the United States. As set forth at 8 U.S.C. § 1182(a)(9)(B), "an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled.";[5] *see also* U.S. Citizenship and Immigration Services, *Unlawful Presence and Inadmissibility* (last visited June 12, 2026), available at https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (discussing this statute and the definition of "unlawful presence").

The Immigration and Nationality Act (INA) and implementing guidance further include a defined list of exceptions which generally tracks the definition of "lawfully present" individuals described by 8 C.F.R. § 1.3(a). The statute explains that noncitizens are generally not considered to be "unlawfully present" for the purposes of this statute if they are minors; applicants for asylum; beneficiaries of family unity protection; battered women or children; or trafficking victims. *See* 8 U.S.C. § 1182(a)(9)(B)(iii); USCIS Adjudicator's Field Manual (AFM), Ch. 40.9.2(b)(2).[6] Longstanding USCIS guidance further excludes several other categories of noncitizens, including certain individuals with pending applications for relief, those who have been granted deferred action (such as DACA), and those who have received certain forms of humanitarian relief. *See id.* Ch. 40.9.2(b)(3).

In short, the nuances and complexities of this system counsel in favor of adopting a clear statutory definition of "lawfully present" or "unlawfully present" that DHS has extensive experience administering. *See* AFM, Ch. 40.9.2. Either the regulatory definition of "lawfully present" at 8 C.F.R. § 1.3(a) or the statutory definition of "unlawfully present" at 8 U.S.C. § 1182(a)(9)(B)(ii)-(iii) fit this bill.

Relying on these definitions is also consistent with the Court's view that ICE may legally

---

[5] References to the Attorney General in the INA should be read as references to the Secretary of Homeland Security following the creation of DHS.

[6] Chapter 40 of the USCIS AFM is available online at https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf. *See also* USCIS, *Unlawful Presence and Inadmissibility* (Jan. 25, 2025), https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (referencing the Adjudicator's Field Manual).

access sensitive Medicaid data for immigration enforcement purposes when that data is necessary to find people whom the federal government otherwise could not locate.[7] By contrast, the individuals defined by regulation as "lawfully present" and excluded from this legal definition of "unlawfully present" (such as unexpired visa holders, pending asylum applicants, and beneficiaries of deferred action) are known to the federal government, who can locate them without resorting to the use of sensitive healthcare records. Plaintiffs' proposed definition would also avoid the uncertainty inherent in adopting a narrower definition that leaves discretion over which categories of individuals are protected by the Order solely in Defendants' hands. This exact scenario occurred when Defendants transferred Medicaid enrollment data for 6,000 Minnesotan refugees, who would otherwise have reasonably assumed that they were "lawfully present" and that their use of Medicaid would not make them targets for ICE enforcement.[8]

Clarifying that the Order permits sharing of Plaintiff States' Medicaid data only for individuals who are "unlawfully present" would be consistent with the parties' understanding of the Order. It would be consistent with state Medicaid agencies' understanding of the Order, s*ee supra* p. 2-3, as well as Defendants' counsel's clarifying email sent to Plaintiffs on March 13, 2026. *See* Rich Decl. ISO Pls. Mot. to Enforce ¶ 15. Indeed, Defendants' own affiants seem to share this common-sense understanding of the Order, repeatedly acknowledging that their agencies could only share Medicaid data on individuals who were not lawfully residing in the

---

[7] *See, e.g.,* Dec. 9, 2025 Hearing Tr. at 20:22-21:4 ("THE COURT: I understand why ICE wants to obtain, right, information on patients who are undocumented; right. That we are having trouble locating people and they have current address information, contact information, whatever, in the CMS files. And for the people who we wish to take enforcement action against, we want to get this information so it is easier for us to take enforcement action against them.").

[8] After Minnesotan refugees' Medicaid data was shared in January 2025, DHS revoked longstanding policies and operational guidance that had protected those lawfully present refugees from detention and removal. This revocation has since been enjoined by multiple courts. *See, e.g.*, *Darvin M. v. Bondi*, No. 26-CV-0437, 2026 WL 184843, at *2-6 (D. Minn. Jan. 24, 2026) ("Admission as a refugee is a distinct lawful immigration status."); *Liban G. v. Noem*, No. 26-CV- 0301, 2026 WL 185334, at *3-6 (D. Minn. Jan. 23, 2026) (same); *Aleksander B. v. Trump*, No. 26-CV-170, 2026 WL 172435, at *3-6 (D. Minn. Jan. 22, 2026) (same); *Andrei C. v. Lyons*, No. 26-CV-0166, 2026 WL 123083, at *2-3 (D. Minn. Jan. 16, 2026) (same); *see also Ta Eh Doh Lah v. Bondi*, No. 26-CV-00171, 2026 WL 184529, at *2 (D. Minn. Jan. 23, 2026).

U.S.[9] Going forward, this clarification would aid Defendants' compliance with the Order and provide fair warning about what future conduct could be found contemptuous. It would also preserve the interests of members of the public, including Medicaid providers, applicants, and beneficiaries, who have relied upon the plain terms of the Order since it was issued.

**B.      The Court Should Reject Defendants' Requests for Modifications that Weaken the Preliminary Injunction**

**1.      Defendants' Requests Are Procedurally Improper**

"[M]otions for clarification have a limited role." *Steele v. United States*, No. 1:14-CV-1523-RCL, 2023 WL 6215790, at *5 (D.D.C. Sept. 25, 2023). "[T]he general purpose of a motion for clarification 'is to explain or clarify something ambiguous or vague, not to alter or amend.'" *LeTip World Franchise LLC v. Long Island Soc. Media Grp. LLC*, No. CV-24-00165-PHX-SMB, 2024 WL 5434026, at *3 (D. Ariz. July 25, 2024) (citation omitted). In evaluating whether a purported clarification request seeks reconsideration of a prior court order, "[t]he key question is if modifications to an order change the operative, substantive terms of the original order or judgment." *Great Am. Ins. Co. v. Weitz Co., LLC*, No. 25-CV-02079-LJC, 2026 WL 323301, at *2 (N.D. Cal. Feb. 6, 2026) (citation omitted).

Defendants' Motion to "Clarify/Modify" is procedurally improper for several reasons. First, revising the scope of the individuals covered by the Order, the purposes for which data might be shared, or the type of data shared, are all changes that do not merely seek to clarify the Court's Order, but to upend it. Yet Defendants have not attempted to satisfy the demanding standard needed for substantial revision of the Court's Order, namely presenting (1) new evidence, (2) clear error or manifest injustice, or (3) an intervening change in law. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). And the

---

[9] *See, e.g.,* Katz Decl. ¶ 12, ECF No. 155-5, (conceding that data transfer "could potentially include information relating to aliens who were not *unlawfully residing* in the United States" (emphasis added)); Second Brandt Decl. ¶ 17, ECF No. 155-3, ("HHS/CMS, therefore, worked under the assumption that the individuals included on the spreadsheet received from DHS/ICE were *not lawfully residing* in the United States." (emphasis added)); Briseno Decl. ¶ 10, ECF No. 155-4, ("On January 7, 2026, ICE received a list of matches from HHS/CMS. It was ICE's understanding that the HHS/CMS list contained data for aliens *unlawfully residing* in the United States." (emphasis added)).

deadline by which to file a motion for reconsideration of the Order has long since passed. This Court should not grant what amounts to an unsupported motion for relief from a prior judgment.

Second, Defendants' Motion is inappropriate in the context of APA review. Defendants ask that this Court approve new administrative policies, which the agencies themselves never proposed, let alone explained or justified. Defendants contend that their proposed new injunctive terms are "reasonable," and "make[] sense" based on Defendants' interpretation of the law. Defs.' Mot. at 6-7. But these sorts of policy arguments cannot now provide legal bases for the Court to devise and sanction a new administrative policy, the specific terms of which are not what Defendant agencies previously proposed. *See Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 (1986) ("agency accountability . . . means that 'an agency's action must be upheld, if at all, on the basis articulated by the agency itself'" (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 50 (1983)); *accord Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1039 n.10 (9th Cir. 2013) ("The *agency* must show that it had a reasonable basis for its decision[.]") (emphasis added).

Defendants do not merely ask this Court to "sever" different parts of their prior policy (*see* Order at 6) – which would be a substantive modification in and of itself – but to substantively redetermine which immigrant populations can have their Medicaid data shared by CMS with DHS, and the permissible purposes for that data sharing. The agencies' original policies do not explain whether and why it would be reasonable for DHS to access the Medicaid information of numerous categories of immigrants who have lawful status. *See* ECF Nos. 131-1, 131-2. Defendants did not consider the reliance interests at stake for particular populations of noncitizens.[10] Finally, Defendants did not, and do not now, explain how their proposed new policies would function in practice; namely, how CMS or ICE would ensure that only data from certain immigrant populations would be shared, how this specific data would be used, and how such data sharing would be monitored and safeguarded. As evidenced by Defendants' repeated

---

[10] "Longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (cleaned up)).

violations of the Order, Defendants have not adequately considered the complexities of their requests. To the extent that Defendants offer any explanation as to why their proposed information sharing policies are reasonable, the reasoning is improperly provided by litigation counsel rather than the agency. *See Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008) ("[E]xplanations of agency action by . . . counsel cannot substitute for the agency's own articulation of the basis for its decision.").

As this Court previously held, Defendants' prior proposed policies offered "no coherent explanation as to their vague language and likely overbroad scope." Order at 6. The Court "'should not attempt . . . to make up for such deficiencies' and 'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 31 F.4th 1203, 1207 (9th Cir. 2022) (citation omitted); *see also Persian Broad. Serv. Glob., Inc. v. Walsh*, 75 F.4th 1108, 1111–12 (9th Cir. 2023) ("The scope of our review under this standard is narrow […] a court is not to substitute its judgment for that of the agency." (citation omitted)). Indeed, "judicial reordering of the enforcement and policy priorities" of an agency "is generally not within the power of the Article III courts." *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024); *see also Oceana, Inc. v. Coggins*, No. 19-CV-03809-LHK, 2021 WL 1788516, at *4 (N.D. Cal. May 5, 2021) ("[T]o order the agency to take specific actions is reversible error." (citation omitted)); *Pub. Citizen, Inc. v. Trump*, 361 F. Supp. 3d 60, 64 (D.D.C. 2019) ("It is not the Court's role to decide which proposed regulations should, or should not, be adopted[.]").

Defendants' Motion should be denied for these reasons as well.

### 2. Defendants' Proposed Narrowing of Individuals Covered by the PI Order Is Unreasonable and Unworkable

Defendants propose two alternative definitions that would expand the Order's exception for "aliens who are not lawfully residing in the United States" far beyond what was originally described in the Court's preliminary injunction.

One basis for Plaintiffs' third motion for a preliminary injunction was their argument that

14

ICE's new data policy was overbroad and could be used to sweep up citizens, LPRs, *and* others here lawfully. ECF No. 134 at 18. Now, Defendants explicitly request significant changes to the substantive terms of this Court's Order, seeking permission to share and use Medicaid data from many immigrants in Plaintiff States with lawful status. The time for such a substantive re-working of the preliminary injunction has long since passed.

Defendants' first proposal would limit the preliminary injunction *only* to citizens and LPRs. Defs.' Mot. at 5-6. With only those individuals' data out of bounds, CMS could share and DHS would be free to use Medicaid information pertaining to many individuals who Defendants concede are lawfully residing in the United States, including refugees, asylees, and other immigrants in "valid nonimmigrant status[es]." *Id*. at 8, *see also id*. at 7-8 (describing numerous categories of aliens who are "permanently residing here with a lawful status (*i.e.*, under color of law)"). Narrowing the protection of the Order to only citizens and LPRs would be a substantial change from the plain text of the Order, and would be inconsistent with subsequent conversations between Plaintiffs and Defendants regarding implementation of the Order. *See* Pls.' Mot. to Enforce at 2-4 (describing the parties' communications regarding implementation of the Order). Therefore, as a threshold matter, the Court should reject Defendants' argument that the Order's reference to "aliens who are not lawfully residing in the United States" should mean only U.S. citizens or LPRs as defined by 8 U.S.C. § 1101(a)(20) and 8 C.F.R. § 1.2. *See* Defs.' Mot. at 5-6.[11]

The Court should also reject Defendants' second proposal to narrow the Court's order by importing the Social Security Act's definition of individuals who are "lawfully admitted for permanent residence or otherwise *permanently* residing in the United States under color of law [PRUCOL]." Defs.' Mot. at 1 (quoting 42 U.S.C. § 1396b(v)(1)) (Defendants' emphasis); *see*

---

[11] Defendants argue that "[a]ny alternative approach would provide greater protections to non-LPR aliens' data, in contravention of the Privacy Act." Defs.' Mot. at 7. But the basis for the Court's preliminary injunction was a finding that Defendants' data sharing policies were, in part, arbitrary and capricious in violation of the APA. That the Court therefore limited Defendants' ability to share sensitive Medicaid data from all individuals who are lawfully present (but not only citizens or LPRs) does not implicate the Privacy Act at all, much less contravene it.

*also id.* at 7-9. Under this alternative, Defendants propose that they would be barred from sharing Medicaid information as to individuals with "permanent" resident status, but free to use and share information for numerous other categories of immigrants with lawful status and protection, including: recipients of Deferred Action for Childhood Arrival (DACA), individuals with an order deferring or withholding removal, individuals with Special Immigrant Juvenile status (youth subject to abuse, neglect or abandonment), and beneficiaries of TPS, among many others.

The Social Security Act uses this PRUCOL definition to grant full Medicaid reimbursement benefits to aliens who are in the United States both lawfully and permanently, *see* 42 U.S.C. § 1396b(v)(1), while limiting reimbursements for aliens who are neither LPRs nor PRUCOL to treatment of certain emergency medical conditions, *see id.* § 1396b(v)(2)-(3).[12] But this eligibility framework is inapt in this context, because it groups many people who are lawfully present in the U.S. (such as nonimmigrant visa holders) together with people who lack lawful status in the U.S. for the purpose of excluding them from certain federal public benefits.[13] Unlike Plaintiffs' proposed reliance on 8 C.F.R. § 1.3 or 8 U.S.C. § 212(a)(9)(B), *see supra* Section III(A), Defendants' PRUCOL definition does not define whether someone is "lawfully present" but whether they are a permanent resident eligible for certain public benefits—an entirely different question.

Defendants' proposal also conflates unlawful presence with unlawful "status," (*see* Defs.' Mot. at 7-9) even though these are "terms of art in the scheme of federal immigration law" with distinct and different meanings. *See Arizona Dream Act Coal. v. Brewer,* 757 F.3d 1053, 1073 (9th Cir. 2014) (J. Christen, concurring). As one court has explained, "unlawful presence and

---

[12] As Defendants note, *see* Defs.' Mot. at 1 n.1, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) also created a definition of "qualified aliens" who are eligible for certain federal public benefits, and imposed certain additional requirements, including a 5-year waiting period, on those "qualified aliens." *See* 8 U.S.C. § 1641(b) (defining "qualified alien"); *id.* § 1611 (limiting eligibility for certain Federal public benefits to "qualified aliens"); *id.* § 1613 (imposing five-year waiting period).

[13] *See* National Immigration Law Center, *Overview of Immigrant Eligibility for Federal Programs* (May 2024), available at https://media.nilc.org/wp-content/uploads/2024/05/overview-immeligfedprograms-2024-05-08-1.pdf, at 3.

unlawful status are distinct concepts in the argot of immigration specialists. It is entirely possible for aliens to be lawfully present (*i.e.,* in a 'period of stay authorized by the Attorney General') even though their lawful status has expired." *Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (citing *In re L–K,* 23 I. & N. Dec. 677, 680–81 (BIA 2004)); *see also* USCIS Adjudicator's Field Manual, Ch. 40.9.2(a)(2) (explaining the distinction between "unlawful status" and "unlawful presence"). Based on this faulty legal reasoning, Defendants argue that the Court's order should exclude asylum applicants; individuals with an administrative or judicial stay pending appeal; "deferred action" recipients; aliens whose removal has been withheld or deferred; Special Immigrant Juveniles[14]; TPS beneficiaries; and certain nonimmigrant visa holders (such as tourists, students and agricultural laborers). Defs.' Mot. at 8-9. But while such individuals may not have a permanent lawful status, the federal government has decided (in the relevant context of future immigration penalties) that none of these individuals are "unlawfully present." All of them are known to the federal government. And ICE has failed to demonstrate that it needs to collect the sensitive Medicaid data of all these individuals *en masse* in order to effectuate its valid immigration enforcement activities.

Defendants' PRUCOL proposal would also cause confusion because of their failure to offer the Court a definition of "permanently," a key term. The INA and caselaw interpret the term more broadly than Defendants. 8 U.S.C § 1101(a)(31) provides that "permanent means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." *See also Sudomir v. McMahon*, 767 F.2d 1456, 1462 (9th Cir. 1985) ("permanently" as defined by 8 U.S.C. § 1101(a)(31) includes a situation where the government "has permitted an alien to stay in the United States 'so long as he is in a particular condition,' . . . even though circumstances may change, and the alien may later lose his right to stay"); *Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977) (interpreting

_____

[14] Special Immigrant Juveniles are distinct from this group because they have a direct path to permanent status. *See* 8 U.S.C. §§ 1101(a)(27)(J), 1255(h).

17

"permanently residing in the United States under color of law" broadly to include visa overstay who had been residing in the US for years and had received written assurance from former Immigration and Naturalization Service that it did not contemplate deporting her "at this time"). Even within the Motion itself, Defendants struggle to adhere to a consistent definition of PRUCOL. In their opening paragraph, Defendants propose in the alternative that the Court "could permit sharing except for those aliens 'lawfully admitted for permanent residence or otherwise *permanently* residing in the United States under color of law.' 42 U.S.C. § 1396b(v)(1) (Social Security Act) (emphasis added)." Defs.' Mot. at 1. Later, however, Defendants describe their proposed PRUCOL category as LPRs and "those *aliens who have lawful status under the INA* and who are permanently residing in the United States," (*id*. at 7 (emphasis added), which is inconsistent with Section 1396b(v)(1), which refers to aliens "lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law" but does *not* require a "lawful status under the INA."

Defendants do propose various subcategories of individuals to exclude from the Order, but those are confusing and overbroad. Defendants suggest that the Court allow data sharing for "applicants for an immigration benefit or relief or protection from removal" (Defs.' Mot. at 8), but this subcategory is not mutually exclusive with other categories that Defendants propose that the Court *include* in the PI. For example, an asylee applying for adjustment of status is both an alien granted asylum (a proposed included category) and an applicant for an immigration benefit (a proposed excluded category). If the Court were to embrace the subcategories set forth by Defendants, it would then need to further clarify that excluded "applicants" only include noncitizens with pending benefit applications who otherwise lack authorization.

The concept of "permanent" residency is important in the context of public benefit eligibility, where the federal government has decided that many federal benefits (including non-emergency Medicaid benefits) should only be available to noncitizens who are here both *lawfully* and *permanently*. But as the Court's order recognized, the salient question for this litigation is whether a noncitizen is here *lawfully*. Indeed, although Defendants have never clearly explained

18

how the misunderstanding between CMS and ICE occurred, the gap between having "unsatisfactory immigration status" for Medicaid purposes and being "unlawfully present" for immigration enforcement purposes appears to be one reason for the miscommunication that caused violations of the Order. *See* Defs.' Opp. to Pls.' Mot. to Enforce the Third P.I. Order, ECF No. 155 at 4 (citing Briseno Decl. ¶¶ 6-7, Second Brandt Decl. ¶ 17). And even a person who is lawfully residing on a time-limited basis—for example, a graduate student on a valid visa—should not fear that receiving emergency Medicaid services for which they are eligible will cause them to be "ingested" into Palantir's targeting software for ICE (or other DHS) use.

Adding to the risk of confusion, PRUCOL is a term of art used in state Medicaid program contexts to refer to public benefit eligibility status (not federal immigration status). For those purposes, PRUCOL has a different, broader meaning that varies by State. *See, e.g.*, 18 NYCRR § 360-3.2(j)(1)(ii) (defining "permanently residing under color of law" as "an alien who is residing in the United States with the knowledge and permission or acquiescence of the Federal Immigration Agency and whose departure from the U.S. such agency does not contemplate enforcing"). Incorporation of the term PRUCOL into the Court's order would inevitably lead to the same sort of confusion that Defendants' earlier misguided (and now abandoned) attempt to rely on the Medicaid term "unsatisfactory immigration status" for data sharing purposes did.

If the Court were inclined to adopt "lawful permanent residents" and those "permanently residing under color of law" as the definition of those covered by the Order, it should do so in a manner consistent with statutes and caselaw, including a broad definition of "permanently" as set forth in 8 U.S.C. § 1101(a)(31), rather than the crabbed and confusing alternative proposed by Defendants. Such a category could include anyone residing in the US with authorization ("under color of law") that isn't limited by a fixed time frame—including, for example, deferred action and TPS—as well as withholding of removal, since the government permits these individuals to stay in the US so long as they are in a "particular condition," even though they may later lose the right to stay. *See Sudomir*, 767 F.2d at 1462. In that case, those excluded from the Order's protection would include applicants for immigration benefits who otherwise reside in the country

19

without authorization and individuals with temporary visas who must demonstrate nonimmigrant intent as a condition of the visa (e.g., tourists, students, and other visitors).

Overall, Defendants' attempts to narrow the definition of "lawfully present" are unreasonable and will lead to confusion and fear for individuals who are already known to DHS and in need of access to healthcare—exactly the circumstances that the Order was intended to preliminarily protect against. The Court should reject the invitation to modify its Order this way.

### 3. Defendants' Proposed Redefinition of "Immigration Enforcement Purposes" Is Inappropriate and Unreasonable

Defendants' second proposal, to create an exception for immigration enforcement efforts that rely on criminal statutes that are used to enforce immigration (and other) laws, would create a substantial new exception to the Court's Order that would undermine its protective value. Defendants could have raised this in a motion to reconsider the Order, but did not do so in a timely manner. It should now be denied.

Defendants state that they "do not believe" that investigations into violations of the criminal statutes mentioned in the previous Joint Status Report, "much less any criminal statute, should be considered immigration enforcement." Defs.' Mot. at 12. Their proposed revision of the term "immigration enforcement purposes" to exclude investigations of criminal laws would remove all meaningful protection of the Order, because many civil immigration violations can be recast as violations of criminal statutes. This would give Defendants a loophole to justify resumption of bulk transfers of data, and would prevent Plaintiffs and medical providers from providing any meaningful assurances, even for those with lawful status. For example, a noncitizen is removable under 8 U.S.C. § 1227(a)(3)(A) for failing to notify the government of a change of address within 10 days, as required by Section 1305(a), unless the noncitizen establishes that the failure was reasonably excusable or was not willful. But the same failure can *also* subject a noncitizen to a misdemeanor criminal charge under 8 U.S.C. § 1306(b).[15] If ICE

---

[15] Other common grounds for civil immigration enforcement and their parallel criminal statutes include: 8 U.S.C. §§ 1182(a)(9)(C) (inadmissibility for unlawful presence after previous immigration violations) and 1326 (criminal penalties for illegal reentry); 8 U.S.C.

(continued…)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY/MODIFY PRELIMINARY INJUNCTION (3:25-cv-05536-VC)

wishes to initiate removal proceedings against noncitizens who have failed to update their addresses, and wants to rely on the States' Medicaid data in order to fish for individuals to target, under Defendants' proposed definition of "immigration enforcement," ICE need only indicate an interest in investigating potential violations of 8 U.S.C. § 1306(b)—rather than civil enforcement actions related to removability under Section 1227(a)(3)(A)—in order to receive data *en masse* from HHS.

Similarly, some criminal statutes penalize behavior that does not involve any act beyond the failure to comply with immigration-related rules in and of themselves. For example, 8 U.S.C. § 1306(a) provides,

> Any alien required to apply for registration and to be fingerprinted in the United States who willfully fails or refuses to make such application or to be fingerprinted, and any parent or legal guardian required to apply for the registration of any alien who willfully fails or refuses to file application for the registration of such alien shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $1,000 or be imprisoned not more than six months, or both.

The federal government has only recently begun enforcing this type of law.[16] If DHS sought data from HHS in order to initiate investigations into violations of this type of criminal law, it could not be said that the data sharing has "nothing to do" with immigration enforcement. *See also* 8 U.S.C. § 1304(e) (failure of an alien 18 and over to have immigration documents in personal possession at all times is misdemeanor punishable by $100 fine and 30 days' imprisonment). The specific criminal statutes cited in Defendants' earlier Proposed Stipulation (ECF No. 168 at 1) likewise plainly refer to immigration enforcement. *See, e.g., United States v. Pastor-Perez*, 2025

---

§§ 1182(a)(6)(C) (inadmissibility for seeking immigration benefits or admission by fraud or willful misrepresentation of a material fact) and 1325(a)(3) (criminalizing entry or attempted entry through willfully false or misleading representation or willful concealment of a material fact); 8 U.S.C. §§ 1154(c) (bar on immigration benefits for noncitizen who previously committed marriage fraud) and 1325(c) (criminalizing knowingly entering a marriage for purpose of evading immigration laws); 8 U.S.C. § 1227(a)(3)(D) (removability for falsely claiming US citizenship) and 18 U.S.C. § 911 (criminalizing false claim to US citizenship). *See generally* Congressional Research Service, Immigration Related Crimes (2026), https://www.congress.gov/crs-product/LSB11436.

[16] Jeremy Roebuck and Marianne LeVine, *Migrants Criminally Charged After Failing to Register with U.S. Government*, WASHINGTON POST (May 31, 2025), https://www.washingtonpost.com/immigration/2025/05/31/trump-immigrants-registry-doj-justice/ (last visited July 16, 2026).

WL 3514108 (N.D. Ohio Dec. 8, 2025) (charging undocumented worker with violations of 18 U.S.C. §§ 1015 and 1028A).

Once again, as the Court previously found, Defendants put forth a proposal that is "vague" and "likely overbroad" because it lacks clarity regarding the scope of relevant proceedings, whether this information will be obtained "case by case" or in bulk (as with the bulk transfer of Minnesotan refugees' data), or whether the exceptions would include data on citizens and LPRs. *Cf.* Order at 5-6. Defendants do not offer details that would explain the scope or significance of this proposed modification to the Order, such as which healthcare data Defendants expected to share with ICE pursuant to these proposed carveouts; the factual predicates or level of individualized inquiry that would be required for sharing of HHS/CMS data received from Plaintiff States with DHS for criminal immigration enforcement purposes; and what other limitations or guardrails might protect this data. Defendants submit no evidence indicating that access to the States' Medicaid data, in particular, is needed in order to prosecute crime.

Defendants' proposal would remove any meaningful limits on DHS's ability to access Medicaid data in bulk. The Court should not modify this aspect of its prior Order.

### 4. Defendants Fail to Justify Their Proposed Narrowing of the Scope of the PI Order to Immigration Enforcement Only

Defendants also ask the Court to relieve HHS of the Order's general restriction on sharing its data with DHS.

Plaintiffs have already agreed to revisions of the Order for specific purposes for which federal healthcare data has historically been shared on an allowable and routine basis. *See* Joint Status Rep. on Stipulation at 4, ECF No. 168 (proposing stipulated exception to the Order for "information received from the Plaintiff States for purposes of refugee resettlement or to permit HHS to confirm eligibility for Medicaid benefits"); Order re: Data Sharing for Pendency of Dispute, ECF No. 170 (clarifying that Order does not prohibit sharing of information for these purposes). The Office of Refugee Resettlement's work to make placement determinations for unaccompanied minors presumably already falls within this exception. Plaintiffs are willing to

similarly agree to HHS transfers of data to DHS as mandated by Defendants' statutory obligations pursuant to the Trafficking Victims Protection Act, 22 U.S.C. § 7101 et seq.

Setting aside these narrow, historically allowed purposes, Defendants are wrong to suggest that the Order should be substantially revised further so as to give HHS carte blanche to transfer federal healthcare data to DHS for *all* purposes other than immigration enforcement. While immigration enforcement has been the focus of the preliminary motion practice in this case thus far (because of Defendants' extraordinary actions to coopt Medicaid data for that purpose), it is far from Plaintiffs' only concern about HHS's new data sharing policy. As Plaintiffs set forth in the Complaint and other filings, Defendants' new data sharing policies and practices that allow commandeering of State healthcare data for administrative dragnet projects are likely to have harmful effects on other marginalized groups who have been targeted by the current administration, including "transgender individuals, people with mental illness, and those seeking reproductive and gender affirming care." ECF 1, Complaint ¶ 232. Rather than substantially revising the Order to limit only HHS transfers for purposes of immigration enforcement, the burden should remain on Defendants to request relief for specific, allowable purposes that it believes should not be covered by a preliminary injunction.

### 5. Defendants' Proposed Narrowing of the Scope of the PI Order to Medicaid Data Only Is Unreasonable

Defendants' final proposal for substantial modification—asking the Court for relief from the restriction on sharing of data unless it is "from the Medicaid program"—represents yet another belated attack on the Order itself, and should also be denied as improper.

This case centers on Defendants' "bolt from the blue reversal" of decades long policy of strictly limiting sharing and use of federal healthcare data, including for immigration enforcement. First PI Order at 4, ECF No. 98. Thus far, the focus of Plaintiffs' complaint and preliminary motion practice has focused on Medicaid data because of Defendants' known disclosures of data from that program. *See* T-MISIS Agreement, ECF No, 83-3, and ICE Letter to CMS, ECF No. 133-1. Plaintiffs' third motion for a preliminary injunction squarely raised the

issue of other, non-Medicaid federal healthcare records for the Court. *See, e.g.*, Pls. Reply at 2, ECF No. 140 (noting that the challenged ICE memorandum "names a broad spectrum of CMS programs" including potentially ACA marketplace data and Medicare). At the hearing on that motion, the Court repeatedly questioned Defendants about the scope of the data sharing at issue, and Defendants repeatedly explained that the agencies' current data sharing is limited to Medicaid data. *See* Transcript of Dec. 9, 2025 Hearing :3-at 4-8. Defendants acknowledged,

> [A]s to other […] potential programs, that data has not been -- ICE hasn't requested it yet. CMS hasn't responded with respect to such a request. […] I mean, obviously if the agency were to do that, it might have to beforehand take -- you know, given the context of what's happened here, it might have to think about, like, what exactly the bases are for that type of sharing and the tradeoffs and the reliance interest and so on and so forth for those sorts of things.

*Id*. at 10:3-13. The Court accordingly preliminarily enjoined HHS transfers of information received from Plaintiff States "unless it […] is from the Medicaid program." Order at 6.

Defendants do not identify any change in facts or in law that would justify removal of this provision from the Order. Nor have Defendants completed or even attempted any new reasoned decisionmaking concerning the sharing of data from other health programs. When the Court first enjoined Defendants' data sharing, it noted that before changing their policies, "it was incumbent upon the agencies to carry out a reasoned decisionmaking process." First PI Order at 3, ECF No. 98. HHS and CMS's subsequent policy focused on Medicaid data sharing. CMS Notice, ECF No. 131-1. Despite what Defendants' counsel previously described as "obvious" tradeoffs and reliance interests that Defendants would need to consider, they now ask the Court to expand allowable programs for data sharing without any consideration of the "bases" for the type of sharing and the "tradeoffs and the reliance interest" and "so forth." This request is improper.

The court should deny this blatant attempt to sidestep the requirements of the APA.

## CONCLUSION

For these reasons, Plaintiffs' proposed clarification to the Order should be adopted, and Defendants motion to "clarify/modify" the preliminary injunction should otherwise be denied.

Dated:  July 16, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General for the State of New York
MARK LADOV*
Special Counsel
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
ZOE LEVINE*
Special Counsel for Immigrant Justice
NATASHA KORGAONKAR*
Special Counsel
28 Liberty St. New York, NY 10005
mark.ladov@ag.ny.gov
*Attorneys for the State of New York*
*Admitted pro hac vice

ROB BONTA
Attorney General for the State of California
NELI PALMA
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
WILLIAM BELLAMY
KATHERINE MILTON
KEVIN G. REYES
ANNA RICH
STEPHANIE T. YU


/s/  *Anna Rich*_____
ANNA RICH
Deputy Attorneys General
*Attorneys for the State of California*


*Additional Counsel*
KRISTIN K. MAYES
Attorney General for the State of Arizona
ALEXA G. SALAS*
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Alexa.Salas@azag.gov
ACL@azag.gov
*Attorneys for the State of Arizona*
*Admitted pro hac vice

PHILIP J. WEISER
Attorney General for the State of Colorado
RYAN LORCH*
Senior Assistant Attorney General
SAM WOLTER*
Assistant Attorney General
1300 Broadway, #10
Denver, CO 80203
Ryan.lorch@coag.gov
samuel.wolter@coag.gov
*Attorneys for the State of Colorado*
*Admitted pro hac vice


WILLIAM TONG
Attorney General of Connecticut
JANELLE MEDEIROS*
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
Janelle.Medeiros@ct.gov
*Attorneys for the State of Connecticut*
*Admitted pro hac vice

KATHLEEN JENNINGS
Attorney General for the State of Delaware
IAN R. LISTON
Director of Impact Litigation
JENNIFER KATE AARONSON
VANESSA L. KASSAB*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
vanessa.kassab@delaware.gov
*Attorneys for the State of Delaware*
*Admitted pro hac vice

25

ANNE E. LOPEZ
Attorney General for the State of Hawai'i
KALIKO'ONĀLANI D. FERNANDES*
Solicitor General
DAVID D. DAY*
Special Assistant to the Attorney General
425 Queen Street
Honolulu, HI 96813
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
*Attorneys for the State of Hawai'i*
*Admitted pro hac vice

S. TRAVIS MAYO
General Counsel
Office of the Governor of Kentucky
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for Plaintiff Governor of Kentucky,
Andy Beshear*
* Admitted pro hac vice

KWAME RAOUL
Attorney General for the State of Illinois
HARPREET KHERA*
Bureau Chief, Special Litigation
SHERIEF GABER*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
sherief.gaber@ilag.gov
harpreet.khera@ilag.gov
*Attorneys for the State of Illinois*
*Admitted pro hac vice

AARON M. FREY
Attorney General for the State of Maine
BRENDAN KRECKEL*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
brendan.d.kreckel@maine.gov
*Attorneys for the State of Maine*
*Admitted pro hac vice

26

ANTHONY G. BROWN
Attorney General for the State of Maryland
MICHAEL DREZNER*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Mdrezner@oag.state.md.us
*Attorneys for the State of Maryland*
*Admitted pro hac vice

ANDREA JOY CAMPBELL
Attorney General for the State of
Massachusetts
KATHERINE DIRKS
Chief State Trial Counsel
CHLOE CABLE
ETHAN W. MARKS*
Assistant Attorneys General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
Katherine.Dirks@mass.gov
Chloe.Cable@mass.gov
Ethan.W.Marks@mass.gov
*Attorneys for the Commonwealth of Massachusetts*
*Admitted pro hac vice

DANA NESSEL
Attorney General for the State of Michigan
NEIL GIOVANATTI*
BRYAN BEACH*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
GiovanattiN@michigan.gov
BeachB@michigan.gov
*Attorneys for the State of Michigan*
*Admitted pro hac vice

KEITH ELLISON
Attorney General for the State of Minnesota
KATHERINE J. BIES
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Katherine.Bies@ag.state.mn.us
*Attorneys for the State of Minnesota*

AARON D. FORD
Attorney General for the State of Nevada
HEIDI PARRY STERN* (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov
*Attorneys for the State of Nevada*
*Admitted pro hac vice

JENNIFER DAVENPORT
Attorney General for the State of New Jersey
ESTEFANIA PUGLIESE-SAVILLE*
Deputy Attorneys General
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
Estefania.Pugliese-Saville@law.njoag.gov
*Attorneys for the State of New Jersey*
*Admitted pro hac vice

RAÚL TORREZ
Attorney General of New Mexico
AMY SENIER*
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504-1508
asenier@nmdoj.gov
*Attorneys for the State of New Mexico*
*Admitted pro hac vice

DAN RAYFIELD
Attorney General State of Oregon
BRIAN S. MARSHALL
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Brian.S.Marshall@doj.oregon.gov
*Attorneys for the State of Oregon*

27

PETER F. NERONHA
Attorney General for the State of Rhode
Island
LEE B. STALEY*
Chief, Health Care Unit
150 South Main Street
Providence, RI 02903
lstaley@riag.ri.gov
*Attorneys for the State of Rhode Island*
*Admitted pro hac vice

CHARITY R. CLARK
Attorney General for the State of Vermont
RYAN P. KANE*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
Ryan.kane@vermont.gov
*Attorneys for the State of Vermont*
*Admitted pro hac vice

NICHOLAS W. BROWN
Attorney General of Washington
ZANE MULLER, WSBA 63777*
WILLIAM MCGINTY, WSBA #41868*
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
*Attorneys for the State of Washington*
*Admitted pro hac vice

JOSHUA L. KAUL
Attorney General for the State of Wisconsin
KARLA Z. KECKHAVER*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

OK2025900292

28