BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Director
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
Senior Trial Counsel
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW,
Washington, DC 20005
Phone: (202) 353-5980
E-mail: christian.r.dibblee@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | 3:25-cv-05536-VC <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO MODIFY/CLARIFY PRELIMINARY INJUNCTION** <br><br> **Date:** August 13, 2026 <br> **Time:** 10:00 AM <br> **Courtroom:** Courtroom 4 <br> **Judge:** Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      Defendants' Motion Is Procedurally Proper. ...................................................... 2

II.     The Court Should Adopt Defendants' Proposal Regarding Whose Data Can Be
        Shared. ................................................................................................................ 4

        A.      Defendants should be allowed to share data about all Medicaid
                beneficiaries except citizens and LPRs. ................................................. 4

        B.      If the Court rejects Defendants' primary suggestion, it should adopt their
                alternative suggestion. ........................................................................... 6

III.    The Injunction Should Enjoin HHS Only for "Immigration Enforcement
        Purposes." ......................................................................................................... 10

IV.     The Court Should Adopt Defendants' Definition Of "Immigration Enforcement
        Purposes." ......................................................................................................... 12

V.      The Preliminary Injunction Should Not Encompass Data Besides Medicaid Data. ......... 13

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Belyea v. GreenSky, Inc.*,
No. 20-cv-1693-JSC, 2025 WL 1507093 (N.D. Cal. May 27, 2025) ........................................ 2

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................................................................. 12

*FTC v. Kutzner*,
No. 16-cv-999-BRO, 2017 WL 5230565 (C.D. Cal. Jun. 19, 2017) ........................................ 2

*Gill v. Whitford*,
585 U.S. 48 (1979) ............................................................................................................. 12, 14

*Great Am. Ins. Co. v. Weitz Co., LLC*,
No. 25-cv-2079-LJC, 2026 WL 323301 (N.D. Cal. Feb. 6, 2026) ........................................... 2

*Holley v. Lavine*,
553 F.2d 845 (2d Cir. 1977) ..................................................................................................... 9

*Matter of Quintero*,
18 I. & N. Dec. 348 (BIA 1982) ............................................................................................... 9

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949) .................................................................................................................. 2

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
810 F.3d 631 (9th Cir. 2015) .................................................................................................. 14

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945) ...................................................................................................................... 3

*Sudomir v. McMahon*,
767 F.2d 1456 (9th Cir. 1985) .................................................................................................. 9

**Statutes**

8 U.S.C. § 1101(a)(31) ................................................................................................................. 9

8 U.S.C. § 1182(a) ....................................................................................................................... 8

8 U.S.C. § 1182(a)(9) ............................................................................................................... 7, 8

8 U.S.C. § 1254a(c) ...................................................................................................................... 7

8 U.S.C. § 1305(a) ....................................................................................................................... 8

8 U.S.C. § 1427(a) ................................................................................................................ 7

8 U.S.C. § 1611(b) ................................................................................................................ 7

42 U.S.C. § 1396b(v) ................................................................................................ 6, 7, 8, 10

**<u>Regulations</u>**

8 C.F.R. § 1.3(a) ................................................................................................................ 7, 8

**INTRODUCTION**

Plaintiffs continue to try to undercut the broad statutory authority of the Department of Homeland Security (DHS) to obtain data from the Department of Health and Human Services (HHS) for longstanding legitimate purposes.  Rather than rebut Defendants' proposals for how to clarify the preliminary injunction entered in December 2025, *see* ECF No. 148 at 6 (Third PI Order or Order), Plaintiffs assert that Defendants have acted improperly by even seeking clarification. But there is nothing nefarious in wanting to ensure compliance with the Court's injunction. Defendants have proposed to clarify the injunction based on their understanding of what the Court intended and the allegations in Plaintiffs' complaint.  Defendants will comply with the Court's injunction however the Court chooses to clarify it, but Defendants are surely not acting improperly by offering their own proposals for clarification.

Prominent among Defendants' requests for clarification is the Court's usage of the term "lawfully residing."  *Id*.  Defendants' primary proposal to allow sharing except as to U.S. citizens and lawful permanent residents (LPRs) is clear, administrable, and consistent with the phrase "lawfully residing."  And to the extent the Court seeks a different approach, Defendants have offered an alternative proposal that comports with the Medicaid statute.  Plaintiffs' alternative proposal does not, and their primary proposal is simply too narrow given the "broad statutory authority" afforded Defendants in these matters.  *Id.* at 2.  As for other elements of the injunction, Plaintiffs offer no coherent justification to restrict HHS from sharing data unrelated to "immigration enforcement purposes."  The Court should clarify the injunction to restrict only transfers for that purpose, consistent with both parties' understanding of what this case is about. Finally, Plaintiffs simply do not explain how rescission of a previous policy limited to civil immigration enforcement can now preclude using Medicaid data for criminal investigations.  Nor do Plaintiffs explain how the injunction extends beyond Medicaid data when Plaintiffs have devoted almost all of their briefing thus far to that particular data source.

The Court should grant Defendants' motion in its entirety.  *See* Defs. Mot. (Mot.), ECF No. 173

1

## ARGUMENT

### I.    Defendants' Motion Is Procedurally Proper.

The Court itself invited Defendants to seek clarity regarding "which categories of people" can have their information shared with ICE.  Transcript of Proceedings on April 30, 2026 (April Tr.) at 4:20-22, ECF No. 161.  Defendants' motion seeks that clarity by suggesting that the Court more clearly specify the population of aliens that "are not lawfully residing in the United States." Third PI Order at 6.  Plaintiffs might disagree with Defendants' proposal, but that does not mean Defendants are trying to "revis[e]" the preliminary injunction, Pls.' Opp'n to Defs.' Mot. at 12 (Opp'n), ECF No. 182, or "request[ing] significant changes to the substantive terms" of that injunction, *id.* at 15.  The entire reason to seek clarity is because some of the substantive terms in the current preliminary injunction, including the phrase "not lawfully residing," are unclear, as evidenced by Plaintiffs' own request to clarify what population of aliens can have their information transferred under the injunction, *see id.* at 8–12, and the parties' previous disagreements about the scope of the injunction.  Defendants are trying to ascertain its substantive terms.  The same is true for Defendants' arguments as to other aspects of the preliminary injunction, which does not define "immigration enforcement purposes" and leaves open an interpretation that HHS sharing unrelated to the substance of this dispute is also enjoined.  Defendants' motion therefore "seek[s] to clarify the extent of the Court's ruling," which is a proper use of a motion to clarify.  *Great Am. Ins. Co. v. Weitz Co.*, *LLC*, No. 25-cv-2079-LJC, 2026 WL 323301, at *2 (N.D. Cal. Feb. 6, 2026); *see also Belyea v. GreenSky*, *Inc.*, No. 20-cv-1693-JSC, 2025 WL 1507093, at *2 (N.D. Cal. May 27, 2025) (describing a motion for clarification as "invit[ing] interpretation" of a previous order "for the guidance of the parties").[1]

---

[1] Even if the Court treats Defendants' motion as seeking modification, the motion is still proper. Modifying an injunction is warranted "when an injunction proves to be unworkable because of unforeseen obstacles[.]"  *FTC v. Kutzner*, No. 16-cv-999-BRO, 2017 WL 5230565, at *3 (C.D. Cal. Jun. 19, 2017) (citation omitted)); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (noting that an enjoined party may petition "for a modification, clarification, or construction" of an order "if the decree was too burdensome in operation").  Defendants have

Defendants' motion also is not asking "this Court [to] approve new administrative policies." Opp'n 13. The policies at issue are the same ones from last year, and Defendants are not adding "specific terms" to those policies. *Id.* They simply seek clarity on which portions of those policies are enjoined on a preliminary basis and which are not, all to avoid "unwitting contempts" or noncompliance with the preliminary injunction. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945). Plaintiffs' arguments that this request is somehow improper appear to misconstrue this Court's Order. The Court has already ruled that, "at least, as [to basic] biographical, contact, and location information," Third PI Order at 2–4, the agencies' policies *do* "explain whether and why" DHS can access that information as to at least some population of aliens, Opp'n 13. The Court has also already determined, at least as to that type of information, that Defendants properly "consider[ed] the reliance interests at stake." *Id.*; *see* Third PI Order at 4. Plaintiffs might disagree with those conclusions, and they will have a chance to rebut them on the merits. But the key question for now is what portions of Defendants' policies are preliminarily enjoined by the Court and how far that injunction extends.

Plaintiffs also suggest that Defendants are asking this Court to "make up for" any deficiencies in the announced policies. Opp'n 14 (citation omitted). Defendants ask nothing of the sort. Instead, they have explained how the Court can clarify its injunction to be consistent with Plaintiffs' challenge and workable for the agencies that must comply with it. Again, Defendants are not adding further explanation to the policies themselves. Indeed, Defendants maintain that those policies comply with existing statutory authorities and are otherwise in accordance with law. But those arguments can wait until the merits phase. At this stage, Defendants are not issuing new policies or supplementing the existing ones—they simply seek clarity on the exact contours of the Court's preliminary injunction.

---

raised multiple ways in which the preliminary injunction is unworkable, particularly its restriction on all sharing between HHS and DHS whether or not the shared data relates to immigration.

**II.     The Court Should Adopt Defendants' Proposal Regarding Whose Data Can Be Shared.**

As the Court requested, both parties have proposed primary and alternative clarifications regarding whose data can be permissibly shared under the preliminary injunction.  Defendants' primary proposal is to allow sharing of information about all Medicaid beneficiaries except LPRs and U.S. citizens.  *See* Mot. 5–6.  As discussed below, Plaintiffs fail to show why that clarification is improper, and they have also failed to support their own primary proposal, which is to prohibit sharing of information about all beneficiaries except those subject to an unstayed final order of removal, *see* Opp'n 8.  If the Court disagrees with Defendants' primary suggestion, it should instead clarify the injunction to allow sharing as to all Medicaid beneficiaries except U.S. citizens, LPRs, and aliens permanently residing under color of law, as Defendants suggested in the alternative.  *See* Mot. 7–9.  This would entail rejecting Plaintiffs' alternative proposal, which would prohibit sharing for all individuals except those unlawfully present.  *See* Opp'n 9–12.

**A. Defendants should be allowed to share data about all Medicaid beneficiaries except U.S. citizens and LPRs.**

Clarification based on Defendants' primary proposal is consistent with the Court's stated concerns and applicable law, including the Privacy Act.  *See* Mot. 5–6.  Plaintiffs respond in only one paragraph that this clarification "would be a substantial change from the plain text" of the injunction, Opp'n 15, but they do not cite the text of the Court's injunction or the Court's reasoning, both of which support Defendants' proposal.  The Court allowed Defendants to share and use information about some aliens after the Court concluded that multiple statutes confer "broad statutory authority" for DHS to obtain data from other agencies "to pursue legitimate law enforcement objectives, like immigration enforcement."  Third PI Order at 2 (citation omitted). Although that authority might conceivably allow obtaining and using all data about all individuals, the Court enjoined the agencies' policies in part because they did not explain "whether DHS may request any data from HHS about *citizens or lawful permanent residents*[.]"  *Id.* at 5 (emphasis added); *see also* Transcript of Proceedings on December 9, 2025 (Dec. Tr.) at 13:4-6, ECF No. 145 (The Court: "I mean, it doesn't necessarily say that ICE can only receive information about people

4

who are not citizens and not permanent residents; right?").  The Court did not mention aliens by their status, presence, or classification under immigration laws—the only deficiency was how the policies related to U.S. citizens and LPRs.  Indeed, the Court's order distinguished between DHS's authority to obtain and use "*certain* data about unlawfully present aliens" from its authority to obtain and use "*any* data about citizens or [LPRs]."  Third PI Order at 6 (emphasis added).  And the "certain" data about aliens that DHS can obtain and use is only their "basic biographical, contact, or location information."  *Id.*

These textual cues indicate that the Court used "lawfully residing" to refer to U.S. citizens and LPRs.  *Id.* at 6.  That conclusion also comports with the rest of the Order.  It would be incongruous for the Court to hold that DHS has "broad" authority to obtain information to pursue immigration enforcement, *id.* at 2; acknowledge that basic biographical information can be sufficient for immigration enforcement purposes—as the Court did, *see id.* at 5; and then limit the provision of that information only to aliens with particular statuses, all without mentioning status once in the Order.  Plaintiffs are incorrect that the "plain terms" of the Order do not support Defendants' position. Opp'n 15.

Plaintiffs also say that Defendants' proposal is "inconsistent" with conversations between the parties about implementation of the injunction.  *Id.*  Plaintiffs offer no rule or authority that somehow binds an enjoined party to its initial understanding of an injunction's scope and precludes that party from proffering any other interpretation.  Regardless, Defendants' counsel clearly relayed his belief that the phrase "not lawfully residing" raised an "interpretive question[]" and that DHS was "trying to wrap its arms around" how the various populations of aliens represented in the data obtained from HHS in January "map onto the language the Court used in the injunction." ECF No. 155-2 at 11.  Defendants' counsel also noted in earlier correspondence the complexity surrounding immigration benefits and whether Defendants could transfer data about aliens with those benefits, consistent with the Court's injunction.  *See id.* at 15.  At no point did counsel commit Defendants to a particular interpretation or understanding of "not lawfully residing" as used in the Court's preliminary injunction.

In short, the Court should clarify the preliminary injunction along the lines suggested in Defendants' primary proposal. That would require rejecting Plaintiffs' primary proposal. Again, in one paragraph, Plaintiffs propose allowing sharing only as to Medicaid beneficiaries "subject to a final order of removal that has not been stayed." Opp'n 8. Such a limited clarification falls well short of the full population of individuals not lawfully residing in the United States. Aliens with a final order of removal are not lawfully residing here, but DHS's "broad statutory authority" permits it to obtain and use data about a larger population of individuals. Third PI Order at 2. Defendants submit that the Court did not intend its preliminary injunction to be so limited given that broad authority, and the text of the Court's Order makes that clear. *See supra* at 4–5. Plaintiffs' suggested clarification by contrast has no basis in the text of the Court's Order. Moreover, Defendants' primary suggestion to allow sharing about all beneficiaries except U.S. citizens and LPRs is just as "clear and administrable," if not more, than Plaintiffs' primary suggestion regarding individuals subject to a final order of removal. Opp'n 8. And, again, although Defendants have suggested in previous counsel-to-counsel correspondence that the current preliminary injunction allows them to share and use data about those individuals subject to a final order of removal, *see* ECF No. 155-2 at 7, that was the baseline, *i.e.*, the minimum population about whom they may share data. Defendants have never suggested that population as the ceiling of the Court's preliminary injunction.

### B. If the Court rejects Defendants' primary suggestion, it should adopt their alternative suggestion.

As an alternative to their primary proposal, Defendants proposed clarifying the preliminary injunction to allow sharing about all Medicaid beneficiaries except U.S. citizens, LPRs, and those aliens permanently residing here with a lawful status. *See* Mot. 7–9. As Defendants explained, this alternative proposal comports with language in the Social Security Act that prohibits payments to States for Medicaid assistance provided to "an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." 42 U.S.C. § 1396b(v)(1).

6

Plaintiffs contend that the better clarification is one based on an alien's presence, which they say comports with "the plainest reading of the Court's entire Order[.]" Opp'n 9. Defendants disagree. The Court's injunctive language allows sharing of information about aliens "not lawfully . . . residing in the United States," language that tracks the phrasing in 42 U.S.C. § 1396b(v)(1), a provision in the Social Security Act governing the availability of federal matching dollars for Medicaid. Accordingly, the more logical proposal is one that closely adheres to the statutory language in 42 U.S.C. § 1396b(v)(1), as Defendants' proposal does.

*First*, aliens must reside "lawfully" or "under color of law," which means they have a recognized right through government action to *reside* here. 42 U.S.C. § 1396b(v)(1). Authorization to be present in the United States and to reside in the United States are two different things. *See, e.g.*, 8 U.S.C. § 1427(a) (requiring for naturalization that an applicant "reside[] continuously" in the United States for five years and be "physically present" in the United States for half that time); *id.* § 1254a(c)(1)(A)(i)–(ii) (distinguishing between continuous residence and continuous presence for purposes of temporary protected status). 42 U.S.C. § 1396b(v)(1) and the Court's injunction refer to residence, not presence. For that reason, Plaintiffs' emphasis on presence does not fit with the language of the Court's actual injunction.

Plaintiffs' authorities likewise do not support their position. Plaintiffs tout 8 C.F.R. § 1.3(a), but that regulation defines lawfully present aliens "*only*" for "the purposes of 8 U.S.C. § 1611(b)(2)," 8 C.F.R. § 1.3(a) (emphasis added), a statute that allows the Attorney General to define lawfully present aliens for "any benefit payable under title II of the Social Security Act," *e.g.*, retirement benefits and disability benefits, not Medicaid, 8 U.S.C. § 1611(b)(2).

Plaintiffs also cite 8 U.S.C. § 1182(a)(9)(B), which defines unlawful presence for a limited purpose. *See* Opp'n at 9–10. It construes whether aliens are unlawfully present only "for purposes of this paragraph," meaning subsection (a)(9). 8 U.S.C. § 1182(a)(9)(B)(ii). That subsection defines unlawful presence as an alien's presence "in the United States after the expiration of the period of stay authorized by the Attorney General" or "without being admitted or paroled[,]" *see id.*, which is used to determine whether an alien is inadmissible to the United States after departure

7

or removal, *see id.* § 1182(a)(9)(B)(i), or upon illegal entry or attempted reentry to the United States, *see id.* § 1182(a)(9)(C)(i)(I).  In other words, § 1182(a)(9) uses the concept of "presence" in a specific statutory scheme about inadmissibility—which aliens are ineligible to "receive visas" and "be admitted to the United States," *id.* § 1182(a)—not lawful residence.  Put simply, Plaintiffs' authorities for their presence-based proposal relate to federal benefit programs other than Medicaid and bear little relationship to the statutory language mirrored in the Court's injunction.

Plaintiffs' logic also fails to support their proposal.  They fault Defendants for suggesting an approach based on whether someone is "a permanent resident eligible for certain public benefits" even though Plaintiffs themselves have proposed an alternative clarification that rests on 8 C.F.R. § 1.3(a), a regulation likewise defining which aliens are eligible for certain public benefits.  Opp'n 16; *see supra* at 7.  Plaintiffs also emphasize that aliens deemed lawfully present are "known to the federal government, who can locate them without resorting to the use of sensitive healthcare records[,]" such that Defendants apparently should not be permitted to share their information.  Opp'n 11.  But Plaintiffs cannot know who ICE can and cannot locate, and ICE may well "hav[e] trouble locating" an alien who is lawfully present according to Plaintiffs.  Dec. Tr. at 20:24-25.  Those aliens might, for instance, not report a change of address, as they are required to do.  *See* 8 U.S.C. § 1305(a).  Moreover, ICE is not "resorting to the use of sensitive healthcare records" nor seeking permission to do so.  Opp'n 11; *see also id.* at 17 ("ICE has failed to demonstrate that it needs to collect the sensitive Medicaid data . . . .").  ICE's motion does not seek to expand the type of individualized data that it may obtain beyond the "basic" information that the Court's preliminary injunction allows to be shared.  Third PI Order at 6.  As for Plaintiffs' concerns that a "narrower definition" would give Defendants' too much discretion, Opp'n 11, that is reason to adopt Defendants' primary proposal prohibiting sharing about only U.S. citizens and LPRs.

The *second* requirement gleaned from 42 U.S.C. § 1396b(v)(1) is that an alien must either be "admitted for *permanent* residence" or "*permanently reside*" in the United States.  42 U.S.C. § 1396b(v)(1) (emphasis added).  Defendants' alternative proposal accordingly prohibits the sharing of information for aliens who have been authorized to reside in the United States on a

8

permanent basis, and Defendants provided numerous precedents explaining why certain immigration statuses do not authorize permanent residence.  *See* Mot. 8–9.  Plaintiffs do not rebut any of those explanations with similar precedents and instead point to the definition of "permanently" in 8 U.S.C. § 1101(a)(31).  *See* Opp'n 17.  That definition does not help Plaintiffs because it expressly "distinguishe[s]" permanent statuses from "temporary" ones.  8 U.S.C. § 1101(a)(31).  What classifies as a permanent status versus a temporary one thus depends on the details of each status and how courts have interpreted each.  *See* Mot. 8–9.

Plaintiffs' meager, contrary authorities do not help them.  The Ninth Circuit in *Sudomir v. McMahon*, 767 F.2d 1456, 1462 (9th Cir. 1985), noted that the statutory term "permanently" "does not embrace transitory, inchoate, or temporary relationships" and then held that asylum applicants do not reside permanently.  Citing this case is particularly strange since Plaintiffs later suggest applicants for immigration benefits are residing permanently, contrary to *Sudomir*.  *See* Opp'n 19–20.  Similarly, the Second Circuit in *Holley v. Lavine*, 553 F.2d 845, 850–51 (2d Cir. 1977), cited the definition of "permanently" but relied on other statutory provisions as "[f]ar more significant . . . aids" to determine whether a particular alien should be considered permanently residing here.  Not only did that decision not rely on the definition Plaintiffs now cite, it also determined that the alien was residing permanently based on a letter from the government disclaiming "at this time" any plan to enforce the departure from the United States.  *Id.* at 847.  There are no such unique facts here, and Plaintiffs otherwise do not refute later authority that deferred action "accords no rights to permanent residence."  *Matter of Quintero*, 18 I. & N. Dec. 348, 349 (BIA 1982) (citation omitted).

After applying these two statutory requirements, Defendants' proposal prohibits sharing as to U.S. citizens, LPRs, aliens granted refugee status (until that status is terminated or they fail to adjust it), aliens granted asylum (again, until that status is terminated), and certain nonimmigrant

9

aliens whose status does not require them to maintain a foreign residence or a temporary U.S. residence. *See* Mot. 8. Sharing would be permitted as to all other categories of aliens.[2]

*    *    *

Defendants understand that the Court's preliminary injunction limits their authority to transfer and obtain data to data about a certain population. To ensure any limitation is clear and consistent with this case, Defendants' clarifications as to the relevant population accord with the Court's injunction and 42 U.S.C. § 1396b(v)(1). Plaintiffs' proposals do neither. Their primary proposal would artificially narrow the Court's ruling despite language indicating that the Court meant to allow sharing about more than just individuals subject to a final order of removal. And Plaintiffs' alternative proposal muddies the already opaque waters by relying on "presence," a concept nowhere found in 42 U.S.C. § 1396b(v)(1) or the Court's operative injunction. Thus, as to the "categories of people" whose data may be shared, the Court should clarify its injunction using either of Defendants' proposals, but not Plaintiffs'. April Tr. at 4:20-21.

### III.    The Injunction Should Enjoin HHS Only for "Immigration Enforcement Purposes."

As Defendants described in their motion, the current preliminary injunction restricts HHS from sharing data with DHS regardless of whether sharing is related to immigration enforcement. *See* Mot. 13–14. In that sense, the current preliminary injunction differs from the first one, which enjoined HHS "from sharing Medicaid data obtained from the plaintiff states with DHS *for immigration enforcement purposes.*" ECF No. 98 at 5 (emphasis added). As Defendants have explained, HHS shares data with DHS in many ways that are separate from immigration enforcement, of which Defendants have provided multiple examples. *See* Mot. 14–15. But there are undoubtedly other areas of nonimmigration law that require sharing between the two agencies on a "routine" basis. Opp'n 22. For example, HHS would need to share data with DHS in order

---

[2] The Court would not need to "further clarify" which applicants are included under Defendants' alternative proposal. Opp'n 18. As Defendants' motion makes clear, sharing would not be permitted about any "alien granted asylum,"—unless and until the status is terminated—even if that alien applies for another "immigration benefit." *Id.*; *see* Mot. 8. By contrast, sharing would be permitted for an alien who has not been granted that status but is applying for it.

10

to ensure, for example, that States are offering federal public benefits to the right population of aliens or appropriately claiming federal matching payments for medical assistance provided to aliens. That sharing furthers HHS's duty to steward federal public benefits and to verify the provision of those benefits to the populations identified by Congress, not DHS's efforts to enforce immigration laws.

This case, however, is about HHS's sharing of information only for immigration enforcement purposes. Indeed, HHS's Federal Register Notice announced a policy to provide information "to advance administration priorities related to immigration" and explained how certain information "is useful for immigration enforcement purposes." ECF No. 131-1 at 5–6. Not only have Defendants indicated multiple instances of sharing unrelated to those immigration priorities, but Plaintiffs themselves have acknowledged that such instances exist. They recognize that some sharing occurs "for purposes that the parties agree are not 'immigration enforcement,'" essentially admitting that they are not challenging *all* sharing between HHS and DHS. Joint Status Report at 5, ECF No. 168 ; *see also* Opp'n 22–23 ("Plaintiffs are willing to similarly agree . .. ."). Defendants' proposal to limit HHS's sharing only to sharing for immigration enforcement purposes thus makes crystal clear what both sides acknowledge—the preliminary injunction applies only to sharing for immigration enforcement purposes.

In response, Plaintiffs say that their concerns about supposed "harmful effects" on populations like "transgender individuals" prohibit an immigration-specific prohibition on HHS. Opp'n 23. As an initial matter, however, Plaintiffs never raised these concerns in their preliminary-injunction filings. Their asserted injury for purposes of standing to seek the original preliminary injunction was that "their confidential Medicaid data [would] be unlawfully used for immigration enforcement[.]" *See* ECF No. 42-2 at 12. And in seeking what became the current preliminary injunction, Plaintiffs made multiple arguments premised on their view that sharing and using Medicaid data for "immigration enforcement" was substantively and procedurally improper. ECF No. 134 at 14, 17, 21. To the extent Plaintiffs have raised populations like transgender individuals or those seeking mental health treatment in "other filings," Opp'n 23, those filings were not the

ones leading to the preliminary injunction currently in place. Indeed, Plaintiffs admit in the same breath that "immigration enforcement has been the focus of the preliminary motion practice in this case thus far." *Id.* That settles the matter—a preliminary injunction, like any remedy, must be "tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (1979) (citation omitted), and Plaintiffs have shown only an injury from HHS's sharing for immigration enforcement purposes. The Court should therefore enjoin HHS from sharing data with DHS only for immigration enforcement purposes. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.").

Lastly on this issue, Plaintiffs suggest that, perhaps in lieu of adding a "for immigration enforcement purposes" limitation, Defendants can "request relief for specific, allowable purposes" going forward. Opp'n 23. That solution is simply unworkable and not administrable. Information sharing between two large and complex federal agencies occurs across a variety of contexts and at a variety of times such that seriatim rulings from this Court or from Plaintiffs about individual data transfers will unnecessarily slow HHS's execution of its statutory duties. Particularly when Plaintiffs' challenge is so clearly about sharing for immigration enforcement purposes, HHS should not be forced to seek approval from Plaintiffs or this Court each and every time information sharing occurs that is not for those purposes.[3]

## IV.    The Court Should Adopt Defendants' Definition Of "Immigration Enforcement Purposes."

Plaintiffs barely address any of Defendants' arguments for why the Court should clarify the scope of "immigration enforcement purposes" to exclude investigations of criminal laws. Plaintiffs do not rebut that their Complaint challenges the use of Medicaid data for deportation and never mentions the use of that data for investigations into alleged criminal violations. *See* Mot. 10–11. Nor do Plaintiffs rebut that the 2013 policy—which Plaintiffs say ICE illegally rescinded—

---

[3] To be clear, and for all the reasons given above, the Court should limit the injunction to sharing for immigration enforcement purposes even if it rejects Defendants' proposed definition of "immigration enforcement purposes."

12

never limited ICE's ability to request Medicaid data for purposes of criminal investigations. *See id.* at 12. The Court could not have enjoined rescission of a policy that never existed. Plaintiffs also do not attempt to undermine the broad authority that ICE has to investigate crimes unrelated to immigration. *See id.* at 11–12 & nn. 3–7.

Instead, Plaintiffs assert that accepting Defendants' proposed definition would "give Defendants a loophole to justify resumption of bulk transfers of data[.]" Opp'n 20. Because many immigration violations lead to criminal penalties, Plaintiffs say, allowing ICE to obtain Medicaid data for criminal investigations would permit ICE to obtain Medicaid data "*en masse*" that is otherwise off limits under the preliminary injunction. *See id.* at 20–21. This argument unfairly assumes that ICE will not abide by the Court's preliminary injunction. Any Medicaid data (bulk or otherwise) about an alien that is obtained pursuant to a criminal investigation will be used or not used in accordance with this Court's preliminary injunction. Defendants do not understand that representation, however, to foreclose ICE from using other, independently collected data to support civil immigration enforcement actions.

As far as Plaintiffs' concerns about certain immigration statutes having associated criminal penalties, ICE has always been able to use Medicaid data to investigate criminal violations. Plaintiffs cannot pick and choose based on their own value judgments the criminal statutes to which the preliminary injunction applies. Congress chose to criminalize certain acts, including non-violent and immigration-related conduct, that have civil or administrative analogues. The Court also should not credit Plaintiffs' concerns about transfers "in bulk." *Id.* at 22. The current preliminary injunction does not limit Defendants to one-by-one transfers. Thus, the door is already open for bulk transfers of data. Defendants seek clarity on whose data can be shared and the purposes for which it can be shared, but the current preliminary injunction permits them to make bulk transfers once they obtain clarity on those issues.

## V.    The Preliminary Injunction Should Not Encompass Data Besides Medicaid Data.

Defendants have explained that because Plaintiffs' Complaint challenges only the transfer and use of Medicaid data, the preliminary injunction should not restrict sharing and usage as to

13

other types of data that HHS receives from Plaintiffs.  *See* Mot. 16–17.  In their opposition, Plaintiffs do not suggest otherwise, and they in fact acknowledge that the transfer of Medicaid data is "the focus of Plaintiffs' complaint and preliminary motion practice."  Opp'n 23.  That admission puts the issue to rest.  Like any remedy, injunctive relief must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established."  *Gill*, 585 U.S. at 68 (citation omitted). The Court has held that Plaintiffs "have Article III standing" based on the impact of Defendants' policies on "the operation of *Medicaid*," not other HHS programs.  *See* Order at 3–4 (emphasis added); *see also* Third PI Order at 6 (finding that Plaintiffs have standing).[4]  Indeed, the Court could not have recognized an injury as to any other HHS program because Plaintiffs' Complaint mentions only Medicaid, *see* Mot. 16, and a court "does not have the authority to issue an injunction" based on "claims not pled in the complaint[.]"  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

Plaintiffs' only other response is that the question has already been decided since the Court "repeatedly questioned" Defendants about the scope of data sharing and "accordingly" enjoined transfers of information unless that information "is from the Medicaid program."  Opp'n 24 (citation omitted).  Defendants acknowledged these questions from the Court in their motion, *see* Mot. 17, but also noted that Plaintiffs still seek (and have received) injunctive relief against transfers of non-Medicaid data that have not occurred.  And although Plaintiffs correctly excerpt remarks from Defendants' counsel during that hearing, counsel clearly said that as to other programs ICE "might" need to consider things like tradeoffs and reliance interests based on proceedings in this case. Dec. Tr. at 10:10. Counsel did not lock ICE into any required process, and Defendants' current motion seeks only clarity on the extent of the Court's injunction.

Plaintiffs also overstate the connection between the Court's questions and the injunction's exception for sharing Medicaid data.  The Court's Order does not acknowledge that the HHS notice applies only to Medicaid data, nor does the Order explain whether the ICE memo's brief mention

---

[4] For avoidance of doubt, Defendants do not concede now that Plaintiffs have standing.  *See* Defs.' Opp'n to Pls.' First PI, ECF No. 83 at 10–13; Defs.' Opp'n to Pls.' Third PI, ECF No. 138 at 7–8.

of other programs is what led the Court to enjoin sharing from all programs except Medicaid. Defendants therefore are not acting improperly by seeking clarification of the Court's Order and resulting injunction on this point.

## CONCLUSION

The Court should grant Defendants' motion and clarify the preliminary injunction in the ways listed above and in Defendants' motion.

Dated: July 27, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 353-5980
Christian.r.dibblee@usdoj.gov

*Counsel for Defendants*

15