UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br>Plaintiffs,<br>v.<br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br>Defendants. | Case No. 25-cv-05536-VC<br>**ORDER ON MOTION TO CLARIFY THE PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 173 |

The parties are ordered to meet and confer and to submit a proposed stipulation consistent with the guidance set forth below within 28 days of this Order. To the extent that the parties cannot reach an agreement, they may notice another hearing and provide further briefing on any contested issues.

1. *Meaning of "aliens who are not lawfully residing in the United States."* For the reasons explained at the hearing, of the proposals presented by the parties, the States' alternative proposal for defining lawful presence comes closest to drawing a reasonable line between those categories of immigrants whose data may be shared and those whose data may not be shared. But because ambiguities and nuances with that proposed definition still require further thought, the parties should identify more discrete categories of immigrants to present a more granular proposal for approval.

As they meet and confer about different categories of immigrants, the parties should consider what kinds of plausible immigration enforcement purposes ICE might have to obtain data on each category. The parties should also consider the workability of any proposal for the

purposes of facilitating and monitoring the defendants' compliance. As a starting point, the policies at issue clearly do not justify ICE's receipt or use of data from CMS on citizens, lawful permanent residents, and those with valid and unexpired visas. The preliminary injunction order must therefore be construed as precluding the receipt or use of that data for immigration enforcement purposes. The order also likely should be construed as precluding the receipt or use of data for immigration enforcement purposes on people who currently have temporary protected status. On the other hand, the order clearly permits the receipt or use of data on people who came to the country illegally and were released from detention pending removal, unless some other event (such as a grant of asylum) conferred upon them permission to be present in the country. The Court is unsure how DACA recipients should be treated.[1]

2. *Meaning of "immigration enforcement purposes*." The preliminary injunction order must be construed as allowing data sharing for legitimate criminal law enforcement objectives, such as facilitating investigations into suspects based on individualized suspicion. But the order does not allow data sharing en masse. Such a loophole would effectively undermine any meaningful protections offered by the preliminary injunction order.

3. *Use of data for purposes other than immigration enforcement*. The government may generally share data for purposes unrelated to immigration enforcement. The States' request that the government receive ad hoc approval before sharing data for such purposes is unworkable and

[1] As discussed more fully at the hearing, drawing the line between people who are in the country "lawfully" and people who are in the country "unlawfully" is not entirely congruent with the new ICE and CMS policies, in part because the new policies, read broadly, would seem to allow ICE to retrieve data from CMS against anyone for any immigration enforcement purpose—even against people who are present in the country with permission. Indeed, a broad reading of the new policies would permit ICE to receive data from CMS on U.S. citizens since immigration enforcement actions could, in theory, be taken against naturalized citizens. But as the preliminary injunction order explained, that is arbitrary and capricious because it is overbroad and ill-explained. The parts of the new policies that are not arbitrary and capricious focus on the need to take immigration enforcement action against aliens who are in the country without permission. Giving ICE access to CMS data on citizens, lawful permanent residents, and others present in the country with permission presents a slew of privacy concerns not adequately explained in the new policies and not fully addressed by the parties. The task now is to ensure that the injunction is drawn narrowly enough to enjoin only the aspects of the policies at issue that are arbitrary and capricious.

beyond the scope of this case.

4. *Use of data other than Medicaid data*. The preliminary injunction order is not limited to Medicaid data. Although Medicaid data has been the focus of the litigation thus far, the States' amended complaint and motion for a preliminary injunction challenged ICE's reversal of its 2013 policy, which protected any data provided for coverage under a "qualified health plan offered on a Health Insurance Marketplace or through an insurance affordability program (*i.e.*, premium tax credits, cost sharing reductions, Medicaid, Children's Health Insurance Program, or Basic Health Program)." *See* Dkt. No. 134-2.

* * *

The prior restrictions remain in place pending the final approval of any language clarifying the scope of the preliminary injunction.

**IT IS SO ORDERED.**

Dated: September 8, 2026

VINCE CHHABRIA
United States District Judge