BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Director
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW,
Washington, DC 20005
Phone: (202) 353-5980
E-mail: christian.r.dibblee@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STATE OF CALIFORNIA, *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants.

3:25-cv-05536-VC

**DEFENDANTS' NOTICE OF MOTION, RENEWED MOTION TO CLARIFY PRELIMINARY INJUNCTION AND MOTION FOR A CASE SCHEDULE**

**Date:** December 10, 2026
**Time:** 10:00 AM
**Courtroom:** Courtroom 4
**Judge:** Hon. Vince Chhabria

## TABLE OF CONTENTS

BACKGROUND ........................................ 3

LEGAL STANDARD ........................................ 7

ARGUMENT ........................................ 7

I. The Court Should Adopt Defendants' Proposal As To Categories Of Aliens ........................................ 8

A. Categories of Aliens Whose Data Cannot Be Shared ........................................ 9

B. Categories of Aliens Whose Data Can Be Shared ........................................ 10

C. Defendants Have Proposed Categories to Minimize Any Overlap. ........................................ 16

II. The Court Should Clarify the PI to Prohibit Sharing of Information Only From Specific Programs Mentioned in the 2013 ICE Memorandum. ........................................ 18

III. The Court Should Clarify Its Preliminary Injunction Along Other Lines Consistent With Its Previous Order. ........................................ 21

IV. The Court Should Order the Parties To Set A Summary Judgment Schedule. ........................................ 21

CONCLUSION ........................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayanian v. Garland*,
64 F.4th 1074 (9th Cir. 2023) ........ 14

*Bokhari v. Holder*,
622 F.3d 357 (5th Cir. 2010) ........ 15

*Brown v. Plata*,
563 U.S. 493 (2011) ........ 7

*INS v. Abudu*,
485 U.S. 94 (1988) ........ 15

*INS v. Cardoza-Fonseca*,
480 U.S. 421 (1987) ........ 11

*INS v. Doherty*,
502 U.S. 314 (1992) ........ 15

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ........ 11

*Matter of D-K-*,
25 I. & N. Dec. 761 (BIA 2012) ........ 16

*Matter of Garcia-Alzugaray*,
19 I. & N. Dec. 407 (BIA 1986) ........ 16

*N.A. Sales Co. v. Chapman Indus. Corp.*,
736 F.2d 854 (2d Cir. 1984) ........ 7

*Nasrallah v. Barr*,
590 U.S. 573 (2020) ........ 11

*Nielsen v. Preap*,
586 U.S. 392 (2019) ........ 12

*Ordonez v. Field Off. Dir., ICE Enf't & Removal Operations, Louisville, Ky. Field Off.*,
No. 3:26-CV-067-CHB, 2026 WL 927173 (E.D. Ky. Apr. 6, 2026) ........ 14

*Smagin v. Yegiazaryan*,
No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347 (C.D. Cal. Apr. 1, 2020) ........ 7

*Toelle v. Jusino*,
No. 23-cv-00194-JST, 2023 WL 6391453 (N.D. Cal. Sep. 28, 2023) ........ 20

*U.H.A. v. Bondi*,
817 F. Supp. 3d 752 (D. Minn. 2026) ........ 16

*United States v. Al Sabahi*,
719 F.3d 305 (4th Cir. 2013) ........ 14

*United States v. Bazargan*,
992 F.2d 844 (8th Cir. 1993) ........ 14

*United States v. Bravo-Muzquiz*,
412 F.3d 1052 (9th Cir. 2005) ........ 13

*United States v. Latu*,
479 F.3d 1153 (9th Cir. 2007) ........ 14

*United States v. Lopez*,
929 F.3d 783 (6th Cir. 2019) ........ 18

*United States v. Witkovich*,
353 U.S. 194 (1957) ........ 11

**Statutes**

8 U.S.C. § 1101 ........ 13

8 U.S.C. § 1157 ........ 15

8 U.S.C. § 1158 ........ 12

8 U.S.C. § 1159 ........ v, 8, 9, 16

8 U.S.C. § 1182 ........ 5, 12, 17, 18

8 U.S.C. § 1184 ........ 13

8 U.S.C. § 1225 ........ 17

8 U.S.C. § 1226 ........ 13

8 U.S.C. § 1227 ........ *passim*

8 U.S.C. § 1229 ........ 11

8 U.S.C. § 1229a ........ 17

8 U.S.C. § 1229b ........ 12

8 U.S.C. § 1231 .......... 10, 11, 17

8 U.S.C. § 1255 .......... 12

8 U.S.C. § 1611 .......... 18

8 U.S.C. §§ 1302-1305 .......... 11

42 U.S.C. § 1396b .......... 5

**Regulations**

8 C.F.R. § 1.3 .......... 5, 17, 18

8 C.F.R. § 207.9 .......... 17

8 C.F.R. § 208.16 .......... 10

8 C.F.R. § 208.18 .......... 10

8 C.F.R. § 208.21 .......... 15

8 C.F.R. § 208.22 .......... 17

8 C.F.R. § 209.1 .......... 16

8 C.F.R. § 241.1 .......... 10

8 C.F.R. § 241.5 .......... 11

8 C.F.R. § 1001.1 .......... 14, 16

8 C.F.R. § 1241.1 .......... 10

22 C.F.R. § 40.1 .......... 15

22 C.F.R. §§ 41.0-41.3 .......... 9

**Other Authorities**

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), *adopted* Dec. 10, 1984, S. Treaty Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85 .......... 10

HHS, *HHS Organizational Charts*, https://www.hhs.gov/about/organization/org-chart/index.html .......... 20

Off. of the Dir., U.S. Immigr. & Customs Enf't, *Clarification of Existing Practices Related to Certain Health Care Information* (Oct. 25, 2013), https://perma.cc/C2KY-B66Y ........................................................................................ 19

## NOTICE OF MOTION, RENEWED MOTION TO CLARIFY PRELIMINARY INJUNCTION, AND MOTION FOR CASE SCHEDULE

**PLEASE TAKE NOTICE** that on December 10, 2026, at 10:00 a.m., Defendants United States Department of Health and Human Services (HHS) and United States Department of Homeland Security (DHS) (collectively, Defendants) will and hereby do move this Court to clarify and modify the preliminary injunction entered against them on December 29, 2025.

Defendants respectfully move the Court to clarify that its preliminary injunction permits sharing of information about (1) aliens subject to a final order of removal, including when removal has been withheld or deferred; (2) unlawfully present aliens who were released from detention pending removal unless they qualify in the interim under a Sharing Prohibited Category; (3) aliens who entered the United States pursuant to a valid, lawful visa and are deportable for any ground listed in 8 U.S.C. § 1227; (4) applicants (and derivative applicants) for an immigration benefit or protection who do not fall into a Sharing Prohibited Category; and (5) refugees who have been present for more than a year but have not presented themselves for adjustment of status. Defendants further move that the Court clarify that the preliminary injunction prohibits sharing of information about (1) U.S. Citizens; (2) lawful permanent residents (LPRs); (3) holders of valid, unexpired nonimmigrant status; (4) asylees; and (5) refugees, except those who have been present for more than one year and have not presented themselves for adjustment as required by 8 U.S.C. § 1159(a)(1) (collectively, "Sharing Prohibited Categories").

Defendants further move that the Court clarify that the preliminary injunction prohibits sharing of Centers for Medicare & Medicaid Services (CMS) data from only the programs that were named in the now-rescinded 2013 ICE policy.

Lastly, Defendants move the Court to order, as part of its clarification of the preliminary injunction, that the parties propose a schedule for further proceedings in this case.

This motion is based on the Amended Complaint, ECF No. 108, the accompanying memorandum of points and authorities, the proceedings before the Court in this case, and all matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

After a failed meet-and-confer process with Plaintiff States, Defendants return to this Court seeking clarity about the scope of its preliminary injunction against the sharing of data between the two agencies.[1] Defendants continue to maintain that no injunction is necessary or appropriate, and that the Court should at minimum grant Defendants' original Motion to Clarify, as filed. For purposes of the Court's request for additional briefing, however, Defendants have identified, consistent with this Court's guidance, five categories of individuals about whom they should be permitted to share data and five categories about whom they should not. At a high level, Defendants propose that they be permitted to share data about (1) aliens with a final order of removal; (2) unlawfully present aliens who were released from detention pending removal; (3) aliens who entered the United States pursuant to a valid, lawful visa and are deportable for any ground listed in 8 U.S.C. § 1227; (4) applicants (and derivative applicants) for an immigration benefit or protections; and (5) refugees who have been present for a year but have not presented themselves for adjustment of status. Defendants do not propose to share data about aliens in these categories that subsequently achieve LPR, asylee, refugee, or valid nonimmigrant status—*i.e.*, the categories of aliens about whom Defendants propose not to share data.

As explained in greater depth in this motion, the categories proposed by Defendants reflect this Court's guidance about the scope of its preliminary injunction, the Government's plausible immigration enforcement needs, and the workability of that proposal for purposes of compliance. For that reason, Defendants have also endeavored to craft a proposal that avoids overlap between

[1] As the Court has noted, this concerns the sharing of "basic biographical, location, and contact information," ECF No. 148 at 1, not "the sharing of information beyond these categories," *id.* In other words, Defendants do not seek to clarify the categories of data addressed by the Court in its preliminary injunction—only "categories of immigrants whose data may be shared and those whose data may not be shared" and the HHS data subject to the injunction. ECF No. 196 at 1.

the two groups of categories. To the extent Plaintiffs suggest changes to those groups, Defendants reserve the right to modify their proposal on reply.

In addition to the categories-of-aliens discussion, Defendants seek to clarify the data subject to the Court's injunction and, specifically, to limit it to only those programs mentioned by name in U.S. Immigration and Customs Enforcement's (ICE) policy from 2013: Medicaid, Children's Health Insurance Program, Basic Health Program, and coverage through a plan offered on a Health Insurance Marketplace. The Court has rejected Defendants' argument that Plaintiffs' Amended Complaint only asserts harms associated with the sharing of Medicaid data. In the Court's view, Plaintiffs' Amended Complaint and preliminary-injunction motion challenged ICE's rescission of its 2013 memorandum, which addressed data relating to multiple CMS-related programs, not Medicaid alone. *See* ECF No. 196 at 3. Defendants disagree that the Amended Complaint reaches that far, but even under the Court's reading the injunction should cover only data from the programs identified in the 2013 ICE memorandum. Plaintiffs' challenge is, at most, about that rescission, so they are not entitled to an injunction that extends to other HHS agencies that the 2013 ICE policy never covered, and certainly not to programs untouched by the CMS policies or statements Plaintiffs identified in their Amended Complaint. The Court should not allow Plaintiffs to restrict every HHS agency or program.

The Court should also clarify the preliminary injunction regarding sharing for non-immigration enforcement purposes in a way that is consistent with the Court's most recent order on Defendants' first motion to clarify, ECF No. 196. Because the Court expressly left its previous restrictions in place until it approves new injunctive language, now is the time to make those clarifications explicit.

Finally, Defendants request that as part of any order the Court direct the parties to propose a summary-judgment schedule for this case. Defendants have operated under a preliminary injunction for over a year, and there is nothing further to address once they obtain clarification from the Court about that injunction. It is time to brief dispositive motions.

**BACKGROUND**

Plaintiff States initiated this lawsuit on July 1, 2025, in response to reports that CMS had transferred Medicaid data obtained from certain Plaintiff States to ICE. *See generally* Compl., ECF No. 1. Plaintiffs subsequently moved for a preliminary injunction to block further transfers of Medicaid data obtained from Plaintiff States. *See* ECF No. 42-2. This Court concluded that such data sharing appeared lawful, but nonetheless, the Court determined that HHS and DHS had not "engage[d] in a reasoned decisionmaking process" before initiating transfers of Medicaid data. Order Granting in Part & Den. in Part Mot. for Prelim. Inj., ECF No. 98 at 2–3. Accordingly, the Court preliminarily enjoined DHS "from using Medicaid data obtained from the plaintiff states for immigration enforcement purposes" and HHS "from sharing Medicaid data obtained from the plaintiff states with DHS for immigration enforcement purposes." *Id.* at 4–5.

On November 21, 2025, ICE and CMS notified the Court that they had completed their respective decisionmaking processes regarding the data sharing at issue in this case, resulting in new data-sharing policies focused on the sharing of basic biographical, location, and contact information. *See* ECF Nos. 131-1, 131-2. Plaintiffs sought to preliminarily enjoin those policies, *see* ECF No. 134, to which this Court agreed in part, *see* Order Granting in Part & Den. in Part Mot. for Prelim. Inj., ECF No. 148 (Third PI Order). The Court ruled that Plaintiffs had not demonstrated a likelihood of success "as to the core aspects of the new data-sharing policies," namely "Medicaid data revealing the biographical, contact, and location information of unlawfully present aliens." *Id.* at 2. The Court also concluded that, "[b]eyond th[at] basic information," *id.*

at 5, the new policy was "likely arbitrary and capricious," *id.* at 6. Accordingly, the Court ruled that while this action is pending, HHS and CMS

> are preliminarily enjoined from sharing any information received from the plaintiff States with DHS or ICE, unless it (1) is from the Medicaid program, (2) pertains only to aliens who are not lawfully residing in the United States, and (3) divulges only those aliens' citizenship and immigration status, address, phone number, date of birth, and Medicaid ID

*Id.* (footnote omitted). The Court also preliminarily enjoined "DHS and ICE . . . from using any data obtained from HHS or CMS (including any data already acquired from HHS or CMS) for immigration enforcement purposes, unless the data satisfies the aforementioned requirements." *Id.* at 6–7.

A few months later, Plaintiffs filed a motion to enforce the Court's preliminary injunction based on a belief that Defendants had shared information outside the scope of that injunction. *See* ECF No. 151. In response, Defendants conceded that they had identified two data transfers from January 2026 which appeared to include data of individuals arguably within the scope of the Court's preliminary injunction. *See* Defs.' Opp'n to Pls.' Mot. to Enforce the Third Prelim. Inj. Order, ECF No. 155. DHS confirmed that it had deleted the transferred data, *see id.* at 7–9, and Defendants requested that the Court order briefing on the meaning of the phrase "not lawfully residing in the United States," *id.* at 10 (quoting Third PI Order at 6); *see also* Updated Decl. of Alberto V. Briseno, ECF No. 172-1. The Court agreed in a subsequent hearing that "we need to clarify which categories of people ICE can obtain information about and which categories of people ICE may not obtain information about." Tr. of Remote Zoom Videoconference Proceedings, ECF No. 161 at 4:19-22. The Court declined to make that determination "on the fly," and instead requested full briefing. *Id.* at 5:19-20; *see id.* at 9–10 (setting briefing schedule for motion to clarify). In the interim, the Court entered an order pausing transfers of any Medicaid information received from Plaintiff States and any usage of that information until the Court

resolves Defendants' motion to clarify or "modif[ies] the preliminary injunction." Order re: Data Sharing for Pendency of Dispute, ECF No. 170.

Defendants subsequently filed a motion in June 2026 to clarify the preliminary injunction, *see* ECF No. 173 (First Mot. to Clarify), which Plaintiffs opposed, *see* ECF No. 182 (Pls.' First Opp'n). In that motion, Defendants argued first that the Court should clarify the preliminary injunction to permit sharing about all aliens except LPRs. First Mot. to Clarify at 5–6. Alternatively, Defendants suggested clarifying the preliminary injunction to permit sharing except for aliens "lawfully admitted for permanent residence or otherwise *permanently* residing in the United States under color of law." *Id.* at 7–9 (quoting 42 U.S.C. § 1396b(v)(1)). For their part, Plaintiffs suggested clarifying the injunction to prohibit sharing except for those aliens subject to a final order of removal. *See* Pls.' First Opp'n at 8. Alternatively, Plaintiffs suggested a clarification to permit sharing except as to aliens who are "lawfully present" under certain authorities. *See id.* at 9–12 (relying on 8 C.F.R. § 1.3(a) and 8 U.S.C. § 1182(a)(9)(B)). Separate and apart from these issues, Defendants also requested clarification about the purposes for which Defendant HHS could share information and the type of information subject to the Court's preliminary injunction. *See* First Mot. to Clarify at 10–17.

At a subsequent motion hearing on September 3, the Court expressed a belief that the parties' proposals had not "adequately fleshed out" the various issues. Tr. of Proceedings, ECF No. 195 at 9:3 (Mot. Hrg. Tr.). The Court opined that Plaintiffs' primary proposal limited to aliens who have final orders of removal was "clearly wrong," *id.* at 8:2, but also said that Defendants' proposal was "too narrow," *id.* at 22:22. In the Court's colloquy with the parties, the Court indicated its desire to go "category by category," *id.* at 30:5, to determine which aliens "have permission to be here[,]" *id.* at 32:6-7. The Court ordered the parties to meet and confer "on

language that is consistent with [the Court's] guidance," *id.* at 37:14-15, noting that Defendants had "preserve[d] all [their] objections," *id.* at 36:17.

In an order issued after the hearing, the Court memorialized its on-the-record directive and ordered the parties to "identify more discrete categories of immigrants to present a more granular proposal" for the aliens whose data can be shared. Order on Mot. to Clarify the Prelim. Inj., ECF No. 196 at 1 (Clarification Order). If the parties could not reach agreement, the Court permitted them to "notice another hearing and provide further briefing on any contested issues." *Id.* The Court went on to say in the order that the preliminary injunction "must be construed as allowing data sharing for legitimate criminal law enforcement objectives," though "the order does not allow data sharing en masse." *Id.* at 2. The Court also concluded that "[t]he government may generally share data for purposes unrelated to immigration enforcement" notwithstanding the preliminary injunction. *Id.* The Court further rejected Defendants' argument that the preliminary injunction should be limited to Medicaid data, citing the 2013 policy rescinded by ICE as addressing a limited number of additional CMS programs. *Id.* at 3. Despite these rulings, the Court left in place its prior restrictions "pending the final approval of any language clarifying the scope of the preliminary injunction." *Id.*

The parties conferred but were unable to reach agreement on stipulated language that would be consistent with the Court's guidance. *See* Joint Status Report, ECF No. 201 (JSR). The parties were able to agree that data from the Temporary Assistance for Needy Families program (TANF) "is not at issue in this lawsuit or covered by the Court's preliminary injunction." *Id.* Pursuant to the Court's direction, the parties informed the Court that Defendants intended to notice another hearing. *See id.*

## LEGAL STANDARD

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Brown v. Plata*, 563 U.S. 493, 542 (2011) (citation omitted). Accordingly, a district court has discretion to clarify or modify the scope of an injunction. *See Smagin v. Yegiazaryan*, No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347, at *3 (C.D. Cal. Apr. 1, 2020). By clarifying the scope of a previously issued injunction, a court "add[s] certainty to an implicated party's efforts to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). "[C]larification may be obtained on motion by a party or made on the court's own motion." *Smagin*, 2020 WL 1652347, at *3.

## ARGUMENT

Notwithstanding Defendants' participation in the meet-and-confer process and their arguments below about ways to further clarify the preliminary injunction, Defendants respectfully continue to assert that no injunction is necessary because they have acted in compliance with all legal requirements and the information-sharing statutes at issue in this case do not impose restrictions on data sharing about aliens. They also maintain that the proper way to clarify this Court's preliminary injunction was either of the two avenues suggested by Defendants in their previous motion to clarify. The arguments below about clarification do not represent any concession of those points, and they otherwise reserve all rights and arguments, including in response to any opposition that Plaintiffs file to this motion. *See* Mot. Hrg. Tr. at 36:17 (noting preservation of all objections).

Defendants nonetheless present a proposal for the categories of aliens whose data may be shared that they believe is consistent with this Court's guidance. Namely, Defendants have crafted this proposal with an eye towards the Government's "plausible immigration enforcement

purposes" as well as the "workability" of this proposal. Clarification Order at 1–2. Defendants also move to clarify that, consistent with the Court's reading, the preliminary injunction covers only CMS data from the programs explicitly mentioned in the now-rescinded 2013 ICE policy. A proposed order corresponding to Defendants' proposal accompanies this motion.

## I. The Court Should Adopt Defendants' Proposal As To Categories Of Aliens

Defendants appreciate the opportunity to seek clarification of the preliminary injunction's language regarding the categories of aliens whose data can and cannot be shared. Below, Defendants first explain those aliens whose data they think, consistent with the Court's guidance should not be shared, before going into the more contested issues of aliens whose data can be shared. The final part of this section discusses any instance of overlap between the two categories and how Defendants have crafted their proposal to avoid overlap. As noted there and above, Defendants reserve the right to modify their proposal in response to Plaintiffs' opposition to this motion and to explain why they have excluded any categories that Plaintiffs want to be affirmatively included.[2] For ease, Defendants provide the following numbered lists of the categories in this motion.

**Sharing Prohibited Categories**

1. U.S. Citizens
2. Lawful Permanent Residents
3. Holders of valid, unexpired nonimmigrant status
4. Asylees
5. Refugees, except those who have been present for more than one year and have not presented themselves for adjustment as required by 8 U.S.C. § 1159(a)(1)

**Sharing Permitted Categories**

1. Aliens subject to a final order of removal, including when removal has been withheld or deferred

[2] If Defendants do make any such changes, they will submit an updated proposed order.

2. Unlawfully present aliens who "were released from detention pending removal" unless they qualify in the interim for a Sharing Prohibited Category, Clarification Order at 2
3. Aliens who entered the United States pursuant to a valid, lawful visa and are deportable for any ground listed in 8 U.S.C. § 1227
4. Applicants (and derivative applicants) for an immigration benefit or protection who do not fall into a Sharing Prohibited Category
5. Refugees who have been present for more than a year and have not presented themselves for adjustment as required by 8 U.S.C. § 1159(a)(1)

**A. Categories of Aliens Whose Data Cannot Be Shared**

As in their previous proposal—and consistent with the Court's guidance—Defendants agree that the preliminary injunction does not permit sharing of data about U.S. citizens and LPRs. *See* Clarification Order at 2; *see also* First Mot. to Clarify at 5–6. From there, Defendants maintain that the information sharing statutes at issue in this case do not restrict information sharing about any other individual. Based on this Court's guidance, however, Defendants propose that sharing not occur as to aliens with unexpired asylum status and with unexpired refugee status, with the exception, discussed further below, of certain refugees who have been in the United States for more than one year and have not presented themselves for adjustment of status. *See* First Mot. to Clarify at 8 (Defendants proposing not to share about asylees and refugees except those whose status is terminated or who fail to appear for adjustment).

The Court's guidance also forecloses sharing the data of aliens "with valid and unexpired visas." Clarification Order at 2. Defendants maintain that sharing should be allowed as to all visa holders, but given the Court's rejection of that proposal and later guidance, Defendants propose that they not be allowed to share data about those aliens with valid and unexpired visas. Defendants further propose that sharing be prohibited as to any alien with valid, unexpired nonimmigrant status. That category includes aliens with visas but also other aliens who receive nonimmigrant status without a visa. *See* 22 C.F.R. §§ 41.0-41.3 (describing the latter group).

### B. Categories of Aliens Whose Data Can Be Shared

Defendants request they be permitted to share data regarding the categories of aliens listed below.

***Aliens Subject To Final Order of Removal, Including Where Removal Is Withheld Or Deferred.*** Once "an alien is ordered removed, the [Secretary of Homeland Security] shall remove" him within 90 days. 8 U.S.C. § 1231(a)(1)(A); *see also id.* § 1231(a)(2) (generally requiring detention during period before removal), § 1231(a)(3) (requirements for supervision following the 90-day period). As a result, aliens with final orders of removal—*i.e.*, orders that are final under 8 C.F.R. §§ 241.1 and 1241.1 or have not been stayed by operation of law—do not have permission to be in the United States. Plaintiffs had previously agreed that data sharing should occur for those aliens, *see* Pls.' First Opp'n at 8, but counsel indicated during the parties' meet-and-confer process that Plaintiffs now think data should not be shared for those whose removal is withheld or deferred. Defendants disagree.

The Immigration and Nationality Act (INA) establishes the country to which an alien will be removed. *See generally* 8 U.S.C. § 1231(b). But an alien may seek withholding of removal under 8 U.S.C. § 1231(b)(3). An alien "may not" be removed to a country where he would be persecuted because of his "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A). An alien may also seek protection under regulations implementing Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), *adopted* Dec. 10, 1984, S. Treaty Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85—a non-self-executing treaty that prohibits the removal of aliens to countries where they would more likely than not face "torture," as defined in the regulations. *See* 8 C.F.R. §§ 208.16(c), 208.18.

Statutory withholding and CAT protection affect only *where*, not *whether*, an alien may be removed. A grant of statutory withholding means the alien is "presently protected" from removal to the particular country covered by the grant, though it "would not prevent" that alien's removal to "any other hospitable country." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987) (citation omitted). Likewise, a grant of CAT protection "means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country." *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020). Because a removal order "remains in full force" even after a grant of withholding or deferral of removal, *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021), aliens who receive those grants remain removable, and thus do not have durable permission to be in the United States. And because the Government can still remove an alien whose final order of removal has been withheld or deferred, the Government must be able to locate those aliens to further immigration enforcement.

Further, when an alien is released from custody after the entry of a final order of removal, the INA provides that the alien "shall be subject to supervision." 8 U.S.C. § 1231(a)(3). In order to supervise these aliens, the Government must be able to obtain information related to all questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue," including an alien's current whereabouts. *United States v. Witkovich*, 353 U.S. 194, 202 (1957). And although orders of supervision require the subject alien to "provide DHS with written notice of any change of address,"[3] DHS cannot presume that aliens will do so. 8 C.F.R. § 241.5(a)(5). A "plausible

[3] Aliens also generally have a statutory obligation to register with the Government and update their address within five days of moving. *See* 8 U.S.C. §§ 1302-1305. And aliens in removal proceedings have an obligation to update the Executive Office for Immigration Review—the arm of the U.S. Department of Justice responsible for administering removal proceedings—with their address. *See* 8 U.S.C. § 1229(a)(1)(F).

immigration enforcement purpose[]" for this category is to locate aliens with a final order of removal who have been released and then disappear without any notification to DHS of their whereabouts. Clarification Order at 1.

***Unlawfully Present Aliens Released from Detention Pending Removal Unless They Qualify in the Interim for a Sharing Prohibited Category.*** The Court has already said that Defendants should be able to share data about "people who came to the country illegally and were released from detention pending removal, unless some other event (such as a grant of asylum) conferred upon them permission to be present in the country." Clarification Order at 2. Indeed, alongside instances of aliens with final orders of removal, this is the clearest category where information sharing should be permitted—these aliens are unlawfully present in the country, are subject to removal proceedings, and are present in the United States for those proceedings. To be sure, while in removal proceedings, such aliens may apply for benefits like asylum under 8 U.S.C. § 1158, adjustment of status under § 1255, cancellation of removal under § 1229b, or other statutes that might grant durable permission to remain in the United States. But until that happens, the Government has a strong interest in knowing the alien's location in order to serve paperwork and, if necessary, effectuate an order of removal. The Government cannot enforce immigration laws if it cannot locate an alien who has been arrested and then released from detention pending removal proceedings.[4]

An alien's release from immigration detention does not mean he has permission to be in the United States. The Government may use its "broad discretion" to release most aliens. *Nielsen v. Preap*, 586 U.S. 392, 409 (2019); *see also* 8 U.S.C. §§ 1182(d)(5) (discretion to parole certain

[4] This is rationale also applies to any alien with a final order of removal. DHS must be able to locate them for purposes of any future immigration enforcement actions.

aliens); 1226(a) (discretion to release certain aliens following arrest). But that alien's release, generally under conditions that include an obligation to report a change in address, does not grant the alien permission to be in the United States. *Cf. United States v. Bravo-Muzquiz*, 412 F.3d 1052, 1054–56 (9th Cir. 2005) (concluding that an alien, who overstayed his nonimmigrant visa but was released from immigration custody on bond, "is not lawfully present" in the United States). As with the prior Sharing Permitted Category, DHS has a "plausible immigration enforcement purpose[]" for aliens released from immigration detention under conditions because there is a need to enforce those conditions, Clarification Order at 1, particularly when the alien has disappeared without any notification to DHS of their whereabouts and fails to otherwise comply with the release conditions.

***Aliens Who Entered The United States Pursuant to a Valid Visa and are Deportable Under 8 U.S.C. § 1227.*** Although Defendants maintain that they should be able to share information about all visa holders, they should at least be able to share information about visa holders who are deportable for any ground under 8 U.S.C. § 1227. The Government has an interest in locating removable aliens, and this category will further that interest.

The most obvious example of a deportable visa holder is when a visa holder violates the conditions of their visa (*e.g.*, overstays the authorized period), which is an *ipso facto* deportable offense. *See* 8 U.S.C. § 1227(a)(1)(C). In fact, any alien "in and admitted to the United States shall" be deportable under any of the grounds listed in § 1227. *Id.* § 1227(a). Holders of nonimmigrant visas are typically admitted to the United States, *see id.* § 1184(a); *see also id.* § 1101(a)(13)(A) (defining "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"), and thus are deportable upon qualifying for any ground in § 1227. Once deportable, the Government has a strong interest in

being able to locate them for purposes of placing them in removal proceedings. In contrast, though LPRs may also be deportable under the grounds in 8 U.S.C. § 1227, they do not lose their status until they receive a final order of removal. *See* 8 C.F.R. § 1001.1(p) (defining LPR and including in definition that "[s]uch status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission"). Defendants have not included LPRs in this category because LPRs enjoy these enhanced procedural protections (including in the Privacy Act).

***Applicants and Derivative Applicants for Immigration Benefits Who Do Not Qualify for a Sharing Prohibited Category.*** The Ninth Circuit has held that a pending application for an immigration benefit, such as an adjustment of status, "does not confer lawful immigration status on an applicant." *Ayanian v. Garland*, 64 F.4th 1074, 1082 (9th Cir. 2023) (citation omitted); *see also United States v. Latu*, 479 F.3d 1153, 1155 (9th Cir. 2007) (holding that a pending application for adjustment of status does not affect removability). Other courts have reached the same conclusion. *See, e.g.*, *United States v. Al Sabahi*, 719 F.3d 305, 309–10 (4th Cir. 2013) (holding that an alien who overstayed his visa and applied for adjustment of status was still "illegally or unlawfully in the United States"); *United States v. Bazargan*, 992 F.2d 844, 848–49 (8th Cir. 1993) (same for a student visa overstay who received employment authorization while his asylum application was pending); *Ordonez v. Field Off. Dir., ICE Enf't & Removal Operations, Louisville, Ky. Field Off.*, No. 3:26-CV-067-CHB, 2026 WL 927173, at *8 (E.D. Ky. Apr. 6, 2026) ("The law is clear; Petitioner's pending application for a U-Visa does not prevent his removal[.]").

In other words, absent express permission from the Government to be in the United States—which Defendants accommodate by noting that applicants in a Sharing Prohibited Category are excepted—merely applying for an immigration benefit does not authorize an alien to be in the United States, even if the alien enjoys some temporary benefits, such as work

authorization or deferral of removal. *Accord Bokhari v. Holder*, 622 F.3d 357, 361 (5th Cir. 2010) (lawful status stems from "a *grant* of an extension request . . . not the filing of the request"). That is true not only for the alien who actually applies for a benefit—referred to as the principal alien, 22 C.F.R. § 40.1(q)—but for any other alien who seeks to derive some status or benefit based on the applicant. For example, some immigration statuses, once granted, cover the spouse or children of the alien who applies for and obtains that status. *See* 8 U.S.C. § 1157(c)(2)(A) (refugees); 8 C.F.R. § 208.21 (asylees). But the mere application for those statuses or for any immigration benefit does not give either the applicant or any derivatives of the applicant protection from removal or any other permission to be in the United States.

The Government has a strong interest in the accurate adjudication of the alien's application for relief or protection from removal to finality. *Accord INS v. Abudu*, 485 U.S. 94, 107 (1988) (observing that there "is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases"). The Government similarly has a strong interest in ensuring that such applicants do not "delay" the adjudication by, for example, misrepresenting or failing to update their current address. *Cf. INS v. Doherty*, 502 U.S. 314, 323 (1992) (explaining that "in a deportation proceeding, . . . as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States"). The sharing of the alien's current address would fulfill those interests and advance the Government's "plausible immigration enforcement purposes." Clarification Order at 1.

***Refugees Who Have Not Appeared for Adjustment.*** Any refugee who has been physically present in the United States for one year and has not acquired permanent resident status must "return or be returned to the custody" of DHS "for inspection and examination for admission to

the United States as an immigrant." 8 U.S.C. § 1159(a)(1). Regulations under that section require a refugee to apply after one year "for permanent residence." 8 C.F.R. § 209.1(b). The Board of Immigration Appeals has described this regime as imposing something akin to a two-step structure. Someone granted refugee status receives a "conditional admission" into the country, subject to "later adjustment to permanent residence." *Matter of D-K-*, 25 I. & N. Dec. 761, 767 (BIA 2012).

In other words, a refugee must appear for adjustment, as even courts to rule against the Government have acknowledged. *See, e.g.*, *U.H.A. v. Bondi*, 817 F. Supp. 3d 752, 765 (D. Minn. 2026) ("[T]he statute *requires* refugees who have resided in the United States for more than one year to submit to DHS for inspection and examination." (emphasis added)). Congress instituted this requirement to reinforce that refugee status is a conditional one. *See Matter of Garcia-Alzugaray*, 19 I. & N. Dec. 407, 408 (BIA 1986) (noting that Congress imposed conditional entry regime and expressly rejected language that would have made all refugees LPRs upon entry). A failure to appear for adjustment thus flouts Congress's scheme and violates a term of refugee status. A refugee who fails to appear is not in the United States with permission, and the Government has a plausible reason to enforce the established terms of refugee status.

**C. Defendants Have Proposed Categories to Minimize Any Overlap.**

The Court has directed the parties to "consider the workability of any proposal for the purposes of facilitating and monitoring the defendants' compliance." Clarification Order at 1–2. Defendants take their compliance obligations seriously and have realized that compliance will be difficult if an alien falls into a Sharing Permitted and Sharing Prohibited category. For that reason, Defendants have crafted two lists of categories with an eye towards minimizing overlap. For example, an alien cannot simultaneously be an LPR and be subject to a final order of removal—entry of the latter terminates the former. *See* 8 C.F.R. § 1001.1(p) (defining LPR and including in definition that "[s]uch status terminates upon entry of a final administrative order of exclusion,

deportation, removal, or rescission"). So too for an asylee or a refugee—their status must be terminated before a final order of removal may be entered against them. *See id.* § 208.22 ("An alien who has been granted asylum may not be deported or removed unless asylum status is terminated[.]"); *id.* § 207.9 ("Upon termination of refugee status, USCIS will process the alien under [8 U.S.C. §§ 1225, 1229a, 1231]."). And where the categories were likely to overlap, Defendants attempted to carefully explain where one category ends and the other begins. For example, holders of valid, unexpired visas fall into the category of aliens for whom the government cannot share data, but once that alien becomes deportable for having committed an offense described in 8 U.S.C. § 1227, the Government's interest in locating that alien to initiate removal proceedings is equally enhanced. Defendants have accounted for that one instance of overlap by proposing that they can share data about any visa holder who is deportable under § 1227.

Otherwise, Defendants do not anticipate any overlap between the categories but, to the extent that there is, sharing would be prohibited. Defendants have not proposed categories that cover every permutation of immigration status given the "ambiguities and nuances" in this area of the law. Clarification Order at 1. Rather, Defendants have focused on categories of aliens against whom they are most likely to initiate enforcement actions or effectuate final orders of removal, such that the Government has a greater interest in knowing the alien's latest address. To the extent Plaintiffs suggest adding more categories to the Sharing Prohibited list, Defendants reserve the right to argue why those additions are inappropriate and/or to change their lists of categories to reflect any instance of overlap that might arise under Plaintiffs' list.[5]

---

[5] To the extent Plaintiffs restate their belief that the definitions of lawfully present or unlawfully present in 8 C.F.R. § 1.3(a) or 8 U.S.C. § 1182(a)(9)(B)(ii)-(iii) are the best avenue for clarity, *see* Pls.' First Opp'n at 9–10, Defendants respectfully urge the Court to avoid using those authorities. They do not extend to the data-sharing statutes at issue in this case and indeed are specific to

* * *

Defendants have crafted the above categories with an eye towards immigration enforcement and workability, keeping in mind the Court's recent guidance as to the scope of its preliminary injunction. As noted above, Defendants reserve all rights and arguments, including as to the propriety of an injunction in the first place and the best ways to clarify that injunction.

## II. The Court Should Clarify the PI to Prohibit Sharing of Information Only From Specific CMS Programs Mentioned in the 2013 ICE Memorandum.

The current preliminary injunction categorically prohibits HHS and CMS from sharing "any information received from the plaintiff States with DHS or ICE, *unless it (1) is from the Medicaid program[.]*" Third PI Order at 6 (emphasis added and footnote omitted). As described above, Defendants argued in their last motion to clarify that because Plaintiffs' Amended Complaint addresses only the sharing of Medicaid data, the preliminary injunction should be clarified to restrict sharing only as to that data. *See* First Mot. to Clarify at 16–17. The Court rejected that the injunction should be "limited to Medicaid data" because the now-rescinded 2013 ICE memorandum protected "any data provided for coverage under a 'qualified health plan offered on a Health Insurance Marketplace or through an insurance affordability program (*i.e.*, premium tax credits, cost sharing reductions, Medicaid, Children's Health Insurance Program, or Basic Health Program).'" Clarification Order at 3 (quoting ECF No. 134-2).

Defendants understand the Court to be saying that the preliminary injunction covers only those CMS programs and data mentioned in ICE's 2013 memorandum and should not extend to

different circumstances. 8 C.F.R. § 1.3(a) defines lawfully present "only" to determine which aliens may receive retirement and disability benefits under the Social Security Act. 8 C.F.R. § 1.3(a) (cross-referencing 8 U.S.C. § 1611(b)(2)). Similarly, 8 U.S.C. § 1182(a)(9)(B)(ii)-(iii) applies only "[f]or purposes of" § 1182(a)(9), not any other statute or context. 8 U.S.C. § 1182(a)(9)(B); *see also United States v. Lopez*, 929 F.3d 783, 786 (6th Cir. 2019) (refusing to extend § 1182(a)(9)(B)(ii) to another statute). Defendants believe that the categories they have proposed are a better avenue of clarification.

other HHS programs. As Defendants have explained, HHS administers many programs not mentioned in that memorandum, in the CMS Federal Register Notice (which related only to rescission of the 2013 ICE memorandum and sharing of Medicaid data), *see* ECF No. 131-1, or in Plaintiffs' Amended Complaint. Defendants therefore request that the Court clarify the injunction's language to restrict sharing as to data

> regarding applicants for or enrollees in qualified health plans (with or without advanced payments of the premium tax credit or cost-sharing reductions), the Children's Health Insurance Program, or the Basic Health Program, or applicants for or beneficiaries of Medicaid, whether or not the plan is offered on, or the eligibility for coverage determination is made through, an American Health Benefit Exchange.

*See* Proposed Order.

This clarification achieves the necessary tailoring of the injunction to the Court's view of the Amended Complaint by naming the programs at issue, which are the same programs mentioned in ICE's 2013 memorandum. *See* Off. of the Dir., U.S. Immigr. & Customs Enf't, *Clarification of Existing Practices Related to Certain Health Care Information* at 1–2 (Oct. 25, 2013), https://perma.cc/C2KY-B66Y. If the Plaintiffs have sufficiently pled a "challenge[] [to] ICE's reversal of its 2013 [memorandum]" in its entirety, as this Court said, the preliminary injunction must be limited to the programs at issue in that memorandum.[6] Clarification Order at 3. Otherwise, Plaintiffs would improperly receive injunctive relief beyond the scope of the memorandum that they say was unlawfully rescinded. *See Toelle v. Jusino*, No. 23-cv-00194-JST, 2023 WL 6391453, at *3 (N.D. Cal. Sep. 28, 2023) ("[A] plaintiff is not entitled to an injunction based on claims not pled in the complaint."). To be clear, Defendants maintain that even that

[6] Defendants disagree that Plaintiffs' Amended Complaint challenges all programs identified in the 2013 ICE memorandum. Plaintiffs cited that memorandum in their Amended Complaint only to explain that DHS policy has not historically allowed sharing of "*Medicaid* personal information." Am. Compl. ¶ 68, ECF No. 108 (emphasis added).

clarification is a step too far because Plaintiffs have challenged only the sharing of data that Plaintiff States provide to CMS as part of the federal/state Medicaid partnership. *See, e.g.*, Am. Compl. ¶ 8 (requesting relief "to bar the federal government from reneging on the terms of the longstanding State/federal Medicaid partnership"). Some programs identified by name in the 2013 ICE memorandum, however, involve data submitted to CMS by individuals or other entities rather than States, and Plaintiffs here have expressly disclaimed any interest in "assert[ing] [their] residents' own interests in this litigation." *Id.* ¶ 265. Plaintiffs then do not have standing to challenge sharing of data from programs other than Medicaid or data obtained from individual beneficiaries (nor are these claims ripe). At the very most, though, the preliminary injunction should be limited to the programs mentioned in the 2013 ICE memorandum.

Defendants' proposed order also clarifies that not all HHS information is subject to the preliminary injunction, but rather only information within CMS. HHS's Federal Register Notice applied only "to data collected by CMS." ECF No. 131-1 at 2. The preliminary injunction in this case thus should focus on information housed within CMS, not HHS's other 12 divisions. *See* HHS, *HHS Organizational Charts*, https://www.hhs.gov/about/organization/org-chart/index.html (last reviewed Aug. 21, 2025). Indeed, all of the programs named in the 2013 ICE memorandum are administered by CMS or have their information reported to CMS, not some other HHS division.

At the very least, the Court should note in any forthcoming preliminary-injunction order that data from TANF is not covered by this Court's preliminary injunction.[7] The parties agree on this, *see* JSR, but sharing of that data cannot occur until the Court clarifies its preliminary

[7] Plaintiffs have acknowledged as much through their challenge in a different court to sharing of TANF data. *See New York v. Administration for Children and Families*, 26-cv-02726 (D.D.C., filed Aug. 3, 2026). Otherwise, Plaintiffs surely would have moved to enforce this Court's injunction rather than filing a separate challenge in a different forum.

injunction, *see* Clarification Order at 3 ("The prior restrictions remain in place pending the final approval of any language clarifying the scope of the preliminary injunction.").

As with Defendants' proposal relating to categories of immigration status, Defendants have drafted proposed language keeping in mind the Court's recent guidance as to the scope of its preliminary injunction. Defendants reserve all rights and arguments, including as to the propriety of an injunction in the first place and the best ways to clarify that injunction.

## III. The Court Should Clarify Its Preliminary Injunction Along Other Lines Consistent With Its Previous Order.

As noted, the Court has expressly left in place all prior restrictions "pending the final approval of any language clarifying the scope of the preliminary injunction." *Id.* Defendants therefore request that, in the course of resolving this motion and consistent with the Court's previous order, the Court include language in the clarified injunction that "allow[s] data sharing for legitimate criminal law enforcement objectives" and permits Defendants to "share data for purposes unrelated to immigration enforcement." *Id.* at 2.

## IV. The Court Should Order the Parties To Set A Summary Judgment Schedule.

Lastly, Defendants request that either during or shortly after resolution of the parties' dispute about clarifying the preliminary injunction, the Court direct the parties to propose a schedule for dispositive summary-judgment briefing. Defendants have been subject to a preliminary injunction for over a year at this point and are eager to reach a final adjudication to obtain clarity going forward, including for any appellate strategy. Defendants therefore include language in their proposed order that would direct the parties to meet-and-confer within 14 days after entry of the order and to suggest a schedule for summary-judgment proceedings.

**CONCLUSION**

The Court should clarify and modify the Third Preliminary Injunction as identified above. As noted, Defendants will submit a proposed order with their proposed injunction language.

Dated: November 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney (DC Bar No. 90002557)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 353-5980
Christian.r.dibblee@usdoj.gov

*Counsel for Defendants*